No. 25-10797

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

In the Matter of Acis Capital Management, L.P.; Acis Capital Management GP, L.L.C.,

*Debtors*

Acis Capital Management, L.P.; Acis Capital Management GP, L.L.C.,

*Appellants*

v.

James Dondero,

*Appellee*

---

On Appeal from the United States District Court
for the Northern District of Texas
No. 3:24-CV-2036

---

**APPELLANTS' BRIEF**

---

Emily Merritt Adler
eadler@azalaw.com
Kelsi Stayart White
kwhite@azalaw.com

Ahmad Zavitsanos & Mensing, PLLC
1221 McKinney Street, Suite 2500
Houston, Texas 77010
713-655-1101

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellants: | Counsel for Appellants: |
| --- | --- |
| Acis Capital Management GP, LLC<br>Acis Capital Management, LP<br><br>Shorewood Holdings, LLC<br>Shorewood GP, LLC<br>Joshua Terry | Emily Merritt Adler of Ahmad, Zavitsanos & Mensing PLLC. Houston, Texas.<br><br>Kelsi Stayart White of Ahmad, Zavitsanos & Mensing PLLC. Houston, Texas. |

| Appellee: | Counsel for Appellee: |
| --- | --- |
| James Dondero | Michael Lang of Crawford, Wishnew & Lang, PLLC. Dallas, Texas. |

/s/ Emily Merritt Adler
Emily Merritt Adler

*Attorney of record for Appellants Acis Capital Management LLP and Acis Capital Management GP*

2

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would aid the Court's resolution of the novel legal aspects of this appeal, such as: (1) when parties must be in privity for res judicata to apply; (2) the impact of consent judgments on the application of res judicata; and (3) whether allegations of an alter ego relationship at one point in time between a party and a non-party to a previous lawsuit automatically result in a finding of privity in a subsequent lawsuit.

## TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT .................................................. 3

TABLE OF CONTENTS .................................................................................... 4

TABLE OF AUTHORITIES ................................................................................ 6

JURISDICTIONAL STATEMENT ......................................................................... 7

ISSUES PRESENTED ....................................................................................... 8

STATEMENT OF THE CASE .............................................................................. 9

    I.    Acis LP was formed to raise money for collateralized loan obligation funds and distributed millions in profits to its limited partners. .............................. 9

    II.   Limited partner Joshua Terry was wrongfully terminated and obtained an $8 million arbitration award; then, Dondero began transferring away Acis LP's assets. .............................. 10

    III.  After driving both Acis and Highland into bankruptcy, Dondero lost control of both entities. .............................. 12

    IV.  Highland Capital and Highland CLO Funding, Ltd. filed an adversary proceeding against Acis. .............................. 13

    V.   Acis filed an adversary proceeding against Dondero and others. ................ 14

    VI.  After mediation, Acis and Highland reached a settlement of their various claims, including in the Highland Adversary, which resulted in the consent judgment. .............................. 14

    VII. The district court dismissed Acis's claims against Dondero in the Dondero Adversary based on giving res judicata effect to the consent judgment in the Highland Adversary. .............................. 15

SUMMARY OF THE ARGUMENT ..................................................................... 17

ARGUMENT ................................................................................................. 19

    I.    There was no privity between Highland and Dondero during the Highland Adversary that permitted the application of res judicata. .......................... 19

        a.   In this case, privity should be determined at the time of the consent judgment. .............................. 21

        b.   Highland did not adequately represent Dondero's interests. .................. 24

        c.   Dondero did not control the litigation. ...................................... 30

II.  Alter ego allegations do not automatically create eternal privity.....................31

CONCLUSION & PRAYER ................................................................................ 35

CERTIFICATE OF SERVICE ............................................................................. 36

CERTIFICATE OF COMPLIANCE .................................................................... 37

## TABLE OF AUTHORITIES

### Cases

*Armadillo Hotel Grp., L.L.C. v. Harris*,
  84 F.4th 623 (5th Cir. 2023) .................................................................. 25

*Cygnus Telecommunications Tech., LLC v. Worldport Commc'ns, Inc.*,
  543 F. Supp. 2d 1113 (N.D. Cal. 2008) ................................................. 22

*Dudley v. Smith*,
  504 F.2d 979 (5th Cir. 1974) ................................................................. 32

*Flores v. Bodden*,
  488 Fed. Appx. 770 (5th Cir. 2012) ..................................................32, 33

*Gulf Island-IV, Inc. v. Blue Streak-Gulf Is Ops*,
  24 F.3d 743 (5th Cir. 1994) ................................................................... 25

*Meza v. Gen. Battery Corp.*,
  908 F.2d 1262 (5th Cir. 1990) ........................................................ passim

*Nagle v. Lee*,
  807 F.2d 435 (5th Cir. 1987) ................................................................. 22

*Richards v. Jefferson Cnty.*,
  517 U.S. 793 (1996) ......................................................................... 19, 20

*Russell v. SunAmerica Securities, Inc.*,
  962 F.2d 1169 (5th Cir. 1992) ............................................................... 22

*Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*,
  37 F.4th 1078 (5th Cir. 2022) ................................................... 20, 24, 30

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) ......................................................................... passim

### Other Authorities

Restatement (Second) of Judgments, § 50 (1982) ................................... 23

Restatement (Second) of Judgments, § 51 (1982) ................................... 23

## JURISDICTIONAL STATEMENT

This Court has appellate jurisdiction because Appellants filed a notice of appeal within 30 days of the district court's order granting Rule 54(b) final judgment. ROA.805; ROA.808.

## ISSUES PRESENTED

1. Did the district court err by dismissing Acis's claims against Dondero by deciding that alter ego allegations automatically established privity sufficient to apply res judicata? Yes.

   a. When must parties be in privity for res judicata to apply when the prior litigation ended in a consent judgment? At the time of judgment.

   b. Do alter ego allegations automatically create privity? No.

## STATEMENT OF THE CASE

**I.      Acis LP was formed to raise money for collateralized loan obligation funds and distributed millions in profits to its limited partners.**

This appeal arises from a complex factual and procedural background, beginning almost fifteen years ago. In 2011, Joshua Terry, James Dondero, and Mark Okada formed Acis Capital Management L.P. (Acis LP) as a registered investment advisor to raise money from third-party investors for collateralized loan obligation funds (CLOs). ROA.856. Terry and Okada, as well as the Dugaboy Investment Trust,[1] as limited partners, and Acis Capital Management GP, LLC (Acis GP),[2] as general partner, entered a Limited Partnership Agreement to form Acis LP. ROA.858.

Acis LP generated revenue by serving as portfolio manager of the CLOs. ROA.856. Acis LP was successful as portfolio manager and distributed millions in profits to Terry, Dondero, and Okada between 2011 and 2017. ROA.857. As is typical in the CLO industry, Acis LP contracted out some of its administrative functions and portfolio management responsibilities under a Shared Services Agreement (for back office services, like HR and accounting) and a Sub-Advisory Agreement (for front

---

[1]     Dondero was the trustee and beneficial owner of the Dugaboy Investment Trust. ROA.858.

[2]     Dondero was the President of Acis GP until May 7, 2018. ROA.858–59. Dondero was also the sole member of Acis GP from October 14, 2015, until December 19, 2017. ROA.849.

office services, like investment management) to Highland Capital Management L.P. (Highland Capital). ROA.857–58. Neither Acis LP nor Acis GP (collectively, Acis) had any employees; all employees performing work on behalf of Acis were employed by Highland Capital. ROA.157.

## II. Limited partner Joshua Terry was wrongfully terminated and obtained an $8 million arbitration award; then, Dondero began transferring away Acis LP's assets.

Despite Acis LP's success, in June 2016, Highland Capital terminated Terry. ROA.860. As a result, Terry's partnership interest in Acis LP was forfeited to Dondero and Okada, leaving Dondero and Okada as the only equity owners of Acis LP. ROA.860.

Following Terry's termination, in July 2016,[3] Highland Capital and Acis modified the Sub-Advisory Agreement to increase Highland Capital's fee from 5 basis points to 20 basis points of the management fees received by Acis. ROA.864. Because Highland Capital was already contractually required to provide the sub-advisory services for the lower, 5 basis points fee, no legitimate justification for the increase was ever presented. ROA.865. The Shared Services Agreement was likewise amended to provide compensation to Highland Capital of 15 to 20 basis

---

[3]     This modification was backdated to January 1, 2016. ROA.864.

points, depending on the nature of the fund, instead of providing reimbursement for direct expenses like it had in the past. ROA.865.

In September 2016, Terry filed an arbitration against Highland Capital and Acis, among others, claiming that Acis owed him compensation for his forfeited partnership interest. ROA.861. The same month, Highland Capital sued Terry in state court. ROA.861. Ultimately, the state court stayed the litigation, and the parties arbitrated their claims. ROA.861.

On October 20, 2017, Terry obtained an arbitration award of approximately $8 million against Acis. ROA.861. The panel found, among other things, that Terry's termination was without cause, and that Highland Capital had violated the Limited Partnership Agreement by taking more than 20% of Acis LP's revenues for management responsibilities without Terry's consent. ROA.861. Immediately after Terry obtained the arbitration award, Dondero started to transfer the assets of Acis LP to the Highland entities, to denude Acis LP of value and make Acis judgment proof. ROA.869. On January 30, 2018, Terry filed an involuntary bankruptcy petition against Acis, initiating the Acis Bankruptcy.[4] ROA.1049. Highland Capital followed suit by declaring bankruptcy in October 2019 (the Highland Bankruptcy).

---

[4]    The bankruptcy case against Acis LP is Case No. 18-30264, and the bankruptcy case against Acis GP is Case No. 18-30265 (collectively, the Acis Bankruptcy).

### III.    After driving both Acis and Highland into bankruptcy, Dondero lost control of both entities.

The bankruptcies cost Dondero control of both companies. ROA.278. By January 2019, the bankruptcy court had confirmed a plan in the Acis Bankruptcy whereby Terry obtained 100% of Acis's equity, meaning Dondero no longer had an interest in Acis. ROA.278.

In January 2020, Dondero resigned as an officer and director of Highland Capital, and an independent board took control. ROA.278. Throughout the summer of 2020, Dondero proposed several reorganization plans in the bankruptcy proceeding, all of which Highland Capital rejected. ROA.278. When his plans failed to gain support, Dondero and entities under his control instituted a costly and time-consuming litigation campaign against Highland Capital. ROA.278.

On October 9, 2020, Dondero then resigned from all positions with all Highland affiliates. ROA.279. Just two months later, on December 7, 2020, Highland Capital filed an adversary proceeding *against Dondero*. ROA.279. On December 10, 2020, the bankruptcy court entered an order temporarily restraining Dondero from communicating with Highland Capital's employees or attempting to interfere in the disposition of its assets. ROA.279.

**IV.    Highland Capital and Highland CLO Funding, Ltd. filed an adversary proceeding against Acis.**

Prior to declaring bankruptcy, when Dondero was still in control, Highland Capital and its affiliate, Highland CLO Funding, Ltd. (Highland Funding), filed an adversary proceeding against Acis in May 2018 (the Highland Adversary) inside the Acis bankruptcies. ROA.279; ROA.939. Highland Capital and Highland Funding claimed that Acis's Trustee had breached certain contracts by refusing to effectuate a redemption of funds. ROA.940. Acis counterclaimed, alleging that Highland Capital, Highland Funding, and various Highland affiliates (collectively, Highland) had schemed to strip Acis LP of value. ROA.280.

The Highland Adversary is the proceeding the bankruptcy court referred to as the "Prior Acis Action" in its October 15, 2024, Report and Recommendation that the district court grant Dondero's Motion to Dismiss. ROA.61.[5] In other words, the Highland Adversary is the proceeding that resulted in the consent judgment to which Dondero seeks to give res judicata effect for his own benefit.

---

[5]    To be clear, this was an adversary proceeding commenced by Highland Capital and Highland Funding—*not* Acis. In other words, Acis was not the original plaintiff, and its ability to interplead third party defendants like Dondero was limited by Federal Rule of Civil Procedure 14(a) and Federal Rule of Bankruptcy Procedure 7014.

## V.    Acis filed an adversary proceeding against Dondero and others.

In April 2020, Acis filed an adversary proceeding against Dondero and others, including CLO HoldCo, (the Dondero Adversary), seeking to hold Dondero accountable for many of the counterclaims Acis was pursuing against Highland in the Highland Adversary. ROA.132.  Acis did so because the plan entered by the bankruptcy court in the Acis Bankruptcy expressly reserved Acis's claims against Dondero, which implicated the same conduct as the claims Acis was then-pursuing against Highland in the Highland Adversary. ROA.131–32.  Acis therefore had no reason to doubt that it could pursue its claims against Dondero separately in the Dondero Adversary. ROA.131–32.

The Dondero Adversary is the lawsuit from which this appeal arises.

## VI.    After mediation, Acis and Highland reached a settlement of their various claims, including in the Highland Adversary, which resulted in the consent judgment.

In August 2020, the bankruptcy court ordered Highland, Acis, and Dondero (among others) to mediate their various disputes arising from the Highland Bankruptcy. ROA.427. As a result of mediation, Highland—controlled by the independent board—and Acis entered a settlement agreement. ROA.427. Notably, Dondero did *not* join the settlement agreement; instead, he objected to it and asked the bankruptcy court to deny the motion to approve the settlement agreement. ROA.427; ROA.429.

The settlement agreement provided that Acis's proof of claim in the Highland Bankruptcy would be permitted, Highland's proof of claim in the Acis bankruptcy would be withdrawn, and Acis would dismiss certain named parties against which it had claims. ROA.427–28. Importantly, Dondero was excepted from the parties against which Acis would dismiss its claims (thus leaving the Dondero Adversary intact); Dondero did not object to the settlement agreement on this basis. ROA.428–29. Ultimately, the bankruptcy court approved the settlement agreement over Dondero's objection in October 2020. ROA.429.

The bankruptcy court granted two unopposed motions to dismiss Acis's claims against various Highland entities on November 6, 2020, and May 6, 2021 (together, constituting the "consent judgment"). ROA.680–81.

### VII. The district court dismissed Acis's claims against Dondero in the Dondero Adversary based on giving res judicata effect to the consent judgment in the Highland Adversary.

Following the settlement, the Dondero Adversary was abated by agreement for a period of time. ROA.60. Then, in February 2024, Acis filed its first amended complaint. ROA.60. In response, Dondero moved to dismiss Acis's alter ego claim (Count 3) and fraudulent transfer claim (Count 5). ROA.1170; ROA.1174.

In its Report and Recommendation, the bankruptcy court recommended that the district court grant Dondero's Motion to Dismiss Counts 3 and 5 based on res

judicata, which the bankruptcy court raised *sua sponte*. ROA.102. The district court adopted the bankruptcy court's Report and Recommendation and dismissed Counts 3 and 5 with prejudice. ROA.636.

Dondero then moved for judgment on the pleadings, seeking to dismiss the remainder of Acis's claims against him based on res judicata, adopting the bankruptcy court's reasoning. ROA.1316. The bankruptcy court again recommended that the district court grant Dondero's motion and dismiss all remaining counts against Dondero based on res judicata. ROA.657. In April 2025, the district court adopted the Report and Recommendation of the bankruptcy court and dismissed all of Acis's remaining claims against Dondero with prejudice. ROA.795.

The district court then entered final judgment as to Acis's claims against Dondero and stayed Acis's remaining claims against CLO HoldCo in the Dondero Adversary (which had not been resolved in the settlement of the Highland Adversary) pending resolution of this appeal. ROA.805–06.

#### SUMMARY OF THE ARGUMENT

The effect of the district court's holding is that an individual once in control of an entity is always in privity with that entity, even when their interests later collide. That rule contravenes precedent and rewards bad actors, like Dondero here, who have raided an entity for their own benefit and eventually—and rightfully so—lose control of it.

In so holding, the district court misapplied established law in dismissing Acis's claims against Dondero. Instead of applying the framework outlined in *Taylor v. Sturgell*, 553 U.S. 880 (2008), the district court concluded that a prior, alleged alter ego relationship sufficed to establish privity at a later point in time for preclusion purposes—as a matter of law. ROA.637.

While alter ego relationships *may* establish privity in some cases, that is not true here, where the party and non-party had become antagonistic to one another during the pendency of the prior litigation, and the adequate-representation and litigation-control exceptions outlined in *Taylor* were not satisfied (or even evaluated).

This Court should reverse the dismissal of Acis's claims against Dondero because: (1) the district court did not perform the evaluation required by *Taylor*; and

(2) there was no privity between Dondero and Highland at the time the bankruptcy court entered the consent judgment, and thus res judicata does not apply.

**ARGUMENT**

**I.    There was no privity between Highland and Dondero during the Highland Adversary that permitted the application of res judicata.**

This appeal arises from the district court's application of non-mutual claim preclusion based on a finding of privity between Highland and Dondero. Non-mutual claim preclusion occurs when the parties in both suits are not identical, but res judicata is nevertheless invoked due to sufficient identity of the parties, *i.e.*, privity. *See Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1265–66 (5th Cir. 1990).

The application of non-mutual res judicata runs counter to the "deep-rooted historic tradition that everyone should have his own day in court." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996)).  It is thus applied sparingly, and only when recognized exceptions apply. *Id.* at 893. Relevant here are the exceptions for adequate representation and control of the litigation. [6]

---

[6]    This Court has held that privity exists in "just three, narrowly-defined circumstances: (1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990). No one disputes that the first scenario is not applicable to this case. Dondero sold his Highland partnership interest in December 2015, and whatever indirect interest he retained was extinguished by Highland's bankruptcy plan; he therefore was not a successor in interest to Highland's property. ROA.687.

Under the adequate-representation exception, a nonparty may be bound by a judgment because he was "adequately represented by someone with the same interests who [wa]s a party" to the suit. *Richards*, 517 U.S. at 798. Representation of a non-party is adequate "only if, at a minimum: (1) [t]he interests of the nonparty and her representative are aligned, and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Taylor*, 553 U.S. at 900 (internal citations omitted).

A nonparty may also be bound by a judgment if he assumed control over the litigation in which that judgment was rendered. *Id.* at 895; *Meza*, 908 F.2d at 1266. A nonparty controls the prior litigation only if they had "effective choice as to the legal theories or proofs" advanced on behalf of the party to the prior action, as well as "control over the opportunity to obtain review." *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 37 F.4th 1078, 1087 (5th Cir. 2022).

In this case, the district court adopted the bankruptcy court's reasoning and relied on mere allegations of alter ego at an earlier point in time to support the *sua sponte* application of res judicata without conducting the adequate--representation analysis required by *Taylor* or the control analysis from *Students for Fair Admissions*. ROA.638 (concluding that "the alter ego relationship between Dondero and Highland establishes privity for the purposes of claim preclusion").

Doing so was error because the interests of Highland and Dondero were not aligned during the Highland Adversary, Highland did not understand itself to be acting as Dondero's representative, and the bankruptcy court did not purport to be protecting Dondero's interests. It was also error because far from controlling the prior litigation, Dondero had actually become embroiled in litigation *against Highland*. ROA.278.

### a. In this case, privity should be determined at the time of the consent judgment.

The facts of this case implicate an issue this Court has not yet decided: at what time during the prior litigation must privity exist for claim preclusion to apply when the prior case ended in a consent judgment?

When Highland filed the adversary against Acis, Highland was still under Dondero's control. ROA.279. But during the pendency of the Highland Adversary, Dondero resigned from all roles with all Highland affiliates, an independent board was put in control, and Highland and Dondero became embroiled in litigation against one another. ROA.278–79. Dondero even objected to the settlement between Highland and Acis, demonstrating that his interests were not aligned with Highland's interests. ROA.427. Thus, even if the two were in privity when the Highland Adversary *commenced*, there is no debate that they were no longer in privity

when the bankruptcy court entered the consent judgment, and for at least some time before that.

Dondero contends that the relevant inquiry is whether a party and nonparty were in privity for purposes of liability allegations. *See* ROA.612. Thus, Dondero posits that the question is whether Acis's complaint against Highland alleged facts supporting privity between Dondero and Highland *at the time of the events giving rise to Acis's claims* against Highland. But that theory ignores a critical distinction outlined in the Restatement (Second) of Judgments, which this Court has applied in the res judicata context. *See Russell v. SunAmerica Securities, Inc.*, 962 F.2d 1169, 1175 (5th Cir. 1992) (considering vicarious liability relationship as a justification for privity); *Nagle v. Lee*, 807 F.2d 435, 443 n.4 (5th Cir. 1987) (discussing possible argument for privity based on vicarious liability exception in Restatement).

Specifically, the res-judicata impact of a judgment depends on the bases for and circumstances giving rise to the judgment. Some judgments adjudicate liability; others, like consent judgments, do not. Where the prior judgment was entered by consent, the ***time the consent judgment was entered*** should be the relevant period for assessing privity. *See, e.g.*, *Cygnus Telecommunications Tech., LLC v. Worldport Commc'ns, Inc.*, 543 F. Supp. 2d 1113 (N.D. Cal. 2008) (declining to apply res judicata because "the evidence does not indisputably show that [either defendant]

was in privity with [prior defendant] at the time that [prior defendant] entered into the Consent Judgment with [plaintiff]").

Section 51 of the Restatement (Second) of Judgments supports this approach, which provides that "[a] judgment by consent for or against an injured person does not extinguish his claim against the [vicariously liable] person not sued in the first action[.]"[7] The only exceptions to this rule are for indemnitors, those expressly released by the settlement agreement, and those who cannot be liable under the laws of suretyship. *See* Restatement (Second) of Judgments, §§ 50, 51 (1982). By contrast, the Restatement provides that a liability judgment extinguishes subsequent claims even against a vicariously liable non-party. *See id.* § 51.

Here, whether Dondero and Highland were in privity *in the past* is irrelevant to the preclusive effect of the consent judgment. There is no question they were not in privity at the time Highland agreed to and the bankruptcy court entered the consent judgment.

Dondero's former alter-ego relationship with Highland does not prevent Acis from suing him any more than his former alter-ego relationship with Acis prevents

---

[7]    In addition, Section 51 makes clear that regardless of the impact of alter ego allegations on privity, Acis's claims against Dondero were not extinguished because a consent judgment cannot be a basis to bar claims against non-parties that could have been brought in prior litigation.

Acis and Dondero, now entirely separate, from being on opposite sides of the present litigation. The bankruptcy court erred by treating an alleged alter-ego relationship as existing for all time once alleged. No case supports this approach, particularly when the alter-ego relationship was never adjudicated in the proceeding giving rise to the judgment—which was *a consent judgment*.

### b. Highland did not adequately represent Dondero's interests.

Contrary to *Taylor* and *Meza*, the district court adopted the reasoning of the bankruptcy court and decided that an alleged prior alter ego relationship between Dondero and Highland "establishes privity for the purposes of claim preclusion." ROA.638. Because alter ego allegations are not an end-run around the limitations on the adequate-representation exception, the district court erred by dismissing Acis's claims against Dondero on this basis.

### i. Highland's and Dondero's interests were not aligned when Highland agreed to the consent judgment.

Under *Taylor*, the first consideration in deciding whether representation of a nonparty is adequate for preclusion purposes is whether the interests of the nonparty (Dondero) and the representative (Highland) are aligned.[8] *See Taylor*, 553 U.S. at

---

[8]   This Court has applied *Taylor* in subsequent cases discussing non-mutual claim preclusion. *See, e.g.*, *Students for Fair Admissions*, 37 F.4th at 1087.

900.[9] Alignment is not established when the party and non-party were merely "interested in the same question or in proving the same set of facts." *Armadillo Hotel Grp., L.L.C. v. Harris*, 84 F.4th 623, 631 (5th Cir. 2023). Instead, there must be "an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues." *Meza*, 908 F.2d at 1272.

Below, Dondero did not attempt to show the existence of adequate representation under *Taylor*—because he cannot.[10] Highland's and Dondero's interests were demonstrably not aligned during the Highland Adversary because they were *suing each other* during that litigation. ROA.686. When parties sue each other, it indicates that they do not have aligned interests sufficient to establish privity. *See Gulf Island-IV, Inc. v. Blue Streak-Gulf Is Ops*, 24 F.3d 743, 747 n.5 (5th Cir. 1994) (finding interests were not aligned to support adequate representation in

---

[9]    *Taylor* disapproved of the theory of virtual representation on which the decision below rested but did not disapprove of all cases referencing virtual representation. 553 U.S. at 904 ("Many opinions use the term 'virtual representation' in reaching results at least arguably defensible on established grounds."). Accordingly, this Brief references virtual representation as described in *Meza* and its progeny because it is analogous with the Supreme Court's articulation of adequate representation in *Taylor*.

[10]    Dondero addresses alignment only by briefly arguing that Acis had alleged that Highland and Dondero were "one in the same," and they were therefore in complete alignment. ROA.784. This circular reasoning is entirely detached from the prevailing analysis under *Taylor* and *Meza*.

a prior suit when defendant filed cross claim against another defendant in the underlying lawsuit).

The timeline demonstrates that Dondero's and Highland's interests were not aligned when Highland entered the consent judgment that Dondero seeks to use to protect himself:

- **May 2018**: Highland Capital initiated the Highland Adversary against Acis. ROA.279.

- **January 2020**: Dondero resigned as an officer and director of Highland Capital, and an independent board was put in control. ROA.278.

- **Summer 2020**: Dondero proposed multiple reorganization plans, all of which Highland Capital rejected. ROA.278. As a result, Dondero then commenced a litigation campaign against Highland Capital. ROA.278. Highland Capital's new CEO even testified that Dondero had threatened to "burn the place down" if his proposed plans were not accepted. ROA.278–79.

- **August 3, 2020**: Bankruptcy court ordered Highland, Acis, and Dondero (among others) to mediate their various disputes. ROA.427.

- **September 9, 2020**: Acis and Highland entered the settlement agreement. ROA.427.

- **September 23, 2020**: Highland filed a motion for the bankruptcy court to approve the settlement agreement. ROA.428.

- **October 5, 2020**: Dondero objected to the settlement agreement and asked the bankruptcy court to deny the motion to approve the settlement agreement. ROA.429.

- **October 9, 2020**: Dondero resigned from all positions with all Highland affiliates. ROA.279.

- **October 28, 2020:** The bankruptcy court overruled Dondero's objection and approved the settlement agreement (giving rise to the consent judgment). ROA.429.

- **November 3, 2020:** Acis filed an unopposed motion to dismiss with prejudice Highland Capital, HCF Advisor, Ltd., Highland CLO Management, Ltd., and Highland CLO Holdings, Ltd. from the Highland Adversary pursuant to the approved settlement agreement. ROA.680.

- **November 6, 2020:** The bankruptcy court granted Acis's unopposed motion to dismiss with prejudice (together with the May 6, 2021, dismissal, the "consent judgment"). ROA.680.

- **December 7, 2020**: Highland filed an adversary proceeding against Dondero. ROA.279.

- **December 10, 2020**: Bankruptcy court entered an order temporarily restraining Dondero from communicating with Highland Capital's employees or attempting to interfere with the disposition of its assets.

- **April 28, 2021**: Acis entered a settlement agreement with Highland Funding and its individual directors (who had been sued in the Dondero Adversary). ROA.680.

- **May 3, 2021**: Acis filed a motion to dismiss Highland Funding and its directors. ROA.681.

- **May 6, 2021**: The Bankruptcy Court granted Acis's motion to dismiss with prejudice. ROA.681.

Beginning almost a year before the settlement agreement was approved, Dondero had resigned as an officer and director of Highland, and an independent board took control. ROA.278. At least as early as that point, Dondero and Highland's interests diverged, as demonstrated by Highland's rejection of Dondero's proposed reorganization plans, and the subsequent litigation between the two. ROA.278. By the time the settlement agreement was approved, Dondero had completely resigned from all positions with all Highland affiliates. ROA.279. In other words, there was no

express or implied legal relationship of accountability between Highland and Dondero. *See Meza*, 908 F.2d at 1272.

### ii. Highland was not acting as a representative of Dondero, and the bankruptcy court did not purport to be protecting Dondero's interests.

Next, for adequate representation to exist, Highland must have understood itself to be acting in a representative capacity, or the bankruptcy court must have taken care to protect Dondero's interests. *Taylor*, 553 U.S. at 900. Again, Dondero has not alleged that either of these requirements were satisfied and instead relies on the prior alter-ego *allegations* to establish privity. *See* ROA.784.

For the same reasons discussed above, Highland could not have understood itself to be acting as a representative of Dondero in the Highland Adversary. Instead of representing Dondero's interests, Highland actively departed from them by filing a motion to approve the settlement agreement, which Dondero did not join and to which he objected. ROA.428–29. There is also no record evidence that the bankruptcy court took care to protect Dondero's interests; rather, the bankruptcy court approved a settlement between Highland and Acis that allowed Acis to continue pursuing Dondero. ROA.429.

### c. Dondero did not control the litigation.

Under *Meza*, privity may also exist where the nonparty controlled the prior litigation. 908 F.2d at 1266. For preclusion purposes, a party controls the prior litigation only if they had "effective choice as to the legal theories and proofs" advanced on behalf of the party to the prior action, as well as "control over the opportunity to obtain review." *Students for Fair Admissions*, 27 F.4th at 1087. Dondero had neither.

Dondero lost control over Highland well before the parties reached a settlement that the bankruptcy court approved, resulting in the consent judgment dismissing the Highland Adversary. ROA.435; ROA.685. Dondero ceased to be Highland's chief executive and surrendered control to an independent board in January 2020; by October 2020, Dondero had resigned from every position he held with all Highland affiliates. ROA.435–36. Far from controlling the Highland Adversary, Highland and Dondero were *suing each other* during the same time period, and the bankruptcy court enjoined Dondero from communicating with Highland employees. ROA.436; ROA.685. The Highland Adversary was therefore not under Dondero's control because Dondero was unable to control the litigation strategy. *See Students for Fair Admissions*, 27 F.4th at 1087.

## II.     Alter ego allegations do not automatically create eternal privity.

To avoid the consequences of the narrow application of res judicata, Dondero relies on Acis's alter ego allegations in the Dondero Adversary to argue that "Dondero and the parties to the [Highland Adversary] were identical[11] or, at a minimum, in privity based on alter ego." ROA.780. But allegations of alter ego are not a basis for automatically applying res judicata to non-parties under the law of this Court or the Supreme Court.

There is no dispute that Acis's complaint in the Dondero Adversary alleges that Dondero and Highland were alter egos at one point in time when Dondero controlled Highland. But allegations of alter ego, standing alone, are insufficient to create privity for res judicata purposes because precedent limits a finding of privity to narrow, defined circumstances—none of which are premised on alter ego allegations. *See Taylor*, 553 U.S. at 893; *Meza*, 908 F.2d at 1266. It may well be that in some cases, privity exists because of an alter ego relationship, but a court cannot make such finding without first determining that one of the circumstances identified in *Taylor* or *Meza* exist.

---

[11]     Although Dondero claims the two are identical, the Bankruptcy Court already decided that Dondero and Highland are *not* identical. *See* ROA.97 ("Dondero is a separate judicial entity from the Highland Entities[.]").

The district court relied on *Dudley v. Smith* and *Flores v. Bodden* to reach the opposite conclusion. ROA.637–38; ROA.797. Neither case supports the idea that an alter ego allegation establishes privity.

In *Dudley v. Smith*, 504 F.2d 979, 982 (5th Cir. 1974), this Court held, relying on a jury's *finding* of alter ego, that a "stockholder ***may be*** in privity with his corporation . . . such that a judgment against the latter is res judicata as to the former, if the two are found to be alter egos" (emphasis added). This holding does not suggest that alter egos are *always* and *eternally* in privity—nor that mere allegations of alter ego establish privity. In fact, Acis's position is consistent with *Dudley*. Acis agrees that in certain instances, a proven alter ego relationship (at the relevant point in time) may meet the requirements of *Taylor* and *Meza* and establish privity. Acis merely posits that this is not necessarily true as a matter of law based on mere allegations of alter ego at one point in time, and courts must, at a minimum, conduct the res-judicata analysis. The district court failed to do so here.

*Flores v. Bodden*, 488 Fed. Appx. 770 (5th Cir. 2012) also does not stand for the proposition that allegations of alter ego suffice to establish privity as a matter of law. In *Flores*, an injured employee (Flores) sued his employer (RJMW Corporation) for on-the-job injuries in the underlying lawsuit. *Id.* at 772. Bodden was the owner of RJMW Corporation. *Id.* Flores obtained an award in the underlying lawsuit against

RJMW Corporation, which had since declared bankruptcy. *Id.* Then, Flores sued Bodden in his personal capacity, arguing that as the alter ego of RJMW Corporation, Bodden should be liable for Flores's injuries. *Id.* After a bench trial, the district court concluded that Bodden was RJMW Corporation's alter ego such that he was personally liable for Flores's injuries. *Id.* Bodden argued that the district court erred by imposing liability against him based on the judgment against RJMW Corporation in the prior case, based on the theory that neither he nor his current counsel had participated in the prior case. *Id.* at 779. This Court disagreed and held that Bodden could not escape liability because "[t]he entire purpose of the alter ego theory of liability would be undermined if the alter ego of a corporation could force parties to relitigate otherwise precluded claims against the corporation." *Id.* at 778–79.

Importantly, Flores did not hold that privity existed based on a ***former*** alter ego relationship that ended long before judgment was entered, as in this case. Indeed, in *Flores*, Bodden controlled the alter-ego corporation when the facts giving rise to liability occurred and at the time the judgment was entered, and the district court made an alter-ego finding following a trial. Thus, both issues had been adjudicated, not alleged, for res judicata to apply: (1) the underlying liability of the alter-ego corporation, and (2) Bodden's alter-ego relationship with the corporation.

One final comment: the district court's holding does not just fail to properly apply *Taylor* and *Meza*. Instead, it creates new law with significant consequences, particularly in complex corporate malfeasance situations like here. A corporate bad actor is protected by the defense of res judicata because the entities he used to raid the injured party later settles the injured party's claims—at a time when those entities were adverse with the bad actor. Indeed, the bad actor's malfeasance is the very reason that the injured party was suing the entities in the first place. So, rather than being held accountable, the bad actor benefits from the very situation he created. Neither precedent nor common sense support this result, and this Court should reverse.

## CONCLUSION & PRAYER

For the foregoing reasons, this Court should reverse the district court's orders dismissing Acis's claims against Dondero with prejudice and remand for further proceedings.

Respectfully submitted,

**AHMAD ZAVITSANOS
& MENSING PLLC**

*/s/ Emily Merritt Adler*
Emily Merritt Adler
Texas Bar No. 24121009
Federal ID No. 3710388
Kelsi Stayart White
Texas Bar No. 24098466
Federal ID No. 9225914
AHMAD, ZAVITSANOS & MENSING, P.C.
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Tel.: (713) 655-1101
Fax: (713) 655-0062
eadler@azalaw.com
kwhite@azalaw.com

*Counsel for Appellants Acis Capital
Management LLP and Acis Capital
Management GP*

## Certificate of Service

On December 12, 2025, I certify that I served a true and correct copy of this Brief on all counsel of record pursuant to CM/ECF filing in compliance with the FEDERAL RULES OF APPELLATE PROCEDURE.

*/s/ Emily Merritt Adler*
Emily Merritt Adler

## Certificate of Compliance

1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(A)(7)(B) because this brief contains 5,303 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

2. This brief also complies with the typeface requirements of FED. R. APP. P. 32(A)(5) and the type requirements of FED. R. APP. P. 32(A)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 with a 14-point font named Equity A.

*/s/ Emily Merritt Adler*
Emily Merritt Adler