No. 25-10797

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

In the Matter of Acis Capital Management, L.P.; Acis Capital Management GP, L.L.C.,

*Debtors*

Acis Capital Management, L.P.; Acis Capital Management GP, L.L.C.,

*Appellants*

v.

James Dondero,

*Appellee*

On Appeal from the United States District Court
for the Northern District of Texas
No. 3:24-CV-2036

### APPELLANTS' RECORD EXCERPTS

Emily Merritt Adler
eadler@azalaw.com
Kelsi Stayart White
kwhite@azalaw.com

Ahmad Zavitsanos & Mensing, PLLC
1221 McKinney Street, Suite 2500
Houston, Texas 77010
713-655-1101

Respectfully submitted,

**AHMAD ZAVITSANOS & MENSING PLLC**

*/s/ Emily Merritt Adler*

Emily Merritt Adler
Texas Bar No. 24121009
Federal ID No. 3710388
Kelsi Stayart White
Texas Bar No. 24098466
Federal ID No. 9225914
AHMAD, ZAVITSANOS & MENSING, P.C.
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Tel.: (713) 655-1101
Fax: (713) 655-0062
eadler@azalaw.com
kwhite@azalaw.com

*Counsel for Appellants Acis Capital
Management LLP and Acis Capital
Management GP*

**Certificate of Service**

On December 12, 2025, I certify that I served a true and correct copy of these Record Excerpts on all counsel of record pursuant to CM/ECF filing in compliance with the FEDERAL RULES OF APPELLATE PROCEDURE.


/s/ Emily Merritt Adler
Emily Merritt Adler

# Record Excerpts

Tab 1        Docket Sheet, ROA.1–6.

Tab 2        Docket Sheet, ROA.817-22.

Tab 3        Acis's Notice of Appeal, ROA.808-09.

Tab 4        The District Court's Order Granting Rule 54(b) Final Judgment, ROA.805-07.

Tab 5        The District Court's Order Adopting the Report and Recommendation of the Bankruptcy Court that it Dismiss Counts 3 and 5 with Prejudice,  ROA.636–39.

Tab 6        The District Court's Order Adopting the Report and Recommendation of the Bankruptcy Court that it Grant Judgment on the Pleadings, ROA.795-98.

Tab 7        Report and Recommendation of the Bankruptcy Court that it Grant Judgment on the Pleadings, ROA.657-68.

Tab 8        Report and Recommendation of the Bankruptcy Court that it Grant Dondero's Motion to Dismiss Counts 3 & 5, ROA.57-104.

# TAB 1

APPEAL,BKAPP,HORAN,STAYED

# U.S. District Court
## Northern District of Texas (Dallas)
## CIVIL DOCKET FOR CASE #: 3:24-cv-02036-N

| | |
|---|---|
| ACIS Capital Management LP et al v. Dondero et al | Date Filed: 08/09/2024 |
| Assigned to: Chief District Judge David C Godbey | Jury Demand: None |
| Cause: 28:0157 Motion for Withdrawal of Reference | Nature of Suit: 423 Bankruptcy: Withdrawal 28 USC 157 |
| | Jurisdiction: Federal Question |

**Debtor**

**ACIS Capital Management LP**

**Debtor**

**Acis Capital Management GP LLC**

**Plaintiff**

**ACIS Capital Management LP**                    represented by     **Joseph Y Ahmad**
Ahmad Zavitsanos & Mensing PLLC
1221 McKinney Street, Suite 2500
Houston, TX 77010
713-655-1101
Fax: 713-655-0062
Email: joeahmad@azalaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Sean Francis Healey**
Ahmad Zavitsanos & Mensing PLLC
1221 McKinney Street, Suite 2500
Houston, TX 77010
713-600-4934
Email: shealey@azalaw.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Shawn M Bates**
Ahmad, Zavitsanos & Mensing PLLC
1221 McKinney
Ste 2500
Houston, TX 77010
713-655-1101
Fax: 713-655-0062
Email: sbates@azalaw.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Thomas Albert Cooke**
Ahmad Zavitsanos & Mensing PLLC
1221 McKinney Street, Suite 2500
Houston, TX 77010
713-655-1101
Email: tcooke@azalaw.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Plaintiff**

**ACIS Capital Management GP LLC**          represented by   **Joseph Y Ahmad**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Sean Francis Healey**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Shawn M Bates**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Thomas Albert Cooke**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

V.

**Defendant**

**James Dondero**                            represented by   **Michael J Lang**
*TERMINATED: 04/23/2025*                                     Crawford Wishnew & Lang PLLC
1700 Pacific Avenue, Suite 2390
Dallas, TX 75201
214-817-4500
Fax: 214-817-4509
Email: mlang@cwl.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Defendant**

**Grant Scott**                              represented by   **Ryan K Lurich**
Friedman & Feiger LLP
17304 Preston Road, Suite 300
Dallas, TX 75252
972-788-1400

25-10797.2

Fax: 972-788-2667
Email: rlurich@fflawoffice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Defendant**

**CLO Holdco Ltd**                                    represented by    **Louis M Phillips**
Kelly Hart & Pitre
301 Main Street, Suite 1600
Baton Rouge, LA 70801
225-381-9643
Fax: 225-336-9763
Email: louis.phillips@kellyhart.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Bankruptcy Judge**

**Stacey G Jernigan**                                  represented by    **Stacey G Jernigan**
US Bankruptcy Court
Chambers of Judge Stacey G C Jernigan
1100 Commerce St
Room 1254
Dallas, TX 75242-1496
214-753-2040
Email: sgj_settings@txnb.uscourts.gov
PRO SE

V.

**Notice Only**

**Case Admin Sup**                                    represented by    **Case Admin Sup**
Email: txnb_appeals@txnb.uscourts.gov
PRO SE

| Date Filed | # | Docket Text |
|---|---|---|
| 08/09/2024 | 1 (p.7) | Notice of transmittal of motion for Withdrawal of Reference in bankruptcy case number 20-03060 to presiding judge. The filing fee has been paid in the Bankruptcy Court. A link to the Judges Copy Requirements is provided for your review. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms and Instructions found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 (p.7) Motion to withdraw the reference, # 2 (p.46) Brief in support of motion to withdraw the reference) (Whitaker - TXNB, Sheniqua) (Entered: 08/09/2024) |

| 08/09/2024 | | New Case Notes: A filing fee has been paid. (ykp) (Entered: 08/09/2024) |
|---|---|---|
| 10/09/2024 | 2 (p.46) | NOTICE of Report and Recommendation to the District Court transmitting Stipulation of the Parties regarding Defendant's Motion to Withdraw the Reference filed by Case Admin Sup (Attachments: # 1 (p.7) Report and Recommendation and Stipulation) (Whitaker - TXNB, Sheniqua) (Entered: 10/09/2024) |
| 10/15/2024 | 3 (p.56) | NOTICE of Report and Recommendation to the District Court that it grants Defendant James Dondero's motion to dismiss counts 3 & 5. filed by Case Admin Sup (Attachments: # 1 (p.7) Report and Recommendation # 2 (p.46) Motion to Dismiss Portions of Complaint) (Whitaker - TXNB, Sheniqua) (Entered: 10/15/2024) |
| 10/21/2024 | 4 (p.108) | ORDER ADOPTING REPORTS AND RECOMMENDATIONS re: 2 (p.46) Notice (Other), 3 (p.56) Notice (Other). (Ordered by Chief District Judge David C Godbey on 10/21/2024) (cfk) (Entered: 10/21/2024) |
| 10/28/2024 | 5 (p.110) | MOTION to Amend/Correct 4 (p.108) Order Accepting/Adopting Findings and Recommendations , MOTION for Reconsideration re 4 (p.108) Order Accepting/Adopting Findings and Recommendations () filed by ACIS Capital Management LP, ACIS Capital Management GP LLC (Attachments: # 1 (p.7) Proposed Order)Attorney Shawn M Bates added to party ACIS Capital Management LP(pty:pla), Attorney Shawn M Bates added to party ACIS Capital Management GP LLC(pty:pla) (Bates, Shawn) (Entered: 10/28/2024) |
| 10/28/2024 | 6 (p.115) | Brief/Memorandum in Support filed by ACIS Capital Management LP, ACIS Capital Management GP LLC re 5 (p.110) MOTION to Amend/Correct 4 (p.108) Order Accepting/Adopting Findings and Recommendations MOTION for Reconsideration re 4 (p.108) Order Accepting/Adopting Findings and Recommendations (Attachments: # 1 (p.7) Exhibit(s) Ex. 1, # 2 (p.46) Exhibit(s) Ex. 2, # 3 (p.56) Exhibit(s) Ex. 2-A, # 4 (p.108) Exhibit(s) Ex. 2-B, # 5 (p.110) Exhibit(s) Ex. 2-C, # 6 (p.115) Exhibit(s) Ex. 2-D, # 7 (p.265) Exhibit(s) Ex. 3) (Bates, Shawn) (Entered: 10/28/2024) |
| 10/28/2024 | 7 (p.265) | Brief/Memorandum in Support filed by ACIS Capital Management LP, ACIS Capital Management GP LLC re 5 (p.110) MOTION to Amend/Correct 4 (p.108) Order Accepting/Adopting Findings and Recommendations MOTION for Reconsideration re 4 (p.108) Order Accepting/Adopting Findings and Recommendations *(with amended Exhibit 1)* (Attachments: # 1 (p.7) Exhibit(s) Ex. 1, # 2 (p.46) Exhibit(s) Ex. 2, # 3 (p.56) Exhibit(s) Ex. 2-A, # 4 (p.108) Exhibit(s) Ex. 2-B, # 5 (p.110) Exhibit(s) Ex. 2-C, # 6 (p.115) Exhibit(s) Ex. 2-D, # 7 (p.265) Exhibit(s) Ex. 3) (Bates, Shawn) (Entered: 10/28/2024) |
| 10/29/2024 | 8 (p.415) | OBJECTION filed by ACIS Capital Management LP, ACIS Capital Management GP LLC re: 4 (p.108) Order Accepting/Adopting Findings and Recommendations (Ahmad, Joseph) (Entered: 10/29/2024) |

| 10/29/2024 | 9 (p.418) | Brief/Memorandum in Support filed by ACIS Capital Management LP, ACIS Capital Management GP LLC re 8 (p.415) Response/Objection (Attachments: # 1 (p.7) Exhibit(s) 1, # 2 (p.46) Exhibit(s) 2, # 3 (p.56) Exhibit(s) 2-A, # 4 (p.108) Exhibit(s) 2-B, # 5 (p.110) Exhibit(s) 2-C, # 6 (p.115) Exhibit(s) 2-D, # 7 (p.265) Exhibit(s) 3) (Ahmad, Joseph) (Entered: 10/29/2024) |
| 11/19/2024 | 10 (p.586) | RESPONSE filed by James Dondero re: 8 (p.415) Response/Objection, 9 (p.418) Brief/Memorandum in Support of Motion, (Ohlinger, Alexandra) (Entered: 11/19/2024) |
| 11/19/2024 | 11 (p.616) | NOTICE of *No Opposition to the Relief Requested in Plaintiffs' Motion to Vacate* re: 5 (p.110) MOTION to Amend/Correct 4 (p.108) Order Accepting/Adopting Findings and Recommendations MOTION for Reconsideration re 4 (p.108) Order Accepting/Adopting Findings and Recommendations , 6 (p.115) Brief/Memorandum in Support of Motion,, filed by James Dondero (Ohlinger, Alexandra) (Entered: 11/19/2024) |
| 11/22/2024 | 12 (p.618) | MOTION for Leave to File Reply filed by ACIS Capital Management LP, ACIS Capital Management GP LLC (Attachments: # 1 (p.7) Exhibit(s) Reply in support of Objection) (Bates, Shawn) (Entered: 11/22/2024) |
| 01/06/2025 | 13 (p.636) | ORDER: The Court grants Acis's motion to vacate, and hereby vacates its prior Order Adopting Report and Recommendation 4 (p.108) , only to the extent that it granted Defendant James Dondero's motion to dismiss counts 3 and 5. The Court further grants Acis's 12 (p.618) motion for leave to file a reply. Then, upon consideration of Acis's objection, Dondero's response, and Aciss reply, the Court again adopts the 3 (p.56) -1 Report and Recommendation of the Bankruptcy Court and dismisses counts 3 and 5 with prejudice because the doctrine of claim preclusion applies. (Unless the document has already been filed, clerk to enter the document as of the date of this order.) (Ordered by Chief District Judge David C Godbey on 1/6/2025) (agc) (Entered: 01/06/2025) |
| 01/06/2025 | 14 (p.640) | REPLY filed by ACIS Capital Management LP, ACIS Capital Management GP LLC re: 4 (p.108) Order Accepting/Adopting Findings and Recommendations. (agc) (Entered: 01/06/2025) |
| 02/26/2025 | 15 (p.656) | NOTICE of Report and Recommendation to the District Court That It Grant Defendant James Dondero's Motion for Judgment on The Pleadings and "Supplemental" Motion for Summary Judgment and Dismiss with Prejudice all Remaining Counts Against Dondero filed by Case Admin Sup. (Attachments: # 1 (p.7) Report and Recommendation) (Whitaker - TXNB, Sheniqua) (Entered: 02/26/2025) |
| 02/26/2025 | 16 (p.669) | NOTICE of ACIS Capital Management, L.P. and ACIS Capital Management GP, LLC's Objection and Brief in Support of Objection to Report and Recommendation to District Court that it Grant Defendant James Dondero's Motion for Judgment on the Pleadings and "Supplemental" Motion for Summary Judgment and Dismiss with Prejudice All Remaining Counts Against Dondero re: |

| | | |
|---|---|---|
| | | 15 (p.656) Notice (Other), filed by Case Admin Sup (Attachments: # 1 (p.7) Objection to Report and Recommendation, # 2 (p.46) Brief in Support of Objection to Report and Recommendation) (Whitaker - TXNB, Sheniqua) (Entered: 02/26/2025) |
| 02/26/2025 | 17 (p.763) | NOTICE of James Dondero's Response to Plaintiffs' Objection to Report and Recommendation to the District Court That it Grant Dondero's Motion for Judgment on the Pleadings and "Supplemental" Motion for Summary Judgment and Dismiss with Prejudice all Remaining Counts Against Dondero re: 16 (p.669) Notice (Other),, filed by Case Admin Sup. (Attachments: # 1 (p.7) Response opposed to Objection to Report and Recommendation) (Whitaker - TXNB, Sheniqua) (Entered: 02/26/2025) |
| 04/23/2025 | 18 (p.795) | ORDER: The Court adopts the Bankruptcy Court's report and recommendation and grants Dondero's motion for judgment on the pleadings and supplemental motion for summary judgment. The three remaining claims against Dondero are dismissed with prejudice. (Ordered by Chief District Judge David C Godbey on 4/23/2025) (agc) (Entered: 04/23/2025) |
| 05/05/2025 | 19 (p.799) | Unopposed MOTION for Leave to Appeal filed by ACIS Capital Management GP LLC, ACIS Capital Management LP. filed by ACIS Capital Management GP LLC, ACIS Capital Management LP (Bates, Shawn) (Entered: 05/05/2025) |
| 06/24/2025 | 20 (p.805) | ORDER GRANTING 19 (p.799) RULE 54(b) FINAL JUDGMENT: The Court grants Acis's motion for entry of judgment and for stay pending appeal. It is, therefore, ordered that Acis take nothing on its claims against James Dondero and the Clerk is directed to enter final judgment as to Dondero only. The Court further orders that the remaining litigation against CLO HoldCo is stayed pending resolution of any appeal of this judgment. (Ordered by Chief District Judge David C Godbey on 6/24/2025) (ykp) (Entered: 06/24/2025) |
| 06/27/2025 | 21 (p.808) | NOTICE OF INTERLOCUTORY APPEAL as to 18 (p.795) Order of Dismissal or Administrative Closure, 20 (p.805) Judgment to the Fifth Circuit by ACIS Capital Management GP LLC, ACIS Capital Management LP. Filing fee $605, receipt number ATXNDC-15609618. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Healey, Sean) (Entered: 06/27/2025) |

**TAB 2**

APPEAL,BKAPP,HORAN,STAYED

# U.S. District Court
# Northern District of Texas (Dallas)
# CIVIL DOCKET FOR CASE #: 3:24-cv-02036-N

| | |
|---|---|
| ACIS Capital Management LP et al v. Dondero et al | Date Filed: 08/09/2024 |
| Assigned to: Judge David C Godbey | Jury Demand: None |
| Cause: 28:0157 Motion for Withdrawal of Reference | Nature of Suit: 423 Bankruptcy: Withdrawal 28 USC 157 |
| | Jurisdiction: Federal Question |

**Debtor**

**ACIS Capital Management LP**

**Debtor**

**Acis Capital Management GP LLC**

**Plaintiff**

**ACIS Capital Management LP**    represented by    **Joseph Y Ahmad**
Ahmad Zavitsanos & Mensing PLLC
1221 McKinney Street, Suite 2500
Houston, TX 77010
713-655-1101
Fax: 713-655-0062
Email: joeahmad@azalaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Sean Francis Healey**
Ahmad Zavitsanos & Mensing PLLC
1221 McKinney Street, Suite 2500
Houston, TX 77010
713-600-4934
Email: shealey@azalaw.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Shawn M Bates**
Ahmad, Zavitsanos & Mensing PLLC
1221 McKinney
Ste 2500
Houston, TX 77010
713-655-1101
Fax: 713-655-0062
Email: sbates@azalaw.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Thomas Albert Cooke**
Ahmad Zavitsanos & Mensing PLLC
1221 McKinney Street, Suite 2500
Houston, TX 77010
713-655-1101
Email: tcooke@azalaw.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Plaintiff**

**ACIS Capital Management GP LLC**           represented by   **Joseph Y Ahmad**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Sean Francis Healey**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Shawn M Bates**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Thomas Albert Cooke**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

V.

**Defendant**

**James Dondero**                            represented by   **Michael J Lang**
*TERMINATED: 04/23/2025*                                      Crawford Wishnew & Lang PLLC
1700 Pacific Avenue, Suite 2390
Dallas, TX 75201
214-817-4500
Fax: 214-817-4509
Email: mlang@cwl.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Defendant**

**Grant Scott**                              represented by   **Ryan K Lurich**
Friedman & Feiger LLP
17304 Preston Road, Suite 300
Dallas, TX 75252
972-788-1400

Fax: 972-788-2667
Email: rlurich@fflawoffice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Defendant**

**CLO Holdco Ltd**                    represented by   **Louis M Phillips**
                                                       Kelly Hart & Pitre
                                                       301 Main Street, Suite 1600
                                                       Baton Rouge, LA 70801
                                                       225-381-9643
                                                       Fax: 225-336-9763
                                                       Email: louis.phillips@kellyhart.com
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*
                                                       *Bar Status: Admitted/In Good Standing*

**Bankruptcy Judge**

**Stacey G Jernigan**                 represented by   **Stacey G Jernigan**
                                                       US Bankruptcy Court
                                                       Chambers of Judge Stacey G C Jernigan
                                                       1100 Commerce St
                                                       Room 1254
                                                       Dallas, TX 75242-1496
                                                       214-753-2040
                                                       Email: sgj_settings@txnb.uscourts.gov
                                                       PRO SE

V.

**Notice Only**

**Case Admin Sup**                    represented by   **Case Admin Sup**
                                                       Email: txnb_appeals@txnb.uscourts.gov
                                                       PRO SE

| Date Filed | # | Docket Text |
|---|---|---|
| 08/09/2024 | 1 | Notice of transmittal of motion for Withdrawal of Reference in bankruptcy case number 20-03060 to presiding judge. The filing fee has been paid in the Bankruptcy Court. A link to the Judges Copy Requirements is provided for your review. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms and Instructions found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 Motion to withdraw the reference, # 2 Brief in support of motion to withdraw the reference) (Whitaker - TXNB, Sheniqua) (Entered: 08/09/2024) |
| 08/09/2024 | | New Case Notes: A filing fee has been paid. (ykp) (Entered: 08/09/2024) |

| 10/09/2024 | 2 | NOTICE of Report and Recommendation to the District Court transmitting Stipulation of the Parties regarding Defendant's Motion to Withdraw the Reference filed by Case Admin Sup (Attachments: # 1 Report and Recommendation and Stipulation) (Whitaker - TXNB, Sheniqua) (Entered: 10/09/2024) |
|---|---|---|
| 10/15/2024 | 3 | NOTICE of Report and Recommendation to the District Court that it grants Defendant James Dondero's motion to dismiss counts 3 & 5. filed by Case Admin Sup (Attachments: # 1 Report and Recommendation # 2 Motion to Dismiss Portions of Complaint) (Whitaker - TXNB, Sheniqua) (Entered: 10/15/2024) |
| 10/21/2024 | 4 | ORDER ADOPTING REPORTS AND RECOMMENDATIONS re: 2 Notice (Other), 3 Notice (Other). (Ordered by Chief District Judge David C Godbey on 10/21/2024) (cfk) (Entered: 10/21/2024) |
| 10/28/2024 | 5 | MOTION to Amend/Correct 4 Order Accepting/Adopting Findings and Recommendations , MOTION for Reconsideration re 4 Order Accepting/Adopting Findings and Recommendations () filed by ACIS Capital Management LP, ACIS Capital Management GP LLC (Attachments: # 1 Proposed Order)Attorney Shawn M Bates added to party ACIS Capital Management LP(pty:pla), Attorney Shawn M Bates added to party ACIS Capital Management GP LLC(pty:pla) (Bates, Shawn) (Entered: 10/28/2024) |
| 10/28/2024 | 6 | Brief/Memorandum in Support filed by ACIS Capital Management LP, ACIS Capital Management GP LLC re 5 MOTION to Amend/Correct 4 Order Accepting/Adopting Findings and Recommendations MOTION for Reconsideration re 4 Order Accepting/Adopting Findings and Recommendations (Attachments: # 1 Exhibit(s) Ex. 1, # 2 Exhibit(s) Ex. 2, # 3 Exhibit(s) Ex. 2-A, # 4 Exhibit(s) Ex. 2-B, # 5 Exhibit(s) Ex. 2-C, # 6 Exhibit(s) Ex. 2-D, # 7 Exhibit(s) Ex. 3) (Bates, Shawn) (Entered: 10/28/2024) |
| 10/28/2024 | 7 | Brief/Memorandum in Support filed by ACIS Capital Management LP, ACIS Capital Management GP LLC re 5 MOTION to Amend/Correct 4 Order Accepting/Adopting Findings and Recommendations MOTION for Reconsideration re 4 Order Accepting/Adopting Findings and Recommendations *(with amended Exhibit 1)* (Attachments: # 1 Exhibit(s) Ex. 1, # 2 Exhibit(s) Ex. 2, # 3 Exhibit(s) Ex. 2-A, # 4 Exhibit(s) Ex. 2-B, # 5 Exhibit(s) Ex. 2-C, # 6 Exhibit(s) Ex. 2-D, # 7 Exhibit(s) Ex. 3) (Bates, Shawn) (Entered: 10/28/2024) |
| 10/29/2024 | 8 | OBJECTION filed by ACIS Capital Management LP, ACIS Capital Management GP LLC re: 4 Order Accepting/Adopting Findings and Recommendations (Ahmad, Joseph) (Entered: 10/29/2024) |
| 10/29/2024 | 9 | Brief/Memorandum in Support filed by ACIS Capital Management LP, ACIS Capital Management GP LLC re 8 Response/Objection (Attachments: # 1 Exhibit(s) 1, # 2 Exhibit(s) 2, # 3 Exhibit(s) 2-A, # 4 Exhibit(s) 2-B, # 5 Exhibit(s) 2-C, # 6 Exhibit(s) 2-D, # 7 Exhibit(s) 3) (Ahmad, Joseph) (Entered: 10/29/2024) |
| 11/19/2024 | 10 | RESPONSE filed by James Dondero re: 8 Response/Objection, 9 Brief/Memorandum in Support of Motion, (Ohlinger, Alexandra) (Entered: 11/19/2024) |
| 11/19/2024 | 11 | NOTICE of *No Opposition to the Relief Requested in Plaintiffs' Motion to Vacate* re: 5 MOTION to Amend/Correct 4 Order Accepting/Adopting Findings and Recommendations MOTION for Reconsideration re 4 Order Accepting/Adopting Findings and Recommendations , 6 Brief/Memorandum in Support of Motion,, filed by James Dondero (Ohlinger, Alexandra) (Entered: 11/19/2024) |

| | | |
|---|---|---|
| 11/22/2024 | 12 | MOTION for Leave to File Reply filed by ACIS Capital Management LP, ACIS Capital Management GP LLC (Attachments: # 1 Exhibit(s) Reply in support of Objection) (Bates, Shawn) (Entered: 11/22/2024) |
| 01/06/2025 | 13 | ORDER: The Court grants Acis's motion to vacate, and hereby vacates its prior Order Adopting Report and Recommendation 4 , only to the extent that it granted Defendant James Dondero's motion to dismiss counts 3 and 5. The Court further grants Acis's 12 motion for leave to file a reply. Then, upon consideration of Acis's objection, Dondero's response, and Aciss reply, the Court again adopts the 3 -1 Report and Recommendation of the Bankruptcy Court and dismisses counts 3 and 5 with prejudice because the doctrine of claim preclusion applies. (Unless the document has already been filed, clerk to enter the document as of the date of this order.) (Ordered by Chief District Judge David C Godbey on 1/6/2025) (agc) (Entered: 01/06/2025) |
| 01/06/2025 | 14 | REPLY filed by ACIS Capital Management LP, ACIS Capital Management GP LLC re: 4 Order Accepting/Adopting Findings and Recommendations. (agc) (Entered: 01/06/2025) |
| 02/26/2025 | 15 | NOTICE of Report and Recommendation to the District Court That It Grant Defendant James Dondero's Motion for Judgment on The Pleadings and "Supplemental" Motion for Summary Judgment and Dismiss With Prejudice all Remaining Counts Against Dondero filed by Case Admin Sup. (Attachments: # 1 Report and Recommendation) (Whitaker - TXNB, Sheniqua) (Entered: 02/26/2025) |
| 02/26/2025 | 16 | NOTICE of ACIS Capital Management, L.P. and ACIS Capital Management GP, LLC's Objection and Brief in Support of Objection to Report and Recommendation to District Court that it Grant Defendant James Dondero's Motion for Judgment on the Pleadings and "Supplemental" Motion for Summary Judgment and Dismiss with Prejudice All Remaining Counts Against Dondero re: 15 Notice (Other), filed by Case Admin Sup (Attachments: # 1 Objection to Report and Recommendation, # 2 Brief in Support of Objection to Report and Recommendation) (Whitaker - TXNB, Sheniqua) (Entered: 02/26/2025) |
| 02/26/2025 | 17 | NOTICE of James Dondero's Response to Plaintiffs' Objection to Report and Recommendation to the District Court That it Grant Dondero's Motion for Judgment on the Pleadings and "Supplemental" Motion for Summary Judgment and Dismiss with Prejudice all Remaining Counts Against Dondero re: 16 Notice (Other),, filed by Case Admin Sup. (Attachments: # 1 Response opposed to Objection to Report and Recommendation) (Whitaker - TXNB, Sheniqua) (Entered: 02/26/2025) |
| 04/23/2025 | 18 | ORDER: The Court adopts the Bankruptcy Court's report and recommendation and grants Dondero's motion for judgment on the pleadings and supplemental motion for summary judgment. The three remaining claims against Dondero are dismissed with prejudice. (Ordered by Chief District Judge David C Godbey on 4/23/2025) (agc) (Entered: 04/23/2025) |
| 05/05/2025 | 19 | Unopposed MOTION for Leave to Appeal filed by ACIS Capital Management GP LLC, ACIS Capital Management LP. filed by ACIS Capital Management GP LLC, ACIS Capital Management LP (Bates, Shawn) (Entered: 05/05/2025) |
| 06/24/2025 | 20 | ORDER GRANTING 19 RULE 54(b) FINAL JUDGMENT: The Court grants Acis's motion for entry of judgment and for stay pending appeal. It is, therefore, ordered that Acis take nothing on its claims against James Dondero and the Clerk is directed to enter final judgment as to Dondero only. The Court further orders that the remaining litigation against CLO HoldCo is stayed pending resolution of any appeal of this |

| | | |
|---|---|---|
| | | judgment. (Ordered by Chief District Judge David C Godbey on 6/24/2025) (ykp) (Entered: 06/24/2025) |
| 06/27/2025 | 21 | NOTICE OF INTERLOCUTORY APPEAL as to 18 Order of Dismissal or Administrative Closure, 20 Judgment to the Fifth Circuit by ACIS Capital Management GP LLC, ACIS Capital Management LP. Filing fee $605, receipt number ATXNDC-15609618. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Healey, Sean) (Entered: 06/27/2025) |
| 08/18/2025 | | Record on Appeal for USCA5 25-10797 (related to 21 appeal): Record consisting of: 1 ECF electronic record on appeal (eROA) is certified. **PLEASE NOTE THE FOLLOWING:** Licensed attorneys must have filed an appearance in the USCA5 case and be registered for electronic filing in the USCA5 to access the paginated eROA in the USCA5 ECF system. (Take these steps immediately if you have not already done so. Once you have filed the notice of appearance and/or USCA5 ECF registration, it may take up to 3 business days for the circuit to notify the district clerk that we may grant you access to the eROA in the USCA5 ECF system.) To access the paginated record, log in to the USCA5 ECF system, and under the Utilities menu, select Electronic Record on Appeal. Pro se litigants may request a copy of the record by contacting the appeals deputy in advance to arrange delivery. (axm) (Entered: 08/18/2025) |
| 11/07/2025 | 22 (p.823) | Received letter from USCA5: The court has granted the motion to supplement or correct the record in this case. The originating court is requested to provide us with a supplemental electronic record consisting of the documents outlined in the attached motion. (axm) (Entered: 11/10/2025) |
| 11/14/2025 | 23 (p.833) | Notice Transmitting BK Record on Appeal re Appeal Record Certified/Transmitted,,, 22 (p.823) Letter, (Attachments: # 1 Supplemental Record Vol. 1, # 2 Supplemental Record Vol. 2, # 3 Supplemental Record Vol. 3, # 4 Supplemental Record Vol. 4, # 5 Supplemental Record Vol. 5, # 6 Supplemental Record Vol. 6, # 7 Supplemental Record Vol. 7, # 8 Supplemental Record Vol. 8) (Blanco - TXNB, Juan) (Entered: 11/14/2025) |

# TAB 3

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Bank. Case No.: 18-30264-sgj11** |
| | § | **Adv. No. 20-03060-sgj** |
| **ACIS CAPITAL MANAGEMENT LP,** *et al.* | § | |
| | § | |
| **Debtors,** | § | |
| | § | |
| **ACIS CAPITAL MANAGEMENT LP,** *et al.* | § | |
| | § | **Civil Action No. 3:24-cv-02036-N** |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **JAMES DONDERO,** *et al.,* | § | |
| | § | |
| ***Defendants.*** | § | |

---

### PLAINTIFFS' NOTICE OF APPEAL

---

Plaintiffs Acis Capital Management LP and Acis Capital Management GP, LLC (collectively, "Acis") appeal to the United States Court of Appeals for the Fifth Circuit from the Court's order entered on April 23, 2025 (Dkt. 18) and the Court's order entered on June 24, 2025 (Dkt. 20), as well as all rulings and decisions subsumed therein.

Respectfully submitted,

*/s/ Shawn Bates*
AHMAD, ZAVITSANOS & MENSING, PLLC
Joseph Y. Ahmad
Texas Bar No. 00941100
Federal Bar No. 11604
Shawn M. Bates
Texas Bar No. 24027287
Federal Bar No. 30758
Thomas Cooke

1

Texas Bar No. 24124818
Federal Bar No. 3837479
Sean Healey
Texas Bar No. 24142997
Federal Bar No. pending
1221 McKinney St. Suite 2500
Houston, Texas 77010
(713) 655-1101 Telephone
(713) 655-0062 Facsimile
joeahmad@azalaw.com
sbates@azalaw.com
tcooke@azalaw.com

**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 27, 2025, a true and correct copy of the foregoing document was served by electronic transmission via the Court's CM/ECF system upon all parties registered to receive electronic notice.

*/s/ Sean Healey*
Sean Healey

25-10797.809

# TAB 4

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE:<br>ACIS CAPITAL MANAGEMENT LP,<br>*et al.*,<br><br>    Debtors,<br><br>ACIS CAPITAL MANAGEMENT LP,<br>*et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>JAMES DONDERO, *et al.*,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Bank. Case No. 18-30264-sgj11<br>Adv. No. 20-03060-sgj<br><br><br><br><br><br><br><br>Civil Action No. 3:24-CV-02036-N |

## <u>ORDER GRANTING RULE 54(b) FINAL JUDGMENT</u>

This Order addresses Plaintiffs Acis Capital Management, LP and Acis Capital Management GP, LLC's (collectively, "Acis") unopposed motion for entry of Rule 54(b) final judgment and stay pending appeal [19]. Because the Court concludes there is no just reason for delay, the Court grants the motion.

On January 6, 2025, the Court adopted the Report and Recommendation of the Bankruptcy Court and thereby granted Defendant James Dondero's motion to dismiss two of Acis's claims. Order, Jan. 6, 2025 [13]. Then, on April 23, 2025, the Court adopted a later Report and Recommendation of the Bankruptcy Court and thereby granted Dondero's motion for judgment on the pleadings and supplemental motion for summary judgment which resolved the remaining claims against Dondero. Order, Apr. 23, 2025 [18].

25-10797.805

Rule 54(b) provides that when "an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." FED. R. CIV. P. 54(b). Courts must undertake a two-step inquiry when deciding whether to certify a judgment under Rule 54(b). *Briargrove Shopping Ctr. Joint Venture v. Pilgrim Enters., Inc.*, 170 F.3d 536, 539 (5th Cir. 1999) (citing *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7–8 (1980)). First, the Court must determine that it is dealing with a "final judgment." *Id.* Then, it must determine whether any just reason for delay exists. *Id.* In doing so, the Court "must take into account judicial administrative interests as well as the equities involved." *Curtiss-Wright Corp.*, 446 U.S. at 8.

Here, there is no doubt or dispute that the Court's orders of January 6, 2025, and April 23, 2025, are "final judgments." Both orders expressly dismiss Acis's claims against Dondero with prejudice on claim preclusion grounds. Then, consideration of multiple factors leads the Court to conclude that no just reason for delay exists. First, the res judicata issue that informed the Court's prior decisions is not applicable to the remaining claims against CLO HoldCo Ltd. ("CLO HoldCo"), the sole remaining defendant. Thus, the reviewing court will not need to decide the same issue a second time, and these claims make a logical package for appeal. Second, the dismissed claims involve significant factual allegations that will not be resolved in deciding the claims against CLO HoldCo, including Dondero's conduct as President of Acis GP and his alter ego status with the various Highland entities. Third, permitting an appeal at this stage will promote judicial economy,

ORDER GRANTING RULE 54(b) FINAL JUDGMENT – PAGE 2

in the event any appeal is successful, by preventing potentially duplicative trials against Dondero and CLO HoldCo. Fourth, the defendants here do not oppose this motion, and thus the Court concludes that the equities would not be implicated in granting a final judgment against Dondero. Accordingly, the Court concludes that no just reason for delay exists.

In addition to seeking a Rule 54(b) final judgment, Acis also seeks to have litigation of the remaining claims against CLO HoldCo stayed pending resolution of an appeal. Pls.' Mot. 6. Because the request is unopposed, and because doing so will promote the interests of judicial economy, the Court hereby stays the litigation of the remaining claims against CLO HoldCo in this action pending the resolution of any appeal of this judgment.

## CONCLUSION

There being no just reason for delay, the Court grants Acis's motion for entry of judgment and for stay pending appeal. It is, therefore, ordered that Acis take nothing on its claims against James Dondero and the Clerk is directed to enter final judgment as to Dondero only. The Court further orders that the remaining litigation against CLO HoldCo is stayed pending resolution of any appeal of this judgment.

Signed June 24, 2025.

David C. Godbey
Chief United States District Judge

ORDER GRANTING RULE 54(b) FINAL JUDGMENT – PAGE 3

# TAB 5

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Bank. Case No. 18-30264-sgj11 |
| ACIS CAPITAL MANAGEMENT LP, | § | Adv. No. 20-03060-sgj |
| *et al.*, | § | |
| | § | |
| Debtors, | § | |
| | § | |
| ACIS CAPITAL MANAGEMENT LP, | § | |
| *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-02036-N |
| | § | |
| JAMES DONDERO, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**<u>ORDER</u>**

This Order addresses Plaintiffs Acis Capital Management LP's and Acis Capital Management GP, LLC's (collectively, "Acis") motion to vacate [5], objection to the Bankruptcy Court's report and recommendation [8], and motion for leave to file reply [12]. As an initial matter, the Court grants Acis's motion to vacate, and hereby vacates its prior Order Adopting Report and Recommendation [4], only to the extent that it granted Defendant James Dondero's motion to dismiss counts 3 and 5. The Court further grants Acis's motion for leave to file a reply.

Then, upon consideration of Acis's objection, Dondero's response, and Acis's reply, the Court again adopts the Report and Recommendation of the Bankruptcy Court [3-1] and dismisses counts 3 and 5 with prejudice because the doctrine of claim preclusion applies.

ORDER – PAGE 1

"The rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). "The test for res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Id.* As to the first element, "privity exists in just three, narrowly-defined circumstances: (1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990).

The Fifth Circuit has held that an alter ego relationship between a corporation and an individual can establish privity for preclusion purposes. *Dudley v. Smith*, 504 F.2d 979, 982 (5th Cir. 1974) ("A stockholder may be in privity with his corporation . . . such that a judgment against the latter is res judicata as to the former, if the two are found to be alter egos."). Other cases have cited *Dudley* to suggest this alter ego relationship can establish privity either under a theory of control or a theory of adequate representation. *See, e.g.*, *Aerojet-Gen. Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir. 1975) (citing *Dudley* as an example of a situation where "one of the parties to the suit is so closely aligned with [the nonparty's] interests as to be his virtual representative"); *Sw. Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977) (citing *Dudley* as an example of control establishing privity). And the Fifth Circuit has stated that the "entire purpose of the alter

ORDER – PAGE 2

ego theory of liability would be undermined if the alter ego of a corporation could force parties to relitigate otherwise precluded claims against the corporation." *Flores v. Bodden*, 488 F. App'x 770, 779 (5th Cir. 2012) (per curiam) (citing *Robinson v. Volkswagenwerk AG*, 56 F.3d 1268, 1275 (10th Cir. 1995)).

At issue here are the privity element and the "same claim" element of claim preclusion. As to the privity element, Acis alleges that Dondero treated Highland as his alter ego during the relevant underlying conduct. Pl's Am. Compl. ¶ 130, Adversary No. 20-03060-SGJ, Dkt. 111. Now, Dondero seeks to avoid liability on that conduct based on two judgments dismissing the claims against Highland with prejudice in a prior adversary action ("Prior Acis Action"). If the situation were reversed, and Acis had obtained a judgment of liability against Highland, Dondero would certainly not be able to avoid preclusion and force Acis to relitigate liability for the same underlying conduct. *See Dudley*, 504 F.2d at 982; *Flores*, 488 F. App'x at 779. Thus, if privity would exist to hold Dondero liable on a judgment of liability against Highland, then it must also exist to shield Dondero from liability when Highland secured a dismissal with prejudice on the same claims. Accordingly, the alter ego relationship between Dondero and Highland establishes privity for the purposes of claim preclusion.

As to the "same claim" element, Acis argues that the Bankruptcy Court's prejudgment orders approving the settlement in the Prior Acis Action caused Acis's claims against Dondero to survive the dismissals with prejudice. Pl.'s Br. 11 [9]. However, for a settlement agreement to alter the preclusive effect of a judgment, that agreement, or any express reservations, must be incorporated directly into the language of the final judgment.

ORDER – PAGE 3

*Seven Networks, LLC v. Motorola Mobility LLC*, 2022 WL 426589, at *3 (N.D. Tex. 2022)

(citing *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 402–03 (5th Cir. 2009)).  To that

point, "the judge's awareness and even approval of [settlement] terms do not make them

part of the judgment." *Id.*  Here, whether the Bankruptcy Court was aware of or approved

of the terms of Acis's settlement with the Highland entities is immaterial.  The language

of the dismissals with prejudice in the Prior Acis Action neither incorporated the settlement

agreement nor expressly reserved Acis's claims against Dondero.  *See* Adversary No. 18-

03078, Dkt. 216, 224.  Accordingly, the preclusive effect of the dismissals with prejudice

is not affected by the settlement agreement.

Because the doctrine of claim preclusion applies, the Court adopts the Bankruptcy

Court's Report and Recommendation and dismisses with prejudice counts 3 and 5 of Acis's

complaint under Rule 12(b)(6) for failure to state a claim.


Signed January 6, 2025.


David C. Godbey

Chief United States District Judge


ORDER – PAGE 4

# TAB 6

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Bank. Case No. 18-30264-sgj11 |
| ACIS CAPITAL MANAGEMENT LP, | § | Adv. No. 20-03060-sgj |
| *et al.*, | § | |
| | § | |
| Debtors, | § | |
| | § | |
| ACIS CAPITAL MANAGEMENT LP, | § | |
| *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-02036-N |
| | § | |
| JAMES DONDERO, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER</u>

This Order addresses Plaintiffs Acis Capital Management LP's and Acis Capital Management GP, LLC's (collectively, "Acis") objection to the Bankruptcy Court's report and recommendation [16]. Upon consideration of Acis's objection and Dondero's response [17], the Court adopts the Report and Recommendation of the Bankruptcy Court [15-1] and dismisses all remaining claims against Dondero with prejudice because the doctrine of claim preclusion applies.

"The rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). "The test for res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment

ORDER – PAGE 1

in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Id.* As to the first element, "privity exists in just three, narrowly-defined circumstances: (1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990).

In a prior order, this Court adopted the report and recommendation of the Bankruptcy Court and dismissed counts 3 and 5 against Dondero on the basis of claim preclusion. *See* Order, Jan. 6, 2025 [13]. In that order the Court concluded that Dondero and Highland were in privity with each other for the purposes of claim preclusion. *Id.* at 3. It also determined that the claims at issue in this litigation were the "same" claims that could have been brought in Acis's prior adversary action against Highland ("Prior Acis Action"). *Id.* at 3–4.

The Bankruptcy Court now recommends that the three remaining claims against Dondero be dismissed on the same basis — that they are barred by claim preclusion. This Court agrees. First, the Court sees no reason to depart from its previous determination that the Highland–Dondero relationship established privity. Acis mostly repeats arguments the Court rejected in its prior order. But Acis now also argues that the restrictions on preclusion by adequate representation elaborated in *Taylor v. Sturgell*, 553 U.S. 880, 900–901 (2008), prevent the application of preclusion in this case. Pl.'s Br. 12 [16-2]. However, the Court in *Taylor* described five other bases on which nonparty preclusion can rest,

ORDER – PAGE 2

including "a variety of pre-existing substantive legal relationships between the person to be bound and a party to the judgment." *Taylor*, 553 U.S. at 894 (cleaned up).  Alter ego is a pre-existing legal relationship that the Fifth Circuit has concluded can establish privity. *See Dudley v. Smith*, 504 F.2d 979, 982 (5th Cir. 1974) ("A stockholder may be in privity with his corporation . . . such that a judgment against the latter is res judicata as to the former, if the two are found to be alter egos.").  Accordingly, *Taylor* does not restrict the application of preclusion in this case.

Second, the Court sees no reason to depart from its previous determination that the claims at issue in this case are the "same" claims that could have been brought in the Prior Acis Action.  On this point, Acis repeats its argument that the Bankruptcy Court's pre-dismissal orders approving the settlement caused Acis's claims against Dondero to survive the subsequent dismissals with prejudice.  However, for a settlement agreement to alter the preclusive effect of a judgment, that agreement, or any express reservations, must be incorporated directly into the language of the final judgment.  *Seven Networks, LLC v. Motorola Mobility LLC*, 2022 WL 426589, at *3 (N.D. Tex. 2022) (citing *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 402–03 (5th Cir. 2009)).  Here, the language of the dismissals with prejudice in the Prior Acis Action neither incorporated the settlement agreement nor expressly reserved Acis's claims against Dondero.  *See* Adversary No. 18-03078, Dkt. 216, 224.  Accordingly, the preclusive effect of the dismissals with prejudice is not affected by the settlement agreement.

Because the doctrine of claim preclusion applies, the Court adopts the Bankruptcy Court's report and recommendation and grants Dondero's motion for judgment on the

ORDER – PAGE 3

pleadings and supplemental motion for summary judgment.  The three remaining claims

against Dondero are dismissed with prejudice.


      Signed April 23, 2025.


                       David C. Godbey
              Chief United States District Judge

ORDER – PAGE 4

**TAB 7**



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

**Signed January 25, 2025**

_____
**United States Bankruptcy Judge**

_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 18-30264-SGJ-11 |
| ACIS CAPITAL MANAGEMENT, L.P. and | § | Case No. 18-30265-SGJ-11 |
| ACIS CAPITAL MANAGEMENT GP, LLC, | § | |
| | § | (Jointly Administered Under |
| Reorganized Debtors. | § | Case No. 18-30264-SGJ-11) |

_____

| | | |
|---|---|---|
| ACIS CAPITAL MANAGEMENT, L.P. and | § | |
| ACIS CAPITAL MANAGEMENT GP, LLC, | § | |
| Reorganized Debtors, | § | |
| | § | Adversary No. 20-03060-SGJ |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| JAMES DONDERO, et al., | § | Civil Action No. 3:24-cv-02036-N |
| | § | |
| Defendants. | § | |

_____

**REPORT AND RECOMMENDATION TO THE DISTRICT COURT
THAT IT GRANT DEFENDANT JAMES DONDERO'S MOTION FOR JUDGMENT ON
THE PLEADINGS AND "SUPPLEMENTAL" MOTION FOR SUMMARY JUDGMENT
AND DISMISS WITH PREJUDICE ALL REMAINING COUNTS AGAINST DONDERO**

## I.     Introduction

The bankruptcy court issues this report and recommendation to the District Court that it (1) grant *Defendant James Dondero's Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) & Supplemental Motion for Judgment as a Matter of Law under Rule 56* (the "Motion")[1] filed in the above referenced adversary proceeding ("Current Acis Action") by Defendant James Dondero ("Dondero") on November 18, 2024, and (2) dismiss with prejudice the remaining causes of action asserted against Dondero by plaintiffs, Acis Capital Management, L.P. and Acis Capital Management GP, LLC (together, "Acis" or "Plaintiffs") on the basis that they are barred under the doctrine of res judicata or claim preclusion.  The court refers to the "remaining" causes of action because, as the parties and the District Court are well aware, the District Court recently adopted this court's report and recommendation ("R&R Regarding Motion to Dismiss Counts 3 and 5") issued on October 15, 2024,[2] recommending that the District Court grant Dondero's Rule 12(b)(6) motion to dismiss for failure to state a claim as to Counts 3 (alter ego) and 5 (fraudulent transfer) on the basis, raised *sua sponte* by the bankruptcy court, that the doctrine of res judicata, or claim preclusion, applied to bar Counts 3 and 5 against Dondero, after taking into consideration Acis's objection[3] thereto, Dondero's response,[4] and Acis's reply,[5] and dismissed Counts 3 and 5 with prejudice.[6]

---

[1] Dkt. No. 210.  Dondero filed a brief in support of his Motion ("Brief in Support") at Dkt. No. 211. This Motion is both a stand-alone motion for judgment on the pleadings pursuant to Rule 12(c) and a supplemental motion for summary judgment pursuant to Rule 56, which supplements Dondero's Motion for Summary Judgment filed on August 2, 2024, in which he seeks summary judgment based on various theories other than res judicata or claim preclusion.

[2] Dkt. No. 188; DCT Dkt. No. 3.

[3] Dkt. Nos. 200 and 201; DCT Dkt. Nos. 8 and 9.

[4] Dkt. No. 213; DCT Dkt. No. 10.

[5] DCT Dkt. No. 14.

[6] *See* Order dated January 6, 2025 ("District Court Order"), DCT Dkt. No. 13, at 1 ("[U]pon consideration of Acis's objection, Dondero's response, and Acis's reply, the Court . . . adopts the Report and Recommendation of the Bankruptcy Court [3-1] and dismisses counts 3 and 5 with prejudice because the doctrine of claim preclusion applies.")

25-10797.658

Specifically, the District Court adopted this court's report and recommendation that two separate, stipulated and agreed orders of dismissal with prejudice ("Dismissals with Prejudice"), entered in a prior action ("Prior Acis Action") brought by Plaintiffs in 2018 against five "Highland Entities"[7] alleged by Acis to have been Dondero's alter egos[8] (but where Dondero, himself, had not been a named a party-defendant), which dismissed, with prejudice, the Highland Entities as to all causes of action that had been asserted against them in the Prior Acis Action, acted as res judicata to bar Plaintiffs' causes of action against Dondero asserted in the Current Acis Action in Counts 3 and 5.  This court noted in its R&R Regarding Motion to Dismiss Counts 3 and 5 that, though it had concerns that the remaining counts against Dondero may be barred under the same principles of claim preclusion, it was only recommending that Counts 3 and 5 be dismissed (and not the other counts asserted against Dondero) because Dondero's Motion to Dismiss only asked for dismissal of Counts 3 and 5.[9]

After this court issued its R&R Regarding Motion to Dismiss Counts 3 and 5, Dondero filed the instant Motion[10] in which he seeks a dismissal of all remaining counts against him in the

---

and 4 ("Because the doctrine of claim preclusion applies, the Court adopts the Bankruptcy Court's Report and Recommendation and dismisses with prejudice counts 3 and 5 of Acis's complaint under Rule 12(b)(6) for failure to state a claim.").

[7] The "Highland Entities" named as defendants in the Prior Acis Action included Highland Capital Management, L.P. ("Highland"), which became a debtor in its own now long-running bankruptcy case in 2019 (Bankruptcy Case No. 19-34054), and four offshore entities: Highland CLO Funding, Ltd. ("Highland Funding"); Highland HCF Advisor, Ltd. ("Highland Advisor"); Highland CLO Management, Ltd. ("HCLOM"); and Highland CLO Holdings, Ltd. ("Highland Holdings").

[8] Acis, the plaintiffs in this Current Acis Action, were also the plaintiffs in the Prior Acis Action, where they alleged that Acis and the Highland Entities (defendants in the Prior Acis Action) were all Dondero's alter egos, who participated in a fraudulent scheme, masterminded by Dondero, to systematically denude Acis of its assets, to the detriment of its creditors—particularly, one creditor, Joshua Terry ("Terry").

[9] Report & Recommendation Regarding Motion to Dismiss Counts 3 and 5, 48 n.109 ("The bankruptcy court has significant concerns that the other counts against Dondero in the Live Complaint may also be barred under the principles of res judicata. While the court feels comfortable raising the res judicata issue *sua sponte* with respect to Dondero's Motion to Dismiss Counts 3 and 5 of the Live Complaint, it will not, on its own, raise the issue with respect to the counts in the Live Complaint that are not the subject of the Motion to Dismiss.").

[10] As noted, the instant Motion is, in part, a "supplemental" motion for summary judgment.  Dondero filed a *Motion for Summary Judgment* and brief in support on August 2, 2024, in which he sought a summary judgment as to Counts

25-10797.659

Current Acis Action based on the same theory—that the Dismissals With Prejudice entered in the Prior Acis Action act as res judicata to bar *all* of the claims asserted against Dondero in the Current Acis Action.  Plaintiffs filed their response ("Opposition") and brief in opposition to the Motion on December 9, 2024,[11] and Dondero filed his reply ("Reply") on December 19, 2024.  A hearing ("Hearing") on the Motion was held on January 15, 2025.

Having reviewed the Motion for Judgment on the Pleadings and Supplemental Motion for Summary Judgment, Acis's response thereto, and Dondero's reply, and having considered the arguments of counsel at the Hearing, and the District Court Order, the court recommends that the District Court dismiss all remaining counts against Dondero, with prejudice, as being barred by res judicata or claim preclusion.

## II.    Report and Recommendation to the District Court That It Dismiss, with Prejudice, All Remaining Counts Against Dondero on the Basis of Res Judicata or Claim Preclusion

The causes of action against Dondero that remain in the Current Acis Action after dismissal with prejudice of Counts 3 (alter ego) and 5 (fraudulent transfer) are the following:

Count 1:    Breach of Fiduciary Duty against Dondero, as President of Acis GP;

Count 2:    Breach of Fiduciary Duty against Dondero, as President of Highland Capital, Sub-Advisor to Acis; and,

Count 6:    Willful Violation of the Automatic Stay against Dondero.[12]

---

1, 2, and 6 on bases other than res judicata.  This court's report and recommendation that the District Court grant the Motion and dismiss with prejudice all remaining counts asserted against Dondero in the Current Acis Action, if adopted by the District Court, would render the MSJ moot, to the extent based on theories other than res judicata. Thus, this court will not address, in this report and recommendation, any of the bases for dismissal raised by Dondero in his original MSJ.

[11] Dkt. Nos. 222 and 223.

[12] The original 11 defendants in this Current Acis Action included Dondero and nine other individuals who were associated in one way or another with Acis and/or Highland. Only one defendant was not an individual human being— a Cayman Island entity called CLO Holdco, Ltd.  Over time, the Reorganized Acis reached settlements with, or otherwise chose not to pursue, all but two of the original 11 defendants in this Current Acis Action, with the two remaining defendants being Dondero and CLO Holdco, Ltd. (the most recent voluntary dismissal being of defendant

4

For the same reasons this court recommended the dismissal with prejudice of Counts 3 and 5 against Dondero in its October 25, 2024 Report and Recommendation Regarding Motion to Dismiss Counts 3 and 5 (that was adopted by the District Court on January 6, 2025), this court recommends to the District Court that it grant Dondero's Motion and dismiss with prejudice all remaining causes of action against Dondero on the basis of claim preclusion.

"The standard for motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim[,]"[13] and "[d]ismissal under Rule 12(b)(6) is appropriate if the res judicata bar is apparent from the pleadings and judicially noticed facts."[14]   A party is entitled to a summary judgment under Rule 56 "when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"[15]

Dondero has argued that he is entitled to a judgment as a matter of law under Rule 12(c) and Rule 56 of dismissal with prejudice of all remaining claims asserted against him in the Current Acis Action based on principles of res judicata or claim preclusion.   While "res judicata encompasses two separate but linked preclusive doctrines" of claim preclusion and issue preclusion (or collateral estoppel), "true" res judicata is a claim preclusion doctrine[16] under which "a final judgment on the merits of an action precludes the parties or their privies from relitigating

---

Grant Scott, who was dismissed with prejudice following a settlement between him and Acis. *See Order Dismissing Defendant Grant Scott* entered on October 30, 2024. Dkt. No. 203. And, CLO Holdco, Ltd. is only named as a defendant in this Current Acis Action as to Counts 7 (Turnover of Property of the Estate of Acis LP's Performance Allocation and 8 (Money Had and Received for Acis LP's Performance Allocation).  To be clear, CLO Holdco was not named as a defendant as to any of the counts asserted against Dondero, and Dondero was not named as a defendant as to Counts 7 or 8.  Counts 9 and 10 are counts for punitive damages and attorneys' fees.

[13] *Waller v. Hanlon,* 922 F.3d 590, 599 (5th Cir. 2019).

[14] *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 591 (5th Cir. 2020) (cleaned up).

[15] *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006) (quoting Fed. R. Civ. P. 56(c)).

[16] *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).

25-10797.661

issues that were or could have been raised in that action."[17] The test[18] for res judicata or claim preclusion has four elements: "(1) The parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded to a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions."[19]

Moreover, "the Fifth Circuit has held that an alter ego relationship between a corporation and an individual can establish privity for preclusion purposes[,]"[20] and cases citing *Dudley* "suggest this alter ego relationship can establish privity either under a theory of control or a theory of adequate representation."[21] The District Court noted that the Fifth Circuit has stated that the "entire purpose of the alter ego theory of liability would be undermined if the alter ego of a corporation could force parties to relitigate otherwise precluded claims against the corporation."[22] The District Court concluded that, under *Dudley* and *Flores*, where Acis alleges that Dondero treated the Highland Entities as his alter ego "during the relevant underlying conduct[,]" "[i]f . . . Acis had obtained a judgment of liability against Highland, Dondero would certainly not be able to avoid preclusion and force Acis to relitigate liability for the same underlying conduct."[23] "Thus,

---

[17] *Ries v. Paige (In re Paige)*, 610 F.3d 865, 870 n.1 (5th Cir. 2010) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)); *see also Test Masters*, 428 F.3d at 571 (citing *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004) (quoting *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999)).

[18] Because the Prior Acis Action and this Current Acis Action were both filed in federal bankruptcy court as adversary proceedings, the court applies federal common law in determining the res judicata effect of the final judgments entered in the Prior Acis Action on Acis's claims against Dondero in this Current Acis Action. *See Ries v. Paige (In re Paige)*, 610 F.3d 865, 870 n.2 (5th Cir. 2010) ("In the absence of a federal governing statute or rule, the res judicata effect of a federal judgment, such as those asserted here, is determined by federal common law.") (quoting *In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 330 n.12 (5th Cir. 2007)) (citing *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001)).

[19] *Test Masters*, 428 F.3d at 571 (citation omitted); *see also* District Court Order, 2.

[20] District Court Order, 2 (citing *Dudley v. Smith*, 504 F.2d 979, 982 (5th Cir. 1974).

[21] District Court Order, 2 (citing Fifth Circuit cases).

[22] District Court Order, 2-3 (quoting *Flores v. Bodden*, 488 F. App'x 770, 779 (5th Cir. 2012) (per curium) (citing *Robinson v. Volkswagenwerk AG*, 56 F.3d 1268, 1275 (10th Cir.1995))).

[23] District Court Order, 3 (citing *Dudley*, 504 F.2d at 982; *Flores*, 488 F. App'x at 779).

25-10797.662

if privity would exist to hold Dondero liable on a judgment of liability against Highland, then it must also exist to shield Dondero from liability when Highland secured a dismissal with prejudice on the same claims.  Accordingly, the alter ego relationship between Dondero and Highland establishes privity for the purposes of claim preclusion."[24]  The District Court also held that the "same claim" element applies here as well, rejecting Plaintiffs' argument that "the Bankruptcy Court's prejudgment orders approving the settlement in the Prior Acis Action causes Acis's claims against Dondero to survive the dismissals with prejudice" for the reason that "for a settlement agreement to alter the preclusive effect of a judgment, that judgment[,]" and "[t]o that point, 'the judge's awareness and even approval of [settlement] terms do not make them part of the judgment."[25]  Thus, the District Court concluded

> whether the Bankruptcy Court was aware of or approved of the terms of Acis's settlement with the Highland entities is immaterial.  The language of the dismissals with prejudice in the Prior Acis Action neither incorporated the settlement agreement nor expressly reserved Acis's claims against Dondero. Accordingly, the preclusive effect of the dismissals with prejudice is not affected by the settlement agreement.[26]

The District Court adopted this court's R&R Regarding Motion to Dismiss Counts 3 and 5 and dismissed with prejudice Counts 3 and 5 of the Current Acis Action "[b]ecause the doctrine of claim preclusion applies."[27]

> As this court observed in the R&R Regarding Motion to Dismiss Counts 3 and 5,

> It is crystal clear that the Prior Acis Action involves the very same operative facts and allegations of fraudulent transfers that exist in the Current Acis Action with one key difference:  in the Prior Acis Action, Acis chose—for whatever reason—not to include Dondero as a defendant, even though Acis alleged therein that Dondero was: (a) the person who masterminded an alleged scheme to fraudulently transfer Acis' assets out of the reach of its creditors, and (b) was the alleged "alter

---

[24] District Court Order, 3.

[25] District Court Order, 3-4 (citing *Seven Networks, LLC v. Motorola Mobility LLC*, 2022 WL 426589, at *3 (N.D. Tex. 2022) (citing *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 402-03 (5th Cir. 2009))).

[26] District Court Order, 4.

[27] District Court Order, 4.

ego" of the transferor, Acis, and also of Highland and the other four Highland-related offshore entities that constituted the Prior Acis Action Defendants.

But, Acis waited to pursue Dondero (and the other 10 original defendants in this action) *for the very same fraudulent scheme and conduct described in the Prior Acis Action* until commencing the Current Acis Action. Importantly, by the time the Reorganized Acis filed its Live Complaint in this Current Acis Action, *all of Acis's claims asserted in the Prior Acis Action against the Prior Acis Action Defendants had been dismissed with prejudice*—pursuant to the Dismissals with Prejudice entered by the bankruptcy court in the Prior Acis Action in November 2020 and May 2021. The same observations are made here with respect to Dondero's request that the remaining claims and counts asserted against him in this action be dismissed with prejudice, and the same conclusion obtains for the same reasons set forth in this court's R&R Regarding Motion to Dismiss Counts 3 and 5: all four elements of res judicata apply to bar the remaining counts asserted against Dondero in the Current Acis Action, and, therefore, they should be dismissed with prejudice.

Acis argues that the res judicata test has not been met here "because (1) Dondero and the Highland Entities were not in privity *at the time of the [Prior Acis Action's] dismissal*[28]; (2) the Prior Acis Action was dismissed pursuant to a series of Court orders that explicitly preserved Acis's claims against Dondero; (3) the claims in this adversary and the [Prior Acis Action] arise from different sets of operative facts; [and,] (4) Dondero waived res judicata . . . ." As to the first prong of their argument, in particular, Acis specifically argues that the United States Supreme Court decision in *Taylor v. Sturgell*[29] limited the application of res judicata (and the concept of privity) in nonmutual claim preclusion to situations in which the nonparty in the succeeding action

---

[28] Added emphasis.
[29] 553 U.S. 880, 898 (2008).

25-10797.664

(here, Dondero) was the alleged alter ego of the party in the prior action (i.e., the Highland Entities) at all times: at the time of the complained of conduct, prior to the first suit having been brought, *and* at the time the judgment on the merits was entered in the first action. Acis further argues that *Taylor* should be read to place limits on the application of nonmutual claim preclusion recognized in the Fifth Circuit's opinion in *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990): "privity exists in just three, narrowly-defined circumstances: (1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit." Here, Dondero was—according to Acis—not an alter ego or in privity with Highland and the other Highland Entities *at the time of dismissal of the Prior Acis Action*, due to Dondero's ouster during the Highland bankruptcy case in year 2020.

Acis raised these same objections to the R&R Regarding Motion to Dismiss Counts 3 and 5, and the District Court rejected them, either implicitly or explicitly in its January 6 Order, determining that all four elements of res judicata applied, such that Counts 3 and 5 were precluded under principles of claim preclusion by the Dismissals with Prejudice that had been entered in the Prior Acis Action. Specifically, the District Court determined that, under Fifth Circuit jurisprudence, there was privity between Dondero and his alleged alter egos, the Highland Entities, for purposes of res judicata. In any event, this court does not view *Taylor* as relevant to the situation here. Both *Meza* and *Taylor* dealt with nonmutual claim preclusion in situations in which a defendant in an action is seeking to bind (i.e., preclude) a new plaintiff in a new action to a final judgment rendered a prior action *in which the new plaintiff was not a party*. In other words, a defendant is arguing that the new plaintiff should be deemed to have been in privity with the prior plaintiff and, therefore, barred from pursuing its claims against the defendant in the new action.

25-10797.665

Presumably, the courts are concerned in that situation that the prior plaintiff, in the prior action, cannot automatically be said to have adequately represented the new plaintiff, such that the new plaintiff had an opportunity to fully and fairly litigate his cause of action against the defendant. In such a situation, there would seem to be a need to carefully consider whether the new plaintiff was indeed "in privity" with the plaintiff in the prior litigation, at the time of the litigation and entry of the final judgment. Here, obviously, we have a defendant (nonparty in Prior Acis Action), alleged to have been the alter ego of the defendants (and of the plaintiffs, for that matter) in the Prior Acis Action that seeks to claim the benefit of a final judgment in the prior litigation, where the plaintiffs were the same in both actions, and, the claims asserted in the subsequent action are based on the same nucleus of operative facts and are essentially the same claims as those asserted against the alleged alter egos in the prior litigation that the *plaintiffs* instituted. Allowing a nonparty defendant in a subsequent action to ***benefit*** from a judgment of nonliability as to his alleged alter egos rendered in a prior litigation initiated by the same plaintiffs does not implicate the concerns expressed in *Meza* and *Taylor* that such plaintiffs will be denied their opportunity to be adequately represented and to fully and fairly litigate their claims. Courts have recognized that "[a] ***lesser degree of privity*** is required ***for a new defendant*** to benefit from claim preclusion ***than for a plaintiff to bind a new defendant*** in a later action."[30]

    As noted above, the District Court has already rejected Plaintiffs' argument that the Dismissals with Prejudice cannot have a res judicata effect as to the claims they assert in the Current Acis Action against Dondero because the Prior Acis Action was dismissed pursuant to a

---

[30] *In re Testmasters Trademark Litig.*, No. 4:04-MD-1646, 2006 WL 8445513, at *7 (S.D. Tex. Sept. 28, 2006), aff'd sub nom. *Robin Singh Educ. Servs. Inc. v. Excel Test Prep Inc.*, 274 F. App'x 399 (5th Cir. 2008) (quoting *Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995)) (emphasis added).

25-10797.666

series of Court orders that explicitly preserved Acis's claims against Dondero.[31]   The Dismissals

with Prejudice have a preclusive effect on Plaintiffs' current claims against Dondero precisely

because those orders did not explicitly incorporate the terms of Plaintiffs' settlement(s) with the

Highland Entities or explicitly provide that the Plaintiffs' claims against Dondero were being

reserved and would not be affected by the dismissal orders.

This court and the District Court have already rejected Plaintiffs' argument that the claims

in the Current Acis Action against Dondero arise from a different set of operative facts than those

asserted against the Highland Entities in the Prior Acis Action.

Finally, Plaintiffs' argument that Dondero had effectively waived his right to assert res

judicata was also rejected by the District Court, and this court finds no basis in law or fact to

support a conclusion that Dondero did waive his rights here.

### III.     Conclusion and Recommendation

To summarize, all four elements of the res judicata test apply here:  the Dismissals with

Prejudice in the Prior Acis Action  (1) involved Acis and the Highland Entities, all of whom were

alleged to be the alter egos of Dondero, with whom Dondero is in privity;[32] (2) were entered by

this court (a court of competent jurisdiction); (3) constituted final judgments on the merits; and

(4) involved the same claims or causes of action as those asserted against Dondero in this Current

Acis Action.  To be clear, the remaining claims against Dondero in this Current Acis Action for

breaches of fiduciary duties and for willful violation of the automatic stay ***could have been***

---

[31] The series of Court orders were an order confirming the Acis plan of reorganization and an order approving the settlement of Acis's proofs of claim in the Highland bankruptcy case—***both of which were prior to the Dismissal Orders with Prejudice in the Prior Acis Action***.

[32] Dondero argues that Acis has not pled sufficient facts to state a plausible claim under Delaware law that the Highland Entities are alter egos of Dondero, but that is an issue the court need not, and does not, decide here.  Acis's allegations of an alter ego relationship between Dondero and the Highland Entities are sufficient to find "privity" for res judicata purposes.

*brought against him in the Prior Acis Action*; Acis chose, for whatever strategic decision known

only to it, not to do so.  As noted by the court in its R&R Regarding Motion to Dismiss Counts 3

and 5, "Litigation strategy to not bring claims which [plaintiff] . . . could have brought does not

bar the application of *res judicata*; indeed, 'strategic' choices to split claims that could be brought

in the same case is what the *res judicata* principle seeks to prevent."[33]  Thus, the court concludes

that Dondero is entitled to a judgment as a matter of law under Rule 12(c) and Rule 56 that Acis

is barred from bringing the remaining claims in this action under the principles of res judicata (or

claim preclusion).

Accordingly, the bankruptcy court recommends to the District Court that it grant the

Motion on the basis that such claims and causes of action are barred under the principles of res

judicata (or claim preclusion) by virtue of the Dismissals with Prejudice entered in the Prior Acis

Action.[34]

### #### END OF REPORT AND RECOMMENDATION ####

---

[33] *Universitas Educ., LLC v. Benistar Admin Servs., Inc.*, No. 23-1207, 2024 WL 1787754 *3 (2nd Cir. Apr. 25, 2024).

[34] As noted early on, the instant Motion is, in part, a "supplemental" motion for summary judgment.  Dondero filed a *Motion for Summary Judgment* and brief in support on August 2, 2024, in which he sought a summary judgment as to Counts 1, 2, and 6 on bases *other* than res judicata.  This court's report and recommendation that the District Court grant the Motion and dismiss with prejudice all remaining counts asserted against Dondero in the Current Acis Action, if adopted by the District Court, would render the MSJ moot, to the extent based on theories other than res judicata.  Thus, in the interest of judicial economy, this court will not address herein any of the bases for dismissal raised by Dondero in his original MSJ.  In the event the District Court does not accept this Report & Recommendation, the bankruptcy court will file yet another report & recommendation addressing Dondero's prior-filed (August 2, 2024) *Motion for Summary Judgment*.

25-10797.668

# TAB 8



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 15, 2024**

_____
**United States Bankruptcy Judge**

_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-30264-SGJ-11 |
| | § | Case No. 18-30265-SGJ-11 |
| **ACIS CAPITAL MANAGEMENT, L.P. and** | § | |
| **ACIS CAPITAL MANAGEMENT GP, LLC,** | § | |
| | § | **(Jointly Administered Under** |
| Reorganized Debtors. | § | Case No. 18-30264-SGJ-11)** |

_____

| | | |
|---|---|---|
| **ACIS CAPITAL MANAGEMENT, L.P. and** | § | |
| **ACIS CAPITAL MANAGEMENT GP, LLC,** | § | |
| Reorganized Debtors, | § | |
| | § | **Adversary No. 20-03060-SGJ** |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| **JAMES DONDERO, et al.,** | § | **Civil Action No. 3:24-cv-02036-N** |
| | § | |
| Defendants. | § | |

_____

## REPORT AND RECOMMENDATION TO THE DISTRICT COURT
## THAT IT GRANT DEFENDANT JAMES DONDERO'S MOTION TO DISMISS
## COUNTS 3 & 5

25-10797.57

## I.     INTRODUCTION

The above-referenced action (the "Current Acis Action") pertains to the previously jointly administered bankruptcy cases ("Bankruptcy Cases") of: (a) Acis Capital Management, L.P. ("Acis LP"); and (b) Acis Capital Management GP, LLC ("Acis GP").   These entities are sometimes collectively referred to herein as "Acis" or the "Debtors" or—when referencing a time period after January 31, 2019—the "Reorganized Acis" or the "Reorganized Debtors."

By way of background, involuntary bankruptcy cases were commenced against Acis on January 30, 2018 ("Petition Date").  An Order for Relief was entered on April 13, 2018.  A chapter 11 plan of reorganization ("Acis Plan"), which was proposed by a Chapter 11 Trustee, was confirmed on January 31, 2019.[1]

Then some 15 months after confirmation, on April 11, 2020, the Reorganized Acis filed a complaint initiating this Current Acis Action.  It was initially what one might describe as a "breach of fiduciary duty" lawsuit against many of the former officers, directors and/or control persons of Highland Capital Management, L.P. ('Highland').  Highland, which has been in its own separate Chapter 11 proceedings for many years in this same court, Bankruptcy Case No. 19-34054, was previously affiliated with Acis.  Among other things, Acis and Highland shared employees, various services, and their office space.  Some referred to Acis as the "CLO business" of Highland.[2]  They were both registered investment advisors.   All affiliations between Highland and Acis were terminated during the Acis bankruptcy case.  It was, essentially, a business divorce.

---

[1] *Findings of Fact, Conclusions of Law, and Order Granting Final Approval of Disclosure Statement and Confirming the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC, as Modified* [Bankr. Case Dkt. No. 829].

[2] "CLO" refers to collateralized loan obligations, which are securitized packages of syndicated business loans.

25-10797.58

There were initially 11 defendants in this Current Acis Action, including Mr. James Dondero ("Dondero"), who was the former President of both Acis and of Highland. Ten of these 11 original defendants were individuals, and all of them were associated in one way or another with Highland. Only one defendant was not an individual human being—a Cayman Island entity called CLO Holdco, Ltd. In addition to the alleged breaches of fiduciary duty (or, in some cases, aiding and abetting of same)—there was a count alleging section 362 automatic stay violations and a request for section 542 turnover relief. The specific counts were as follows:

**Count 1:** Breach of Fiduciary Duty Against Dondero, as President of Acis GP

**Count 2:** Breach of Fiduciary Duty Against Dondero, as President of Highland, the Sub-Advisor to Acis

**Count 3:** Alter Ego as to Dondero

**Count 4:** Breach of Fiduciary Duty Against a defendant Frank Waterhouse, as Treasurer of Acis GP

**Count 5:** Aiding & Abetting Breach of Fiduciary Duty, asserted against six individual defendants (Frank Waterhouse, Hunter Covitz, Scott Ellington, Isaac Leventon, Jean Paul Sevilla, and Thomas Surgent)

**Count 6:** Aiding & Abetting Breach of Fiduciary Duty against defendant Grant Scott

**Count 7:** Aiding & Abetting Breach of Fiduciary Duty against defendants Mr. William Scott and Ms. Heather Bestwick

**Count 8:** Willful Violation of the Automatic Stay Against Dondero and defendants Hunter Covitz, Isaac Leventon, William Scott, and Heather Bestwick

**Count 9:** Turnover of Property of the Estate under 11 U.S.C. § 542(a) against Defendant CLO Holdco, Ltd. (for "Acis LP's Performance Allocation")

**Count 10:** Money Had and Received against defendant CLO Holdco, Ltd. (for "Acis LP's Performance Allocation")

**Count 11:** Punitive Damages

**Count 12:** Attorneys' Fees and Costs, Including all Allowed Professionals' Fees and Expenses in the Bankruptcy Cases

The overriding theme of this Current Acis Action has always been that the 11 defendants, in addition to their alleged breaches (or aiding and abetting of breaches) of fiduciary duty, each had a role in systematically denuding Acis of its assets, to the detriment of its creditors—particularly, one creditor, Joshua Terry ("Terry"). Certain of Acis's assets and rights were

allegedly transferred to offshore entities that were created by Highland in a series of complex transactions.

Over time, the Reorganized Acis reached settlements with, or otherwise chose not to pursue, all but three of the original 11 defendants in this Current Acis Action—with the three, remaining defendants now being Dondero, Mr. Grant Scott, and CLO HoldCo, Ltd. The Reorganized Acis informed the bankruptcy court in October 2021 that:

> ***"This case now only concerns Dondero's efforts to fraudulently transfer Acis' assets away from Acis and [Grant] Scott and CLO Holdco [Ltd.]'s involvement therewith."***

Acis' Motion for New Scheduling Order, Docket No. 56 at 4.

This Current Acis Action was abated per an agreement among the parties for a long period of time. Then, on February 2, 2024, the Reorganized Acis filed its first amended complaint ("Live Complaint"). The Live Complaint, for the first time, asserted a new Count 5 for fraudulent transfers, under 11 U.S.C. § 548, and each Texas ("TUFTA") and Delaware ("DUFTA") state law. Count 5 is asserted against Dondero only. This was the only new count added. To be clear, until recently, ***fraudulent transfers, per se, had never been asserted in the Current Acis Action***.

The Live Complaint now asserts the following causes of action:

**Count 1:**     Breach of Fiduciary Duty against Dondero, as President of Acis GP

**Count 2:**     Breach of Fiduciary Duty against Dondero, as President of Highland Capital, Sub-Advisor to Acis

**Count 3:**     Alter Ego as to Dondero[3]

---

[3] In footnote 30 of the Live Complaint, the Reorganized Acis states, "To the extent appropriate, Plaintiffs alternatively plead alter ego as a remedy herein" (in other words, in the event that alter ego should be deemed a remedy, as opposed to a claim). It appears that the Reorganized Acis is invoking the alter ego theory of liability in an attempt to hold Dondero liable as the alter ego of other entities in the Highland universe of companies. As will be further explained herein, with regard to alleged fraudulent transfers that are the subject of the new Count 5, the Reorganized Acis seeks to hold Dondero liable as an alter ego of ***initial transferees*** of the allegedly fraudulent transfers—although not a transferee himself.

.

**Count 4:**    Aiding and Abetting Breach of Fiduciary Duty against Grant Scott

**Count 5:**    Fraudulent Transfers against Dondero pursuant to Bankruptcy Code section 548 ("§ 548") and Tex. Bus. and Com. Code § 24.005 ("TUFTA"), and 6 Del. C. § 1304(a)(1)-(2) ("DUFTA")

**Count 6:**    Willful Violation of the Automatic Stay against Dondero

**Count 7:**    Turnover of Property of the Estate under §542 against CLO Holdco for Acis LP's Performance Allocation

**Count 8:**    Money Had and Received against CLO HoldCo for Acis LP's Performance Allocation

**Count 9:**    Punitive Damages

**Count 10:**    Attorneys' Fees and Costs, Including all Allowed Professionals' Fees and Expenses in the Bankruptcy Cases

The Current Acis Action—as now both narrowed (in terms of eliminating eight defendants) and expanded (to add the new fraudulent transfer count)—feels vaguely familiar to a prior action in the bankruptcy court, commenced in May of 2018: Adv. Pro. No. 18-3078, Dkt. No. 1 (the "Prior Acis Action"). In the Prior Acis Action, Acis (through its then Chapter 11 Trustee) named Highland and four offshore Highland-related entities as defendants, seeking to avoid and recover from them, as initial transferees, various alleged fraudulent transfers, pursuant to Bankruptcy Code §§ 548 and 550 and state fraudulent transfer laws.[4] The four offshore entity defendants named in the Prior Acis Action, along with Highland, were (i) Highland CLO Funding, Ltd. ("Highland Funding"); (ii) Highland HCF Advisor, Ltd. ("Highland Advisor"); (iii) Highland CLO Management, Ltd. ("HCLOM"); and (iv) Highland CLO Holdings, Ltd. ("Highland Holdings") (collectively, the "Prior Acis Action Defendants" or sometimes the "Highland Entities").

To be clear, in the Prior Acis Action, 20 of the 34 Counts therein were fraudulent transfer counts (Counts 5-24 & 26). It is crystal clear that the Prior Acis Action involves the very same

---

[4] *See* second amended complaint filed on June 20, 2019. Adv. Pro. No. 18-3078, Dkt. No. 157.

operative facts and allegations of fraudulent transfers that exist in the Current Acis Action with one key difference:  in the Prior Acis Action, Acis chose—for whatever reason—not to include Dondero as a defendant, even though Acis alleged therein that Dondero was:  (a) the person who masterminded an alleged scheme to fraudulently transfer Acis' assets out of the reach of its creditors, and (b) was the alleged "alter ego" of the transferor, Acis, and also of Highland and the other four Highland-related offshore entities that constituted the Prior Acis Action Defendants. Instead, it was not until February 2024 in the Current Acis Action –nearly six years after the commencement of the Prior Acis Action—that the Reorganized Acis first filed fraudulent transfers claims against Dondero, seeking to hold him liable *for the very same transfers described in the Prior Acis Action*.  To be clear, the Reorganized Acis seeks avoidance and recovery of the following transfers ("Transfers" or "Fraudulent Transfer Claims") which are the very same transfers that Acis sought to avoid and recover in the Prior Acis Action):

1. Payment of *ultra vires* expense overpayments to Highland that occurred from 2013 through May 2016.[5]

2. Diverting a portion of Acis's Performance Allocation to CLO Holdco upon the wind-up of the CLO Value Fund after Joshua Terry's June 2016 termination.[6]

3. Modifications to sub-advisory agreement ("Sub-Advisory Agreement") and shared services agreement ("Shared Services Agreement") in July 2016, after Terry's June 2016 termination, so as to increase fees paid to Highland under these agreements.[7]

4. The Acis Loan Funding, Ltd. Portfolio Management Agreement ("ALF PMA") transfer to Highland HCF Advisor, Ltd. ("Highland Advisor") in October 2017.[8]

---

[5] Live Complaint ¶¶ 44-45.  Although the Reorganized Acis alleges that some of these transfers occurred as far back as 2013 (and in 2014 and 2015), the Reorganized Acis seeks avoidance and recovery of only the transfers that occurred within two years before the Petition Date and thus, does not assert a fraudulent transfer claim under bankruptcy or state fraudulent transfer law of those "expense overpayments" alleged to have occurred before January 30, 2016.

[6] Live Complaint ¶ 50.

[7] Live Complaint ¶ 57.

[8] Live Complaint ¶¶ 30, 70-75.

5.  ALF redemption of Acis LP's shares ("ALF Share Transfer") to Highland Advisor in October 2017.[9]

6.  Transfer by Acis LP of its interests as payee under a $9.5 million promissory note issued by Highland to Highland CLO Management Ltd. ("Highland Management") in November 2017.[10]

7.  Transfer by Acis LP equity interests and rights under a 2017-7 Assignment and Transfer Agreement to Highland CLO Holdings, Ltd. ("Highland Holdings") in December 2017.[11]

Importantly, by the time the Reorganized Acis filed its Live Complaint in this Current Acis Action, *its fraudulent transfer claims in the Prior Acis Action against the Prior Acis Action Defendants, for the same Transfers, had been dismissed with prejudice*—pursuant to orders entered by the bankruptcy court based on stipulations and consent of the parties in November 2020 and May 2021.[12]

Dondero has filed a Motion to Dismiss Plaintiffs' alter ego (Count 3) and fraudulent transfer (Count 5) causes of action, pursuant to Federal Rule of Civil Procedure 12(b)(6), which is currently before the court for consideration.

For the reasons set forth below, the bankruptcy court recommends that the district court *grant* the Motion to Dismiss Counts 3 and 5.

## II.      PROCEDURAL HISTORY RELEVANT TO PENDING MOTION TO DISMISS

In Dondero's pending Motion to Dismiss, seeking a dismissal of **Count 3** (alter ego) and **Count 5** (fraudulent transfers), he argues failure to state a claim upon which relief can be granted because the Counts are (1) untimely and barred by the statute of limitations or statute of repose under applicable law, and (2) asserted against a non-transferee from whom there is no entitlement

---

[9] Live Complaint ¶ 78.

[10] Live Complaint ¶ 81.

[11] Live Complaint ¶¶ 85, 87.

[12] See Dkt Nos. 216 & 224 in Adv. Pro. No. 18-3078.

25-10797.63

to recovery under applicable fraudulent transfer law.  He further states that "he does not consent to the entry of final orders or judgment by the Bankruptcy Court, as originally set forth in Defendant's *Original Answer to Original Complaint* [Doc. 19], including, e.g., ¶ 5 and ¶ 205 (demand for trial by jury)."[13]

The Reorganized Acis filed its response ("Response") in opposition to the Motion to Dismiss on March 27, 2024, arguing it had plausibly stated a claim for which relief can be granted with respect to the fraudulent transfer claims against Dondero.  Dondero filed his reply ("Reply") to the Response on April 10, 2024.  A hearing ("Hearing") was held on the Motion to Dismiss on June 12, 2024.[14]  During the Hearing, the Reorganized Acis' counsel clarified that it is not asserting its alter ego "claim" as a separate and independent cause of action but rather ***as a remedy that forms a basis for recovery against Dondero in connection with the fraudulent transfer cause of action in Count 5***.[15]  The parties each filed post-hearing briefing thereafter, for the purpose of identifying additional case law in support of their positions.[16]

Meanwhile, on August 2, 2024, Dondero filed a motion to withdraw the reference ("Motion to Withdraw the Reference")[17] and supporting brief[18] in the Current Acis Action, in which Dondero argues, among other things, that withdrawal of the reference by the district court is

---

[13] Motion to Dismiss ¶ 2; see also Brief 5 n.2.

[14] A transcript of the Hearing was filed on June 17, 2024. Dkt. No. 128.  References herein to the Hearing transcript shall be in the format of Hr'g Trans. page:line(s).

[15] *See* Hr'g Trans. 42:9-45:13.

[16] *See* Dkt. No. 129 & Dkt. No. 132.  Note that Dondero, in his post-hearing brief, moved to strike the Reorganized Acis's post-hearing brief, as having been filed without first obtaining leave of court to do so. While the court certainly would have preferred for the Reorganized Acis to have formally sought leave of court to file its post-hearing brief, the court deems it appropriate to deny the motion to strike given that Dondero was put on notice during the Hearing that the Reorganized Acis contemplated filing supplemental briefing to address questions raised by the court and because Dondero had ample opportunity to address the issues raised in the Reorganized Acis's post-hearing brief as evidenced by the extensive briefing contained in Dondero's own post-hearing brief.

[17] Dkt. No. 137. The bankruptcy clerk transmitted the Motion to Withdraw the Reference to the district court on August 9, 2024, which was assigned Civil Action No. 3:24-cv-02036-N (Chief Judge David Godbey).

[18] Dkt. No. 138.

required because the bankruptcy court lacks constitutional authority, under *Stern v. Marshall*,[19] to conduct a jury trial (which Dondero has requested) or to enter final judgments (absent Dondero's consent, which he does not give) with respect to *all* of the claims against Dondero ("Dondero Claims").

On August 29, 2024, all remaining parties in this Current Acis Action entered into a *Joint Stipulation Regarding Motion to Withdraw the Reference*, in which they stipulated and agreed that (i) the reference should be withdrawn once the Current Acis Action is certified by the bankruptcy court as ready for trial; (ii) Dondero's requests in the Motion to Withdraw the Reference that the bankruptcy court abstain and that the Dondero Claims be dismissed for lack of subject matter jurisdiction, are withdrawn; and (iii) "[s]ubject to the Bankruptcy Court's report and recommendations on pending dispositive motions all other pretrial filings needed for the Bankruptcy Court to certify the case ready for trial will be filed by the parties on or before October 18, 2024."

### III.    JURISDICTION

This court must first address whether bankruptcy subject matter jurisdiction exists over the claims in this Current Acis Action—regardless of any stipulations among the parties.[20]

#### A.  Bankruptcy Subject Matter Jurisdiction.

---

[19] 564 U.S. 462, 131 S. Ct. 2594 (2011).

[20] The court notes that Dondero raised a subject matter jurisdiction objection in his Motion to Withdraw the Reference, which was filed on August 2, 2024. *See* Dkt. No. 137. Dondero subsequently indicated he was withdrawing his subject matter jurisdiction objection in the Joint Stipulation regarding his Motion to Withdraw the Reference 9mentioned above). However, subject matter jurisdiction cannot be conferred by consent of the parties, *see Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 851 (1986) ("[P]arties by consent cannot confer on federal courts subject-matter jurisdiction beyond the limitations imposed by Article III, § 2.") (citation omitted), just as an objection to subject matter jurisdiction can never be waived or forfeited. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived."). "[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Id.*; *see also Abraugh v. Altimus*, 26 F.4th 298, 304 (5th Cir. 2022) (citation omitted) (A court has an "constitutional duty . . . to decline subject matter jurisdiction where it does not exist—and that is so whether the parties challenge Article III standing or not."). Thus, the court explores whether bankruptcy subject matter jurisdiction exists herein.

With regard to bankruptcy subject matter jurisdiction, one must always start—not with Title 11, the Bankruptcy Code—but with the applicable bankruptcy jurisdictional statute, 28 U.S.C. § 1334(b). Under that statute, federal district courts have original but not exclusive subject matter jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." Courts have elaborated that the words "arising under title 11" mean "those proceedings that involve a cause of action created or determined by a statutory provision of title 11," and the language "arising in" means those types of proceedings that ***could only arise in the context of a bankruptcy case***. *Wood v. Wood, (In re Wood)*, 825 F. 2d 90, 96-97 (5th Cir. 1987). Courts have further elaborated that claims that arise "under title 11" or arise "in cases under title 11" are known as "core" proceedings. *U.S. Brass Corp. v. Travelers Ins. Grp. (In re U.S. Brass Corp.),* 301 F.3d 296, 305 (5th Cir. 2002); *see also* 28 U.S.C. § 157(b). Meanwhile, those disputes that are merely "related to" a bankruptcy case are "noncore" proceedings.

### B.  Bankruptcy Court Authority to Adjudicate.

So, what's with the "core" and "noncore" labels? Well, according to statute, 28 U.S.C. § 157(b) & (c), a bankruptcy court may enter final orders or judgments in "core" matters—with or without the consent of all parties involved. But, as for "noncore" matters, a bankruptcy court needs consent of all parties to enter final orders or judgments. *Stern v. Marshall* and its progeny upset this statutory structure significantly.[21] *Stern v. Marshall* and its progeny instruct that, even if a matter is "core" pursuant to 28 U.S.C. § 157(b)—such that a bankruptcy court would appear to have statutory authority to enter final orders or judgments without all parties' consent—there is a constitutional flaw in the structure of 28 U.S.C. § 157(b) & (c). Specifically, a statutorily "core" matter still will require an Article III district court to issue final orders or judgments (unless all

---

[21] 564 U.S. 462, 131 S. Ct. 2594 (2011).

25-10797.66

parties consent to bankruptcy court final adjudication) whenever the action is quintessentially a suit at common law, brought to augment a bankruptcy estate, seeking a legal remedy, and involving private, not public, rights. *E.g., Stern v. Marshall*, 564 U.S. at 492-94; *Executive Benefits Ins. Agency v. Arkinson,* 134 S. Ct. 2165 (2014); *Wellness Int'l Network v. Sharif,* 135 S. Ct. 1932 (2015). Thus, courts must now look to the ***nature*** of the claims asserted in a proceeding to determine whether a bankruptcy court may issue final orders without consent, and not simply look at whether the claims fall on the list of "core" matters set forth in 28 U.S.C. § 157(b)(2).

### C. The Significance of this Current Acis Action Being Filed Post-Confirmation.

A further consideration here is the "oldness" of this Current Acis Action. How might that affect the bankruptcy subject matter jurisdiction analysis here? The underlying bankruptcy case was commenced January 30, 2018 (as an involuntary bankruptcy case). A Chapter 11 plan was confirmed in the bankruptcy case more than five years ago, on January 31, 2019. This Current Acis Action was filed ***post-confirmation***, on April 11, 2020. And, Dondero has earlier argued, among other things (before reaching the *Joint Stipulation Regarding Motion to Withdraw the Reference*), that all general unsecured creditors have been paid off fully, pursuant to the confirmed plan's terms, such that any recoveries would inure only to the benefit of the Reorganized Acis. These are all valid points that the court must explore. The ***post-confirmation timing*** requires us to drill down on two further considerations: (i) does this Current Acis Action fall within the "narrowed" scope of bankruptcy subject matter jurisdiction that applies post-confirmation; and (ii) did the confirmed Acis plan retain the causes of action and confer standing on the Reorganized Acis?

### *1. Narrowed Post-Confirmation Bankruptcy Subject Matter Jurisdiction.*

25-10797.67

With regard to the post-confirmation timing, it has often been stated by the Fifth Circuit that bankruptcy subject matter jurisdiction becomes *narrower* post-confirmation.  This topic of post-confirmation jurisdiction usually (but not always) comes up in a context where parties are disputing whether claims/causes of action are at least noncore—*i.e.,* at least "related to" a bankruptcy case—as opposed to core—*i.e.,* "arising under" or "arising in."  Specifically, the Fifth Circuit has stated that, *during* a bankruptcy case—and prior to confirmation in a Chapter 11 context—a proceeding will at least "relate to" a bankruptcy case if "the outcome of that proceeding could conceivably have any effect" on the debtor's estate. *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1022 (5th Cir. 1999) (quotation omitted). "Related-to jurisdiction," thus, includes "any litigation" that "could alter the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate." *Collins v. Sidharthan (In re KSRP, Ltd.)*, 809 F.3d 263, 266 (5th Cir. 2015) (cleaned up). The Fifth Circuit has elaborated that, while this jurisdiction is broad, it narrows once the debtor confirms its reorganization plan, because confirmation dissolves the debtor's bankruptcy estate.  Accordingly, the Fifth Circuit has stated numerous times that "related to" bankruptcy subject matter jurisdiction, post-confirmation, narrows to "matters pertaining to the implementation or execution of the plan."  *In re GenOn Mid-Atlantic Development, L.L.C.*, 42 F.4th 523, 534 (5th Cir. 2022); *In re Enron*, 535 F.3d 325, 335 (5th Cir. 2008); *Craig's Stores of Tex., Inc. v. Bank of La. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001). *See also U.S. Brass Corp. v. Travelers Ins. Grp. (In re U.S. Brass Corp.)*, 301 F.3d 296, 304 (5th Cir. 2002); *In re Chesapeake Energy Corporation,* 70 F.4th 273 (5th Cir. 2023).[22]

---

[22] There can also be "related to" post-confirmation bankruptcy subject matter jurisdiction in a situation in which a bankruptcy court seeks to enforce its orders or to block alleged violations of a debtor's bankruptcy law rights. *Galaz v. Katona (In re Galaz)*, 841 F.3d 316, 32223 (5th Cir. 2016).

The *Craig's Stores* case was the first Fifth Circuit case that articulated the post-confirmation test for narrowed bankruptcy subject matter jurisdiction.  It involved a contractual dispute that erupted 18 months after confirmation—and this late timing of the post-confirmation dispute eruption was the main problem.  The Fifth Circuit held there was no bankruptcy subject matter jurisdiction there and that an emancipated debtor may not come running back to a bankruptcy court every time something unpleasant happens. The Fifth Circuit has suggested multiple times thereafter that, if a dispute brought to the bankruptcy court post-confirmation involves pre-confirmation facts, this makes a difference in the analysis.  For example, in connection with the infamous Enron Corporation financial debacle, certain investors brought lawsuits (some prepetition and some postpetition, but preconfirmation) against management, professionals, and financial institutions associated with Enron.  When, after confirmation, the suits were still ongoing, there was a post-confirmation challenge to these actions going forward.  The Fifth Circuit distilled *Craig's Stores* down to three factors relevant to jurisdiction over post-confirmation disputes. *In re Enron Corp. Sec.*, 535 F.3d 325, 335–36 (5th Cir. 2008). The first factor was whether the dispute "principally dealt with postconfirmation relations between the parties," or instead arose from preconfirmation conduct.  The second was whether the claims were brought before confirmation. The third was whether any "facts or law deriving from the reorganization or the plan were necessary to the claim."  Notably, the Fifth Circuit seemed to distance itself a bit from this *Enron* three-factor test, more recently, stating that it really all boils down to ***one overarching question***:  Does the dispute "pertain to the implementation or execution" of the debtor's reorganization plan? *In re GenOn Mid-Atl. Dev., L.L.C.,* 42 F.4th 523, 534 (5th Cir. 2022).

25-10797.69

So, assuming this is the test here, does this Current Acis Action pertain to the *implementation or execution of the Acis confirmed plan*?

In answering this question, it bears mentioning that a court must look at the facts as they existed at the time an action was filed to determine whether bankruptcy subject matter jurisdiction exists. So, while this Current Acis Action is now quite "long in the tooth," and general unsecured creditors may have been paid fully by now, one does not consider subsequent events as a limiter of subject matter jurisdiction. *See, e.g., Double Eagle Energy Services, L.L.C. v. MarkWest Utica EMG, L.L.C.,* 936 F. 3d 260 (5th Cir. 2019) (noting that the time-of-filing rule—that subject matter jurisdiction is determined when a federal court's jurisdiction is first invoked—is "hornbook law," citing *Grupo Dataflux v. Atlas Glob. Grp., L.P.,* 541 U.S. 567, 570 (2004), and further holding that this rule applies when an action is related to a bankruptcy, but then something happens that dissolves the bankruptcy connection); *Doddy v. Oxy USA,* 101 F.3d 448, 456 (5th Cir. 1996) ("[I]f jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."). *See also Mirant*, 675 F.3d 530 (5th Cir. 2012) (Mirant, as debtor-in-possession, sued Commerzbank and other lenders in bankruptcy court to avoid a guaranty that Mirant gave to them as an alleged fraudulent transfer, and also to recover the funds Mirant paid pursuant to the guaranty, pursuant to Bankruptcy Code section 550; Mirant's bankruptcy plan provided for the creation of a special litigation entity, MC Asset Recovery, LLC ("MCAR") so, after Mirant's bankruptcy plan was confirmed, MCAR substituted into the case for Mirant; the defendants later argued that, because Mirant's creditors had been paid in full, MCAR did not have standing to pursue an avoidance action; the Fifth Circuit disagreed, assessing that, in this circuit, a trustee's right to avoid a transfer is tested at the petition date and once a trustee's avoidance rights

are triggered at the time of filing; a bankruptcy trustee may still have standing to avoid a fraudulent transfer after the unsecured creditors are satisfied in full).

The court concludes that, if the question here—to confer bankruptcy subject matter jurisdiction—is whether this Current Acis Action pertained to the implementation or execution of the Acis Plan at the time it was filed, the answer is yes. The Acis Plan specifically and unequivocally calls for the retention of the claims being asserted in this Current Acis Action for prosecution by the Reorganized Debtors post confirmation as a "means for implementation of the Plan."[23] In addition, the Acis Plan explicitly calls for the retention by the bankruptcy court of jurisdiction over those claims in Article XV, which is entitled "Jurisdiction of Courts and Modifications to the Plan," and section 15.01 thereunder,[24] which specifically provides for the "retention of jurisdiction" by the bankruptcy court of "all matters arising in, arising under, and related to" the bankruptcy cases and the Acis Plan, for, among other purposes,

> (e) To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan or in connection with the enforcement of any remedies made available under the Plan . . . ;
> . . .
> (i) To enable the Reorganized Debtor to prosecute any and all proceedings which may be brought to set aside transfers, . . . and to recover any transfers, Assets, properties or damages to which the Reorganized Debtor may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state or local laws, including causes of action, controversies, disputes and conflicts between the Reorganized Debtor and any other party, including but not limited to, . . . fraudulent transfers . . .;
> . . .

---

[23] *See* Acis Plan, Art. VI, § 6.03, which is entitled "Retention and Assertion of Causes of Action and Defenses" and states, in part:

> Except as expressly set forth in this Plan, all causes of action . . . (including but not limited to all Estate Claims . . . and Avoidance Actions) belonging to the Debtors . . . shall, upon the occurrence of the Effective Date, be reserved, retained and preserved for, and transferred to, received by and vested, in the Reorganized Debtor for the benefit of the Debtors and the Debtors' estates. Without limitation, the Retained Causes of Action include the claims and causes of action described on **Exhibit A** attached hereto.

[24] Acis Plan, Art. XV, § 15.01.

  (l) To enter and implement all such orders as may be necessary or appropriate to execute, interpret, construe, implement, consummate, or enforce the terms and conditions of this Plan and the transactions required or contemplated pursuant thereto; . . . and
  . . .
  (q) To determine any other matter or dispute relating to the Estate, the Estate Claims, the Estate Defenses, the Assets, or the Distributions by the Reorganized Debtor.

To be clear, a plan cannot create or somehow be the source of subject matter jurisdiction.  "[T]he source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan. The source of the court's bankruptcy jurisdiction is 28 U.S.C. §§ 1334 and 157." *See In re Daisytek, Inc.,* 323 B.R. 180, 185-186 (N.D. Tex. 2005) (citing *U.S. Brass Corp.*, 301 F.3d 296, 303 (5th Cir. 2002) (quoting *United States Tr. v. Gryphon at the Stone Mansion, Inc.,* 216 B.R. 764, 769 (W.D. Pa.1997), *aff'd*, 166 F.3d 552 (3d Cir.1999))); *In re Coho*, 309 B.R. 221 ("the retention of jurisdiction provisions of the Plan cannot confer or expand the Court's subject matter jurisdiction").  But, reservation of claims and retention of jurisdiction in a plan must exist as a condition of finding the more narrow "related to" jurisdiction post-confirmation over the claims as being connected to the "implementation and execution" of the plan.

Other courts in similar postures have so held.  For example, in *Coho Oil & Gas, Inc. v. Finley Resources, Inc. (In re Coho Energy, Inc.)*, 309 B.R. 217, 220 (Bankr. N.D. Tex. 2004), the court first noted that the claims at issue in a post-confirmation adversary proceeding arose pre-petition. The court further noted that:

> while Coho chose not to formally assert the claims until after the Plan was confirmed, the claims were preserved under the Plan and assigned to the creditor's trust for prosecution . . . .  Because: (i) the claims at issue in the Adversary Proceeding deal with Coho's pre-petition relationship with the Defendants; (ii) the Plan contemplates the prosecution of the claims and the distribution of Coho's share of any recovery to creditors under the Plan; and (iii) the prosecution of the claims

will thus impact compliance with, or completion of, the Plan, this Court is satisfied that the *Craig's Stores* test for postconfirmation jurisdiction is satisfied."

*See also Brickley for CryptoMetrics, Inc. Creditors' Trust v. ScanTech,* 566 B.R. 815 (W.D. Tex. 2017) (the court—while noting that *Craig Stores* involved a dispute regarding post-confirmation activities/behavior—stated that the key factor in evaluating whether "related to" jurisdiction exists post-confirmation is whether there was prepetition (or at least pre-confirmation) antagonism between the debtor and the party being sued, and whether the plan contemplated a suit being pursued regarding this post-confirmation); *In re WRT Energy Corp.,* 402 B.R. 717, 724 (Bankr. W.D. La. 2007) (analyzing numerous cases discussing post-confirmation bankruptcy jurisdiction and stating that "[o]nce the estate ceases to exist postconfirmation, the focus thus shifts from whether the matter before the court "could conceivably have an effect on the debtor's estate," to whether the matter bears a ***close nexus*** to the confirmed plan.") (Emphasis added.)

The *WRT* court (while dealing with very different postconfirmation litigation than this Current Acis Action) articulated quite soundly, in this court's view, what to do in a situation like this. "When the matter at hand involves the liquidation of pre-petition claims assigned to the trust by the plan, the nexus [to implementation and execution of the plan] is usually sufficient to confer postconfirmation jurisdiction over the matter." *Id.* at 726 (citations omitted). As to this Current Acis Action, the Plan did, indeed, contemplate retention and pursuit by the Reorganized Acis of the claims being asserted herein. Thus, the court concludes that there is a ***nexus to the implementation and execution of the Acis Plan*** here, such that post-confirmation bankruptcy subject matter jurisdiction exists.

### 2. *Standing.*

An additional question that must be asked here (which initially sounds somewhat redundant of issues discussed in the previous section) is, did the confirmed Acis Plan ***specifically and***

17

*unequivocally* retain the causes of action in the Current Acis Action so as to confer constitutionally required standing[25] on the plaintiffs (i.e., the Reorganized Debtors) to pursue them?[26]  This court somewhat answered this question in its prior analysis of whether statutory bankruptcy subject matter jurisdiction exists here, in this post-confirmation context (in referring to the Acis Plan's inclusion of the retention and reservation of claims as providing a nexus to the implementation and execution of the plan, as required by *Craig's Stores* and its progeny).  For the sake of further clarity, however, the court will highlight additional provisions in the Acis Plan that, with the provisions discussed above, satisfy the *United Operating* "specific and unequivocal" test for purposes of constitutional standing:

- Article IX, entitled "<u>Retention of Estate Claims and Estate Defenses</u>" provides, in relevant part:

    9.01.    <u>Retention of Estate Claims</u>. Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Claims[27] shall be transferred to, and vested in, the Reorganized Debtor, both for purposes of seeking an affirmative recovery against any Person and for the purposes of offset, recoupment or defense against any Claim asserted against the Estate or Reorganized Debtor. All Estate Claims shall be deemed to have been transferred to, and vested in, the Reorganized Debtor as of the Effective Date based on the entry of the Confirmation Order.

    Without limiting the effectiveness or generality of the foregoing reservation, out of an abundance of caution, the Debtors and the Estate hereby specifically

---

[25] It is well-established that a plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the tripartite test for Article III constitutional standing:  (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent—not conjectural or hypothetical, (2) that there is a causal connection between the injury and the conduct complained of, and (3) it must be likely, not speculative, that the injury will be redressed by a favorable decision.  *See Thole v. U.S. Bank, N.A.*, 140 S.Ct. 1615, 1618 (2020) (citing the Supreme Court's seminal case on the tripartite test for Article III constitutional standing, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), where the Supreme Court stated that "the irreducible constitutional minimum of standing contains [the] three elements"); *see also Abraugh v. Altimus*, 26 F.4th 298, 302 (5th Cir. 2022).

[26] The Fifth Circuit has held that, in order for a post-confirmation reorganized debtor or its representative to have standing to pursue a claim previously owned by the debtor, the reorganization plan must contain a "specific and unequivocal" reservation of the claim. *See Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351, 355 (5th Cir.2008).

[27] The term "Estate Claims" is defined in the Acis Plan to include "all claims and causes of action held by the Debtors' Estate, including, without limitation, the Estate Claims listed on the attached Exhibit A and all Avoidance Actions." Acis Plan, Art. I, § 1.55.

reserves, retains, and preserves the Estate Claims reflected in the attached **Exhibit A**. Reference is here made to **Exhibit A** which constitutes an integral part of this Plan. The provisions of this Article of the Plan, as well as the descriptions and disclosures relating to the Estate Claims in the Disclosure Statement, are provided in the interest of providing maximum disclosure of the Estate Claims of which Debtors are presently aware and shall not act as a limitation on the potential Estate

Claims that may exist. It is the specific intention of this Plan that all Avoidance Actions and all associated remedies, and any other Estate Claims, whether arising before or after the Petition Date, and whether arising under the Bankruptcy Code or applicable state or federal nonbankruptcy laws, shall all be reserved, retained and preserved under this Plan to be transferred to, and vested in, the Reorganized Debtor. All Estate Claims are reserved, retained and preserved both as causes of action for an affirmative recovery and as counterclaims and for the purposes of offset or recoupment against any Claims asserted against the Estate.

9.03.   <u>Assertion of Estate Claims and Estate Defenses</u>. The Reorganized Debtor shall have,and be vested with, the exclusive right, authority and standing to assert all Estate Claims and Estate Defenses for the benefit of the Reorganized Debtor.

- Exhibit A (to the Acis Plan) ¶ 2 provides, in part, "All Estate Claims are hereby reserved, retained and preserved, and shall all be transferred to, and vested in, the Reorganized Debtor pursuant to this Plan."

- Exhibit A ¶ 11 provides, in part, that "[a]ll Estate Claims . . . against James D. Dondero, individually, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation . . . all Avoidance Actions . . . as well as any Claim to pierce the corporate veil of any entity to hold James D. Dondero individually liable."

- Exhibit A ¶ 17 provides, in relevant part,

   With respect to all Estate Claims against any Person, all rights to pierce or ignore the corporate veil are hereby reserved, retained and preserved for the benefit of the Estate and the Reorganized Debtor[,] . . . includ[ing]: (a) any right to pierce the corporate veil, including reverse piercing, on any theory or basis, including alter ego or any theory of sham to perpetrate a fraud, and (b) any Claim or basis to pierce the corporate veil of any entity with respect to establishing personal liability against James D. Dondero . . . .

- Exhibit A ¶ 18 provides, in part, that "[a]ll Avoidance Actions are hereby reserved, retained and preserved as to all Persons[,]" and that "[t]he reservation, retention and preservation of such Avoidance Actions shall include the reservation, retention and preservation for the

25-10797.75

benefit of the Estate and Reorganized Debtor of all rights and remedies pursuant to section 550 of the Bankruptcy Code."

These provisions in the Acis Plan serve to vest—through reservation and assignment to the Reorganized Acis—constitutional "standing" in the Reorganized Acis to bring the claims asserted against Dondero in this Current Acis Action, which is an aspect of the federal courts' subject matter jurisdiction under Article III of the U.S. Constitution over "cases and controversies,"[28] and, thus, the court is satisfied that federal courts have, at a minimum, Article III "case or controversy" subject matter jurisdiction over the claims in this Current Acis Action, in addition to having statutory bankruptcy subject matter jurisdiction.

For all of these reasons, this court determines that bankruptcy subject matter jurisdiction and Article III standing exist in this Current Acis Action. However, because the claims asserted are state common law claims (*i.e.,* breach of fiduciary duty and alter ego theories) and fraudulent transfer claims (the latter of which are statutorily core in nature, but the type of *Stern*-claims that cannot be finally adjudicated by a bankruptcy court, without consent—which Dondero does not give), *see Executive Benefits*, 134 S. Ct. at 2165, this action must ultimately go to trial before the District Court, and the bankruptcy court may not issue dispositive orders or a final judgment. Thus, the bankruptcy report issues this ruling on the Motion to Dismiss as a report and recommendation to the District Court.

## IV.    RULE 12(b)(6) STANDARD

Rule 12(b)(6) mandates dismissal of any complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In evaluating a motion to dismiss under Rule 12(b)(6), a complaint is to be charitably construed, with all well-pleaded factual allegations being

---

[28] Article III, Section 2 of the United States Constitution gives federal courts jurisdiction over enumerated cases and controversies.

25-10797.76

accepted as true and with any reasonable inferences from those facts being drawn in favor of the non-moving party. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (cleaned up). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (cleaned up). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly* at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly* at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully[,]" such that "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Twombly* at 556, 557).[29] Untimely complaints that are barred as a matter of law are properly subject to dismissal under Federal Rule 12(b)(6). *Jones v. Bock,* 549 U.S. 199, 215 (2007) (finding dismissal appropriate under Federal Rule 12(b)(6) if relief is barred by the applicable statute of limitations).

## V.     LEGAL ANALYSIS

Dondero seeks a Rule 12(b)(6) dismissal of the claims of Fraudulent Transfer Claims that are asserted against him in Count 5 of the Live Complaint on bases that they are (1) untimely and

---

[29] In *Iqbal*, the Supreme Court affirmed the *Twombly* two-pronged approach to deciding motions to dismiss: first, determine what is a factual allegation versus a legal conclusion, as only factual allegations will be accepted as true; and second, determine whether the factual allegations state a plausible claim for relief. *Id.* at 678-80.

25-10797.77

barred by the statute of limitations or statue of repose under applicable law, and (2) asserted against a non-transferee from whom the Reorganized Acis would not be entitled to recover under applicable fraudulent transfer law.  The court will address the untimeliness argument first and then will address the substantive issue of whether the Reorganize Acis has otherwise stated a "plausible" claim for relief.

### A. *Were the Fraudulent Transfer Claims Asserted for the First Time in the Live Complaint Timely Filed?*

In the Live Complaint, the Reorganized Acis seeks to "rescind" certain Transfers that occurred within two years of the Petition Date as fraudulent and to "require Dondero to return the transferred property or pay Acis money damages up to the value of the property transferred" pursuant to Bankruptcy Code § 548 and state fraudulent transfer laws in both Texas and Delaware.  Dondero argues that the Fraudulent Transfer Claims should be dismissed under Rule 12(b)(6) for untimeliness, having been brought for the first time in the Live Complaint on **February 2, 2024**, nearly four years after the filing of the original complaint in this Current Acis Action—and nearly six years after the orders for relief were entered in the Acis Bankruptcy Case.  Specifically, he argues that the Fraudulent Transfer Claims are time-barred by the terms of section 546(a) of the Bankruptcy Code and, in the case of the TUFTA and DUFTA claims, pursuant to TUFTA's and DUFTA's respective statutes of repose.[30]

Section 546(a) of the Bankruptcy Code, entitled "Limitations on avoiding powers," bars commencement of an action "under section 544, 545, 547, 548, or 553" of the Bankruptcy Code after (as applicable, here) the *later* of: (A) two years after entry of an order for relief (here, two years after the April 13, 2018 orders for relief would be **April 13, 2020**); or (B) one year after the appointment or election of the first trustee if such appointment or election occurs before the

---

[30] Tex. Bus. & Com. Code § 24.010(a) and 6 Del. C. § 1309.

25-10797.78

expiration of the period specified in subparagraph (A)[31] (here, the first trustee was appointed on May 14, 2018—before April 13, 2020—so May 14, 2019 would be the operative date under subsection (B)).  Thus, the deadline for commencing avoidance actions was **April 13, 2020**. Section 546(a) is, of course, the Bankruptcy Code's statute of limitations for bringing avoidance actions (not to be confused with the reach-back periods that substantively define avoidable transfers—*e.g.,* two years for fraudulent transfers under section 548 and four years for TUFTA and DUFTA claims).[32]

Under Bankruptcy Code section 546, the Fraudulent Transfer Claims, whether brought pursuant to § 548 or pursuant to state fraudulent transfer laws through Bankruptcy Code section 544(b), must be brought within two years after the entry of the order for relief.[33]  Here, the orders for relief were entered on April 13, 2018, following a January 30, 2018 involuntary petition date. Thus, it would certainly appear that the Reorganized Acis must have brought their Fraudulent Transfer Claims on or before April 13, 2020.

The Reorganized Acis acknowledges that it did not bring the Fraudulent Transfer Claims until filing the Live Complaint on February 2, 2024, which is well past the April 13, 2020 deadline, but it argues that because it filed its original complaint two days before the deadline, on April 11, 2020, the Fraudulent Transfer Claims are timely because they "relate back" to the original complaint under Fed. R. Civ. P.  15(c), made applicable herein pursuant to Fed. R. Bankr. P. 7015 because the Fraudulent Transfer Claims arise out of the same "conduct, transaction, or occurrence"

---

[31] *See* 11 U.S.C. § 546(a)(1).

[32] Often times plaintiffs must look to state fraudulent transfer law to pursue avoidance and recovery of transfers that occurred between two years and four years prior to the petition date.  It appears that the Reorganized Acis here, though, seeks only avoidance and recovery of Transfers that occurred within two years of the Petition Date and, thus, the extra two-year reach-back for TUFTA and DUFTA claims does not capture any of the Transfers that would not otherwise fall within the two-year reach-back period under § 548.

[33] Bankruptcy Code § 546(a) provides:

    (a) An action or proceeding under section

25-10797.79

set out in the original complaint. Dondero counters that the Fraudulent Transfer Claims do not "relate back" under Rule 15(c), and, therefore, they are untimely and should be dismissed under Rule 12(b)(6) for failure to state a claim.

What does Rule 15 say regarding relation back of amended pleadings? When can a claim first brought in an amended complaint be deemed to have been filed on, and to "relate back" to, the date of the original complaint? Rule 15(c) provides, in relevant part, "(1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when: . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ."

As the Reorganized Acis correctly points out, this court and others in the Fifth Circuit have applied Rule 15(c)'s relation-back doctrine in finding that § 548 fraudulent transfer claims that were newly asserted in an amended complaint that was filed after the § 546 deadline "related back" to the original complaint that was timely filed.[34] In *Texas E&P Operating*, for example, this court agreed with the bankruptcy court's analysis in *In re Uplift Rx, LLC*[35] regarding relation back of newly asserted fraudulent transfer claims under Rule 15 (c)(1)(B):[36]

> Claims that are the "natural offshoot" or part of the same "basic scheme" arise from the same "conduct, transaction, or occurrence" pleaded in the original complaint. New avoidance claims are generally treated as separate, distinct transactions that do not relate back under Rule 15(c). However, just as claims arising from the same "basic scheme" relate back, so too do newly pleaded avoidance claims that arise from the same "course of conduct" pleaded in the original complaint. Consequently, the Additional Transfer claims will relate back if: (1) the Amended Complaint alleges that the Additional Transfers were part of a course of conduct alleged in the Original Complaint; and (2) the Original Complaint notified the parties, against

---

[34] Response 13-14 (citing *Yaquinto v. Krage & Janvey, L.L.P. (In re Texas E&P Operating, Inc.)*, Adv. No. 19-03231-sgj, 2023 WL 3012268 (Bankr. N.D. Tex. Apr. 19, 2023) ("This court agrees that the Newly Identified Transfers relate back to the Original Complaint under Rule 15(c) and are, therefore, not barred by section 546(a).") and *In re Juliet Homes, LP*, No. 07-36424, 2011 WL 6817928, at *8 (Bankr. S.D. Tex. Dec. 28, 2011) ("Because the newly alleged transfers relate back to the original complaint, they are not barred by limitations.")).

[35] *In re Uplift RX, LLC*, 625 B.R. 364 (Bankr. S.D. Tex. 2021).

[36] *In re Texas E & P Operating*, 2023 WL 3012268, at *9 (quoting *In re Uplift RX*, 625 B.R. at 375-76).

whom the Additional Transfer claims are asserted, that the Trustee could pursue avoidance of the Additional Transfers associated with the course of conduct alleged in the Original Complaint.

Using this framework, this court "look[ed] to the allegations in the original complaint [to] determine if the newly identified transfers fit within the conduct described and notice given therein."[37]    As was the case in *In re Uplift Rx*, the plaintiff trustee in *Texas E & P Operating* had asserted fraudulent transfer claims in his original complaint filed before the § 546 deadline and was seeking to avoid newly-identified transfers under the same theory of recovery under § 548. This court went on to hold that the fraudulent transfer claims in the amended complaint, that sought to avoid and recover the newly-identified transfers, related back to the original complaint, finding that the amended complaint "allege[d] additional enumerated transfers that were part of the same course of conduct alleged" in the original complaint "upon which the relation back of avoidance claims may be predicated, [which] has sometimes been held to refer to a scheme with a fraudulent purpose."[38] And, the original complaint, "while lean, d[id] seem to adequately identify a 'course of conduct' from which the [newly identified fraudulent transfer] claims arose," and the defendant had thus "received notice of this course of conduct"[39] as the original complaint contained specific language that "signal[led] the existence of an ongoing investigation focused on uncovering additional transfers linked to a common course of conduct."[40]

---

[37] *Id.*

[38]*Id.* at *10 (citing *Adelphia Recovery Trust v. Bank of America, N.A.*, 642 F. Supp.2d 292, 333-34 (S.D.N.Y. 2009) (finding that new fraudulent transfer claims related back because they were part of the same financial fraud scheme alleged in the original complaint)).

[39] *Id.* (citing *In re M. Fabrikant & Sons, Inc.,* 447 B.R. 170, 181 (Bankr. S.D.N.Y. 2011), *aff'd*, 480 B.R. 480 (S.D.N.Y. 2012), *aff'd,* 541 Fed. Appx. 55 (2d Cir. 2013) ("The principal inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party by the general fact situation alleged in the original pleading.")) (cleaned up).

[40] *Id.* (citing *In re Bernard L. Madoff Inv. Sec. LLC,* 468 B.R. 620, 633 (Bankr. S.D.N.Y. 2012) (" [A]llegations in the Original Complaint . . . gave reasonable notice that the Trustee was still uncovering additional transfers . . . .").

25-10797.81

Here, the Reorganized Acis—unlike the plaintiffs in *Texas E & P Operating* and *Uplift*—did not assert **any** fraudulent transfer claim (under either § 548 or state fraudulent transfer laws) in their original complaint in this Current Acis Action. Does this make a difference in the relation-back analysis? Is a plaintiff required to have asserted a fraudulent transfer claim in its original complaint in order for a newly-asserted fraudulent transfer claim to relate back under Rule 15(c)?

The answer to the first questions is "maybe"—in that whether a plaintiff asserted fraudulent transfer claims in his original complaint would seem to be highly relevant in determining whether a newly asserted claim "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ," whether the claim is a "natural offshoot," or arises as part, of the same "basic scheme" or "course of conduct" pleaded in the original complaint so as to relate back under Rule 15(c)(1). As this court stated in *Texas E & P Operating*, "Sometimes newly added transfers claims will, indeed, 'relate back' pursuant to Rule 15 and not be time barred by section 546, but sometimes they will not."[41]

As to the second question, this court believes the answer is "no" – a plaintiff is not **required** to have asserted a fraudulent transfer claim in his original complaint in order for his newly asserted fraudulent transfer claims to relate back under Rule 15(c). A fraudulent transfer claim under § 548 that is first raised in an amended complaint filed after the § 546 deadline has passed **can** relate back to the original complaint so as to be deemed timely filed under § 546, even if the original complaint does not explicitly state a fraudulent transfer cause of action under § 548—but **only** if the newly asserted claims arise out of the same course of conduct or the same fraudulent scheme alleged in the original complaint, such that the original complaint puts the particular defendant on

---

[41] *Texas E & P Operating*, 2023 WL 3012268 at *9.

notice that the plaintiff could pursue avoidance, as fraudulent, transfers arising out of the course of conduct alleged in the original complaint.[42]

Dondero suggests that the court should consider, in its relation-back analysis, the fact that the Reorganized Acis filed its Live Complaint nearly four years after the § 546(c) deadline—at an extremely late stage. But, as the Supreme Court has admonished, once a plaintiff has been granted leave to amend, the court does not have the discretion to consider the circumstances of the amendment in deciding whether Rule 15(c) allows relation back:[43]

> The Rule plainly sets forth an exclusive list of requirements for relation back, and the amending party's diligence is not among them. Moreover, the Rule mandates relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to the district court's equitable discretion. See Rule 15(c)(1) ("An amendment . . . *relates back* . . . when" the three listed requirements are met (emphasis added)).
>
> The mandatory nature of the inquiry for relation back under Rule 15(c) is particularly striking in contrast to the inquiry under Rule 15(a), which sets forth the circumstances in which a party may amend its pleading before trial. By its terms, Rule 15(a) gives discretion to the district court in deciding whether to grant a motion to amend a pleading to add a party or a claim. . . . [A] court may consider a movant's "undue delay" or "dilatory motive" in deciding whether to grant leave to amend under Rule 15(a). As the contrast between Rule 15(a) and Rule 15(c) makes clear, however, the speed with which a plaintiff moves to amend her complaint or files an amended complaint after obtaining leave to do so has no bearing on whether the amended complaint relates back.

Notably, here, the Reorganized Acis's motion for leave to file the Live Complaint on February 2, 2024, was ***unopposed*** by Donder. Thus, its dilatoriness in bringing the Fraudulent Transfer Claims

---

[42] Other courts have allowed the first-time pleading of a § 548 fraudulent transfer claim despite the § 546 deadline having passed, where the earlier complaint factually alleged fraudulent transfers and the same course of conduct as the amended complaint. *See, e.g., In re Colonial Cheshire I Ltd. Partnership*, 167 B.R. 748, 752 (Bankr. D. Conn., 1994) (where the court found that because "[t]he amended complaint would not rely on a new set of operative facts[, it] would necessarily relate back to the transaction that was the subject of the original complaint."); *In re Universal Factoring Co., Inc.*, 279 B.R. 297, 303, 307 (Bankr. N.D. Okla. 2002) (where, after noting that the inquiry under Rule 15(c) is "whether the opposing party has been put on notice regarding the claim . . . raised by the amended pleading," the court held that the fraudulent transfer claims first asserted in the amended pleading related back to the original pleading where "the allegations contained in the Amended Complaint . . . can be seen as springing from the same underlying pattern of conduct that was alleged in the First Complaint.").

[43] *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 553 (2010) (cleaned up).

nearly four years after the deadline for bringing such claims under § 546 "has no bearing on whether the amended complaint relates back" under Rule 15(c).

Applying the above-described framework for determining whether the Fraudulent Transfer Claims meet the requirements of Rule 15(c) so as to relate back to the original complaint, which was filed before the § 546 deadline for bringing such claims, the court finds that they do "relate back" in this case. The Reorganized Acis alleged in its original complaint a fraudulent scheme by Dondero to systematically strip Acis of valuable assets and even explicitly referred to the transactions as fraudulent transfers, including in the first paragraph of the original complaint:[44]

> In order to ensure that Josh Terry would collect nothing for his hard-fought Arbitration Award of close to $8 million against Acis, James Dondero ("Dondero"), through Highland Capital and many of its affiliates, orchestrated a massive scheme to **_fraudulently transfer_** Acis's assets, including its portfolio management rights that constituted the core of Acis's revenue stream, worth tens of millions of dollars (at a minimum), to the Highlands (defined below).

The Reorganized Acis also repeated the specific phrases "fraudulently transfer" and "fraudulently convey" with respect to transfers identified in the original complaint,[45] which are the same transfers the Reorganized Acis now seeks to avoid in its Live Complaint at Count 5. The Reorganized Acis alleged in the original complaint that Dondero breached his fiduciary duty to Acis GP when he, as President of Acis GP and also President and CEO of Highland, "in coordination with the other Defendants, masterminded and directed numerous actions that were incredibly detrimental and potentially fatal to Acis, while benefitting the Highlands, including the series of **_fraudulent transfers and other fraudulent schemes_** in order to denude Acis of its assets and transfer Acis's valuable business to the Highlands.[46] In connection with the Reorganized

---

[44] Original Complaint ¶ 1.

[45] *See, e.g.,* Original Complaint ¶¶ 26, 32, 73, and 103.

[46] Original Complaint ¶ 126 (emphasis added).

Acis's alter ego claim as to Dondero, which was asserted in Count 3 of the original complaint (and is re-asserted in Count 3 of the Live Complaint), the Reorganized Acis similarly alleged that "Dondero masterminded and directed Highland Capital and its affiliates to commit the series of ***fraudulent transfers and other fraudulent schemes*** in order to denude Acis of its assets and transfer Acis's valuable business to the Highlands."[47]  Moreover, no new transaction or transfer is now alleged to be fraudulent that was not already described in Acis's original complaint.   The court concludes that the Fraudulent Transfer Claims asserted in the Live Complaint, arise out of the same "course of conduct" and fraudulent scheme pleaded in the original complaint.  In addition, Dondero was put on notice of the "course of conduct" that forms the basis of the Fraudulent Transfer Claims by the explicit and numerous references to fraudulent transfers or conveyances and the alleged fraudulent scheme to denude Acis of assets and transfer its valuable business to Highland out of the reach of Terry and by the inclusion of language in the original complaint clearly stating the Reorganized Acis's "intention to avoid and recover all transfers made of an interest of Acis in property, or obligation incurred, to or for the benefit of the Highlands or the Defendants or any other transferee" and reserving the right to amend the original complaint to include, among other "Amendments," "additional causes of action authorized by the Plan, if applicable . . . , that may become known to Acis at any time during this Adversary Proceeding, through formal discovery or otherwise, and which Amendments relate back to this Complaint."[48]  Thus, Dondero's motion to dismiss the Fraudulent Transfer Claims brought pursuant to § 548 as untimely and barred by the § 546 limitations period should be ***denied***.

The Reorganized Acis also seeks to avoid the Transfers under TUFTA and/or DUFTA, in which case the Fraudulent Transfer Claims must have been timely under the applicable limitations

---

[47] Original Complaint ¶ 138 (emphasis added).
[48] Original Complaint ¶ 32.

provisions of each.  TUFTA provides for claims of actual fraudulent transfer under section 24.005(a)(1)[49] and constructive fraudulent transfer under section 24.005(a)(2).[50]  However, section 24.010(a)[51] states a fraudulent transfer claim under TUFTA must be brought within four years of the transfer (or, with actual fraudulent transfers under Section 24.005(a)(1), within one year after the transfer was or could reasonably have been discovered).  If not, the TUFTA claim "is extinguished."  DUFTA is substantively identical to TUFTA in that it provides for claims for actual fraudulent transfer under section 1304(a)(1),[52] claims for constructive fraudulent transfer under section 1304(a)(2),[53] and a four-year deadline from the date of transfer to bring the claim under section 1309(1) and (2),[54] failing which results in the claim being "extinguished."  And like TUFTA, DUFTA section 1309(1) has a one-year discovery rule for transfers actionable under an actual fraudulent transfer theory. TUFTA and DUFTA's limitations provisions have been held to be statutes of repose,[55] which, unlike statutes of limitations, don't just "procedurally bar an untimely claim," but "substantively 'extinguish[ ]' the cause of action."[56]  In other words, "While statutes of limitation are primarily instruments of public policy and of court management, statutes of repose make the filing of suit within a specified time a substantive part of the plaintiff's cause of action"[57] that cannot be over-ridden by a procedural rule such as Rule 15 to save a late-filed

---

[49] Tex. Bus. & Com. Code § 24.005(a)(1).

[50] Tex. Bus. & Com. Code § 24.005(a)(2).

[51] Tex. Bus. & Com. Code § 24.010(a).

[52] 6 Del. C. § 1304(a)(1).

[53] 6 Del. C. § 1304(a)(2).

[54] 6 Del. C. § 1309(1) & (2).

[55] *See Nathan v. Whittington*, 408 S.W.3d 870, 874 (Tex. 2013); *Miller v. Anderson Media Corp. (In re Our Alchemy, LLC)*, 642 B.R. 155, 163 (Bankr. D. Del. 2022).

[56] *Nathan v. Whittington*, 408 S.W.3d at 874; *see also Taylor v. Trevino*, 569 F. Supp. 3d 414, 425 (N.D. Tex. 2021).

[57] *O'Cheskey v. CitiGroup Global Markets, Inc. (In re American Housing Foundation)*, 543 B.R. 245, 255 (Bankr. N.D. Tex. 2015).

and, thus, extinguished claim.[58]  And, statutes of repose are not subject to equitable tolling.[59]
Plaintiffs acknowledged at the Hearing that their state law fraudulent transfer claims under TUFTA
and DUFTA are barred under the respective statutes of repose.  Accordingly, Dondero's motion
to dismiss the Fraudulent Transfer Claims brought pursuant to TUFTA and DUFTA should be
*granted*.

### B.  Has the Reorganized Acis Asserted a Plausible Claim under §§ 548 and 550?

As noted above, in determining whether the Reorganized Acis has stated a plausible claim
for relief so as to avoid dismissal under Rule 12(b)(6), the court must analyze whether the
allegations in the Live Complaint, taken as true and with all reasonable inferences being drawn in
favor of the plaintiff, state a plausible claim for relief under §§ 548 and 550.  Dondero argues that
the Reorganized Acis has failed to state a claim upon which relief can be granted because it has
asserted the Fraudulent Transfer Claims *against a non-transferee* from whom the Reorganized
Acis would not be entitled to recover under Bankruptcy Code § 550.[60]  The Reorganized Acis
counters that it has plausibly alleged that Dondero is an entity from whom they may recover the
Transfers, to the extent that they are avoided, because:  (a) Dondero was an "entity for whose
benefit" the transfers were made and, alternatively, (b) the Highland entities who *were* the initial
transferees of the Transfers[61] were the *alter egos* of Dondero, such that Dondero should be *deemed*
the initial transferee of the transfers.  Dondero counters that that he is neither a transferee nor an
"entity for whose benefit" the Transfers were made, and that, therefore plaintiff is left with its alter

---

[58] *Id.* at 258.

[59] *Trevino*, 569 F. Supp.3d at 425.

[60] Although the Live Complaint does not explicitly reference § 550, the Reorganized Acis clearly seeks recovery under § 550 in seeking to "require Dondero to return the transferred property or pay Acis money damages up to the value of the property transferred." *See* Live Complaint ¶ 145.

[61] Plaintiffs acknowledge and allege that five different corporate "Highland" entities were the recipients of the initial transfers.

ego theory of liability, for which plaintiff has not stated a plausible claim under Delaware veil-piercing and alter ego law.

### 1. Has the Reorganized Acis Pleaded a Plausible Claim That Dondero Is an "Entity For Whose Benefit" the Transfers Were Made Under §§ 548 and 550?

To begin its analysis of whether plaintiff has stated a plausible claim that Dondero is an "entity for whose benefit" the Transfers were made under § 550, the court notes that §§ 548 and 550 are separate and distinct causes of action, with § 548 being the basis for avoidance of an alleged fraudulent transfer and § 550 being the basis for recovery of the property transferred or its value.[62]  Section 550(a) of the Bankruptcy Code[63] provides, in relevant part,

> *[T]o the extent that a transfer is avoided under section . . . 548 . . . of this title*, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
> (1)      the *initial transferee* of such transfer *or the entity for whose benefit such transfer was made*; *or*
>
> (2)      *any immediate or mediate transferee* of such initial transferee.

(emphasis added).  Thus, under § 550, "to the extent that the [T]ransfer[s are] avoided" under § 548, plaintiff can recover from Dondero if he is *either* the "initial transferee" *or* the "entity for whose benefit" the *initial* transfer was made.[64]  "Only a person who receives a benefit from the initial transfer" can be an "entity for whose benefit" the transfer was made; "[s]omeone who receives the money later on is not."[65]  So, "[s]ubsequent transferees cannot be the 'entity for whose

---

[62] *See Southmark Corp. v. Schulte, Roth & Zabel, L.L.P.*, 242 B.R. 330, 337 (N.D. Tex. 1999) ("[Section] 550 stands as a recovery statute rather than a primary avoidance basis for action, and provides an avenue of recovery for the trustee who prevails under an avoidance section of the Code. A trustee's ability to recover is independent from the ability to avoid the transfer.") (citing *Santee v. Northwest Nat'l Bank (In re Mako, Inc.)*, 127 B.R. 471, 473 (Bankr. E.D. Okl. 1991)) (where the *Mako* court described § 550 as being "a secondary cause of action after a properly appointed representative has prevailed pursuant to the avoidance sections of the Code.").

[63] 11 U.S.C. § 550(a).

[64] *See In re The Heritage Org., L.L.C.*, 413 B.R. 438, 495 (Bankr. N.D. Tex. 2009)  (citing *Bonded Fin. Servs., Inc. v. European American Bank*, 838 F.2d 890 (7th Cir.1988)).

[65] *Id.* (quoting *Bonded Fin.*, 838 F.2d at 895-896).

benefit' the initial transfer was made, even if the subsequent transferee actually receives a benefit from the initial transfer."[66]  Moreover, the "entity for whose benefit" the transfer was made and the "initial transferee" are separate parties to a fraudulent transfer and are mutually exclusive.[67]

If an "entity for whose benefit" the transfer was made will never be an initial or subsequent transferee of the transferred asset, just who does qualify as such an entity and what exactly is the nature of the "benefit" that entity must have received?  The classic example of an "entity for whose benefit" a transfer has been made is a guarantor, who was not a direct or subsequent transferee but who nevertheless benefitted from the transfer by being relieved of an obligation:[68]

> When a debtor transfers assets to a creditor to satisfy a guaranteed debt, there are independent benefits: The creditor, as transferee, receives the assets, and the guarantor, as the beneficiary, retains assets that he would otherwise have lost as a result of the debtor's insolvency.  Another creditor might seek to recover either the assets transferred by the debtor or the assets saved by the creditor, or both.  This is because the transferee and beneficiary have independent obligations.

But, who else besides the classic guarantor qualifies as an "entity for whose" benefit a transfer has been made for purposes of recovery under § 550(a)(1)?  The Fifth Circuit and other courts have looked to the legal theory behind the recovery provisions of § 550 (and, in some cases, the recovery provisions in state fraudulent transfer laws), which is disgorgement, for guidance.[69]  The bankruptcy court in *Alta Mesa* noted that "[t]he legal theory supporting the recovery provisions in the Bankruptcy Code and TUFTA is disgorgement," and that the disgorgement concept "requires that an actual, quantifiable benefit is conferred upon a party which must then be disgorged."[70]  Thus, alleging that a transfer was intended to benefit a particular defendant is not enough; after all,

---

[66] *See id.*(citing *In re Consol. Cap. Equities Corp.*, 175 B.R. 629 (Bankr. N.D. Tex. 1994)).

[67] *See id.* (citing *In re Red Dot Scenic, Inc.*, 293 B.R. 116 (S.D.N.Y. 2003).

[68] *See Janvey v. Libyan Inv. Auth.*, 840 F.3d 248, 266 (5th Cir. 2016).

[69] *See, e.g., In re Alta Mesa Res., Inc.*, No. 19-35133, 2023 WL 2359022, at *6 (Bankr. S.D. Tex. Mar. 3, 2023); *Janvey v. Libyan Inv. Auth.*, 840 F.3d 248, 267 (5th Cir. 2016).

[70] *Alta Mesa*, 2023 WL 2359022 at *6 (citing *Baldi v. Lynch (In re McCook Metals, L.L.C.)*, 319 B.R. 570, 591 (Bankr. N.D. Ill. 2005)).

"a defendant cannot be reasonably expected to disgorge beneficial intent."[71] ***Nor is alleging ownership of, or control over, the initial transferee sufficient***.[72] The *Alta Mesa* court relied on the Fifth Circuit's analysis and conclusions in *Janvey v. Libyan Investment Authority*, where the Fifth Circuit held that "shareholders are not liable for transfers made to a corporation unless they actually receive distributions of the transferred property,"[73] and quoted the Fifth Circuit as explaining that any "approach that permits recovery based merely on the intent of the debtor/transferor without any benefit being conferred on the third party results in the harsh outcome that the third party can be liable for the return of an avoidable transfer without having received any benefit, which is generally contrary to the disgorgement remedy of avoidance actions."[74] Thus, "without some theory beyond the mere ownership of an interest in the corporation which actually received a transfer, the owner cannot be automatically assumed to have received a benefit."[75] As noted by the *Alta Mesa* court, the Fifth Circuit "expressly endorsed the logic of *Hansen*," a case where the plaintiff had argued that the defendant could be assumed to have received a benefit from the transfer because he controlled the initial transferee company and where the court held that control of an initial transferee company, alone, is insufficient to make him an "entity for whose benefit" the transfer was made:[76]

---

[71] *Id.*

[72] *Id.* ("The complaint contains a plethora of allegations regarding the defendant's exercise of control over AMH and KFM. But "control" alone is not enough to make a defendant a transfer beneficiary.") (citing *Janvey v. Libyan Inv. Auth.*, 840 F.3d at 266, where the Fifth Circuit expressed approval of the bankruptcy court's statement in *Schechter v. 5841 Building Corp. (In re Hansen)*, 341 B.R. 638, 645 (Bankr. N.D. Ill. 2006) that "if corporate existence is to be observed, transfers cannot be recovered even from a shareholder who by virtue of his majority ownership ostensibly 'controls' the corporation . . . .")).

[73] *Id.* (citing *Janvey v. Libyan Inv. Auth.*, 840 F.3d at 266 (citing *Hansen*, 341 B.R. at 645-646 (Bankr. N.D. Ill. 2006))).

[74] *Id.* (quoting *Janvey v. Libyan Inv. Auth.*, 840 F.3d at 267 (quoting COLLIER ON BANKRUPTCY ¶ 550.02[4])).

[75] *Id.* (citing *Janvey v. Libyan Inv. Auth.*, 840 F.3d at 266).

[76] *Janvey v. Libyan Inv. Auth.*, 840 F.3d at 266 (quoting *Hansen*, 341 B.R. at 645-46) (emphasis added) (cleaned up); *see Alta Mesa*, 2023 WL 2359022, at *6 (where the court noted that the complaint contained "a plethora of allegations regarding the defendant's exercise of control over" the initial transferee companies but that "'control' alone is not enough to make a defendant a transfer beneficiary.") (citing *Janvey v. Libyan Inv. Auth.*, 840 F.3d at 266).

25-10797.90

> Nothing in [§] 550(a)(1) [of the Bankruptcy Code] indicates that corporate form can be thrust aside and all voidable transfers to a corporation recovered from its shareholders on the mere assumption that shareholders somehow automatically "benefit" from such transfers. If corporate existence is to be observed, transfers cannot be recovered even from a shareholder who by virtue of his majority ownership ostensibly "controls" the corporation. Something more than mere status as a shareholder, officer, or director must be shown.
>
> The better view—and the one consistent with corporate law—is that shareholders, officers, and directors are not liable for transfers to their corporation **unless they actually received distributions of the transferred property . . . or a showing can be made to pierce the corporate veil.**

The *Hansen* court had rejected the plaintiff's argument that the individual defendant, Stiefel, who was the president and major shareholder of the company (a company called 5841) to whom the alleged fraudulent transfers had been undisputedly made was the "initial transferee" by virtue of his ownership and management of the company, holding that the plaintiff "would have to adduce evidence that 5841 was actually Stiefel's alter ego, making Stiefel the 'initial transferee' of the payments and noting that "[s]everal courts, including this one, have acknowledged or assumed the viability of such a theory."[77] Thus, courts have recognized that a non-transferee defendant who is not otherwise an "entity for whose benefit" the transfer was made can be liable as an "initial transferee" under an alter ego or veil piercing theory of liability.[78]

The Reorganized Acis's focus primarily on the allegations throughout its Live Complaint that Dondero **received a benefit** from the Transfers because they were part of an alleged fraudulent scheme, allegedly orchestrated by Dondero, for the purpose of denuding Acis of its assets and

---

[77] *See Hansen*, 341 B.R. at 643 (citing several bankruptcy cases, including one out of this bankruptcy court, *Carolyn's Kitchen, Inc. v. Cybergenics Corp. (In re Carolyn's Kitchen, Inc.)*, 209 B.R. 204, 209 (Bankr. N.D. Tex. 1997), where the court assumed the viability of an alter ego theory of liability in the fraudulent transfer context but finding a failure of proof).

[78] *See also Osherow v. Nelson Hensley & Consol. Fund Mgt., L.L.C. (In re Pace)*, 456 B.R. 253, 276-77 (Bankr. W.D. Tex. 2011) (where the bankruptcy court addressed whether the alleged owner of a limited liability company initial transferee of an allegedly fraudulent transfer of a condominium could be liable "as either an 'initial transferee' (under an alter-ego theory of liability) or as 'the entity for whose benefit such transfer was made' under section 550) (citing *Hansen*).

value, which "allowed *him* to avoid paying Josh Terry's $8 million Arbitration Award," citing to paragraph 1 of the Live Complaint.[79]   But, the Reorganized Acis does not allege (as it cannot) that Dondero was personally found liable to Terry in the Arbitration Award in the first instance. As the Reorganized Acis explicitly acknowledges elsewhere in its Live Complaint,[80] Terry's arbitration award was against the Acis Debtors only, and was not against Dondero, personally, or even against any of the Highland entities, who were the actual recipients (initial transferees) of the Transfers, and who were allegedly controlled by Dondero.   The Reorganized Acis argues that it plausibly plead that Dondero is an "entity for whose benefit" the Transfers were made by alleging that Dondero formed and controlled entities to whom, admittedly, the Transfers were made, and that he also controlled the Acis Debtors and caused the Transfers to be made, suggesting that control by a defendant of a transferee and/or transferor, alone, is enough to find defendant liable on a fraudulent transfer claim as an "entity for whose benefit" the transfer was made.   But, as stated above, ***neither intent to benefit nor ownership and/or control*** is sufficient to potentially conclude that Dondero was an "entity for whose benefit" the Transfers were made.   Thus, the court agrees with Dondero that the Reorganized Acis has failed to state a plausible claim that Dondero was an "entity for whose benefit" the Transfers were made, from whom plaintiff could avoid and recover the Transfers, under §§ 548 and 550 of the Bankruptcy Code.

  The Reorganized Acis's argument then, ultimately boils down to whether it has plausibly stated that Dondero should be liable under § 550(a)(1) for the avoidance and recovery of the Transfers, or the value thereof as the "initial transferee," based on an ***alter ego theory of liability***.

---

[79] Supplemental Brief 5 (citing to Live Complaint ¶ 1) (emphasis added).

[80] *See* Live Complaint ¶ 43 ("Terry obtained an arbitration award (the 'Arbitration Award') jointly and severally ***against the Debtors*** in the amount of $7,949,749.15, plus post-award interest at the legal rate.") (emphasis added).

25-10797.92

2.  *Has the Reorganized Acis Stated a Plausible Claim That Dondero Is Liable under §§ 548 and 550 as the Initial Transferee of the Transfers by Virtue of an Alter Ego Theory of Liability?*

Dondero argues that the Reorganized Acis has not stated a plausible claim under Delaware alter ego law because they have not pleaded facts that would satisfy the requirements under Delaware law for holding a person liable for the debts of a corporation under an alter ego theory of liability.  The Reorganized Acis counters that Dondero's suggestion (as interpreted by plaintiff) that it has a burden of *proving* such facts at this stage of the litigation, rather than merely stating a *plausible* claim for relief, is simply wrong and that it has pleaded sufficient facts to state a plausible claim for relief with respect to its alter ego claim against Dondero.

The court does not read Dondero's Motion to Dismiss as suggesting a burden of proof greater than plausibility and agrees with the Reorganized Acis (and Dondero) that the standard at the Rule 12(b)(6) stage of litigation is whether plaintiffs have stated a plausible claim for relief. However, because the court concludes (below) that the Reorganized Acis is barred from stating a claim for relief against Dondero for the avoidance and recovery of the Transfers under an alter ego theory of liability in this Current Acis Action *under principles of res judicata*, the court need not address the parties' competing arguments regarding whether the Reorganized Acis has plausibly pleaded the elements under Delaware alter ego law necessary for holding Dondero liable for the debts of the Highland Entities—the latter of whom were the initial transferees of the Transfers.

As noted above, this Current Acis Action is not the first lawsuit filed by Acis in this court seeking to avoid and recover the Transfers.  As discussed earlier in this Report & Recommendation, long before the filing of this Current Acis Action against Dondero, in 2018, Acis filed the Prior Acis Action, seeking to avoid and recover the Transfers from the Highland

Entities, the initial transferees of the Transfers.  The 100-page second amended complaint therein was based upon the very same allegations that form the basis of this Current Acis Action:  Dondero orchestrated a fraudulent scheme to transfer Acis' assets out of the reach of Terry by using entities he controlled and specifically alleged to be his alter egos—Acis, as transferor, and the Highland Entities, as initial transferees—of the fraudulently conveyed Transfers.  But, Dondero was not named as a defendant from whom Acis sought avoidance and recovery of the Transfers in the Prior Acis Action.  Rather, Acis chose a litigation strategy of pursuing only the Highand Entities in the Prior Acis Action and waiting to seek avoidance and recovery of the allegedly fraudulent Transfers *from Dondero*, personally, until it amended its original complaint in this Current Acis Action with the filing of the Live Complaint on February 2, 2024 – nearly five years after Acis first sought avoidance and recovery of the Transfers in the Prior Acis Action.

Critically, Acis's fraudulent transfer claims against the Highland Entities in the Prior Acis Action were dismissed with prejudice pursuant to two separate stipulated and agreed orders of dismissal – the first in response to Acis's Rule 41 Motion in which it requested that "the Court enter an order dismissing with prejudice all of the claims that were brought, or could have been brought, by and between Acis and Defendants [Highland], [Highland Advisor], [HCLOM], and [Highland Holdings] (collectively the 'Highland Released Parties'), and the second stipulated and agreed dismissal order entered on May 6, 2021, dismissing, with prejudice, Acis's claims, including fraudulent transfer claims, against the remaining Highland Entity defendant, Highland Funding, based on the parties having reached a settlement of the litigation (collectively, the "Dismissals with Prejudice").

In comparing the allegations contained in the Prior Acis Action to the allegations contained in this Current Acis Action, the court gets the distinct feeling that this Current Acis Action is, in

the words of Yogi Berra, "déjà vu all over again," which leads it, in turn, to ask the question:  Did the Dismissals with Prejudice of Acis's fraudulent transfer claims, in the Prior Acis Action, against the Highland Entities who were the alleged alter egos of Dondero, essentially preclude Acis from later seeking avoidance and recovery of the Transfers from Dondero, personally, in this Current Acis Action under Acis's alter ego theory of liability?   In other words, are the Reorganized Acis's fraudulent transfer claims against Dondero (asserted in Count 5 of the Live Complaint) based on the alter ego doctrine (asserted in Count 3 of the Live Complaint) barred under the claim preclusion doctrine of res judicata based on the Dismissals with Prejudice entered in the Prior Acis Action? Does the derivative nature of the alter ego/piercing the corporate veil theory of liability[81] that is invoked by the Reorganize Acis here influence this analysis?

  a)  *The Res Judicata Test*

    While "res judicata encompasses two separate but linked preclusive doctrines" of claim preclusion and issue preclusion (or collateral estoppel), "true" res judicata is a claim preclusion doctrine[82] under which "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."[83]  That is what is at play here.  Although res judicata must generally be pled as an affirmative defense under Federal Rule of Civil Procedure 8(c), "Dismissal under Rule 12(b)(6) is appropriate if the res judicata bar is apparent from the pleadings and judicially noticed facts."[84] The court recognizes

---

[81] *See Trs. of Nat'l Elevator Indus. Pension, Health Benefit & Educational Funds v. Lutyk*, 332 F.3d 188, 192 ("If applicable, the [alter ego] doctrine permits a charge of derivative liability against the person or entity controlling the corporation.") (cleaned up); *Blair v. Infineon Techs. AG*, 720 F. Supp. 462, 469 (D. Del. 2010) ("The alter ego doctrine for piercing the corporate veil allows ***derivative*** liability to be placed upon a corporation's individuals.") (emphasis added).

[82] *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).

[83] *Ries v. Paige (In re Paige)*, 610 F.3d 865, 870 n.1 (5th Cir. 2010) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)); *see also Test Masters*, 428 F.3d at 571 (citing *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004) (quoting *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999)).

[84] *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 591 (2020) (cleaned up).

39

that Dondero did not raise res judicata as a basis for dismissal in his Motion to Dismiss and has

not filed his answer to the Live Complaint, having first filed the Motion to Dismiss,[85] but notes

that the court may raise res judicata *sua sponte* as a basis for dismissal under Rule 12(b)(6) where

either both actions were brought before the same court or "where all of the relevant facts are

contained in the record . . . and all are uncontroverted." *McIntyre v. Ben E. Keith Co.*, 754 F. App'x

262, 264-65 (5th Cir. 2018).  Here, the Prior Acis Action and the Current Acis Action were both

brought in this court.  In addition, as discussed in greater detail below, the facts alleged in the Prior

Acis Action are nearly identical to the facts alleged in this Current Acis Action.  Because the Prior

Acis Action and this Current Acis Action were both filed in federal bankruptcy court as adversary

proceedings,[86] the court applies federal common law in determining the res judicata effect of the

final judgments entered in the Prior Acis Action on Acis's claims against Dondero in this Current

Acis Action.[87]

    The test for res judicata or claim preclusion has four elements:  "(1) The parties are identical

or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction;

(3) the prior action was concluded to a final judgment on the merits; and (4) the same claim or

cause of action was involved in both actions."[88]  It is not in disputed that this court had jurisdiction

---

[85] Dondero has not filed his answer to the Live Complaint and so has not pled any of his affirmative defenses to the
Live Complaint, but he did file an Answer to the original complaint and specifically pled res judicata as an affirmative
defense to the original complaint, which, as noted above, did not include a cause of action for avoidance and recovery
of the Transfers pursuant to §§ 548 and 550. *See Defendant James Dondero's Original Answer to Original Complaint*
¶ 197, Dkt. No. 19.

[86] *Ries v. Paige (In re Paige)*, 610 F.3d 865, 870 n.1 (5th Cir. 2010) ("Res judicata applies with equal force in the
bankruptcy context.") (citation omitted).

[87] *Paige*, 610 F.3d at 870 n.2 (5th Cir. 2010) ("In the absence of a federal governing statute or rule, the res judicata
effect of a federal judgment, such as those asserted here, is determined by federal common law.") (quoting *In re Ark-
La-Tex Timber Co.*, 482 F.3d 319, 330 n.12 (5th Cir. 2007)) (citing *Semtek Int'l, Inc. v. Lockheed Martin Corp.,* 531
U.S. 497, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001)).

[88] *Test Masters*, 428 F.3d at 571 (citation omitted).

25-10797.96

to enter the Dismissals with Prejudice in the Prior Acis Action, so the court will address the other three prongs of the res judicata test.

     b) *Are the Reorganized Acis's Alter Ego and Fraudulent Transfer Claims Against Dondero Barred by Res Judicata?*

    i. *Are the parties identical or in privity with each other?*

Dondero is a separate juridical entity from the Highland Entities, so in order for the Reorganized Acis to reach Dondero, personally, for the avoidance and recovery of the Transfers, it has to rely on its alter ego theory of liability: that the Highland Entities, who were the initial transferees of the Transfers, were controlled by Dondero and were his alter egos and, therefore, Dondero should be liable to plaintiff on its fraudulent transfer cause of action as if he were the initial transferee of the Transfers. Acis pleaded in both the Prior Acis Action and in this Current Acis Action that Dondero was the mastermind behind his alleged fraudulent scheme to use the Highland Entities to fraudulently transfer Acis' assets and business value out of the reach of Terry.[89] In Count 32 of the second amended complaint in the Prior Acis Action (against the

---

[89] Paragraph 1 of the Live Complaint in this Current Acis Action is a virtually identical to, and a cut-and-paste of, paragraph 1 of the second amended complaint in the Prior Acis Action, and both allege that Dondero orchestrated the alleged scheme to fraudulently transfer Acis' assets. *See* Second Amended Complaint (Prior Acis Action) ¶ 1:

> The Court is all-too familiar with the background here. In order to ensure that Josh Terry would collect nothing for his hard-fought Arbitration Award of close to $8 million against Acis, James Dondero ("Dondero"), through Highland Capital and many of its affiliates, orchestrated a massive scheme to fraudulently transfer Acis's assets, including its portfolio management rights that constituted the core of Acis's revenue stream, worth tens of millions of dollars (at a minimum), to the Highlands (defined below).

Live Complaint (the Current Acis Action) ¶ 1:

> The Court is all-too familiar with the facts of this case. In order to ensure that Josh Terry would collect nothing from Acis for his hard-fought Arbitration Award of nearly $8 million, James Dondero, through Highland Capital Management, L.P. ("Highland Capital" or "Highland") and many of its affiliates, orchestrated a massive scheme to fraudulently transfer Acis's assets— including its portfolio management rights that constituted the core of Acis's revenue stream, worth tens of millions of dollars—to a family of businesses that Dondero controlled (the "Highlands").

Highland Entities), Acis alleged that the Highland Entities as "alter egos" of Dondero, as the

control person, were also alter egos of each other:[90]

> ***Highland Capital, Highland Funding, Highland Adviser, Highland Management, and Highland Holdings (the "Alter Egos") are all controlled by the CEO and ultimate majority owner of Highland Capital, Dondero.*** Each of the Alter Egos should be held liable for any damages awarded under any Count in this Second Amended Complaint, as each is the alter ego of the others. Further, each of the Alter Egos should be held liable for any debts of the Debtors, as they are also the alter ego of the Debtors.

Acis has have clearly alleged in this Current Acis Action, via its alter ego "claim" asserted in Count

3 and as its theory of liability in its fraudulent transfer causes of action in Count 5,[91] that the

Highland Entities are alter egos of Dondero under the same alter ego theory alleged in the Prior

Acis Action: as the CEO and ultimate majority owner of Highland, Dondero controlled his alleged

alter ego, Highland, and Highland, in turn, controlled the other Highland Entities, and, therefore,

all of the Highland Entities were the alter egos of Dondero.[92]

In the Fifth Circuit case of *Flores v. Bodden*, an individual defendant named Bodden, had

been the alleged control person of a corporation (RJMW), which was also alleged to have been his

alter ego. A judgment had been rendered against RJMW in a prior action and then RJMW later

filed for bankruptcy protection). Boden then was named as a defendant in an action, with an

---

[90] Second Amended Complaint ¶ 275 (emphasis added).

[91] Plaintiffs' counsel argued that they are asserting the alter ego theory of liability, not as a separate and independent claim, but as a remedy and means of avoiding and recovering the Transfers from Dondero under §§ 548 and 550, as asserted in Count 5 of the Amended Complaint. *See* Hr'g Trans. 42:12-18 ("I'm making the argument about veil piercing as it relates to the subsequent transferee argument that Mr. Dondero ultimately was a transferee of these fraudulently-transferred assets because they went to entities that he completely controlled such that they were mere instrumentalities of his and many of which we allege were created specifically to hold fraudulently-transferred assets."); Hr'g Trans. 44:1-7, 20-23 (where counsel confirmed that their "theory of the case" was that "even though [Dondero] wasn't, at least as to the fraudulent transfer, even though he might not have been a direct transferee, he's the alter ego of these transferees under 550" and that "the only context where alter ego's viability matters [is] in the fraudulent-transfer claims.").

[92] Plaintiffs' counsel argued at the Hearing that "our complaint and our first amended complaint are shot through with allegations of facts that support our claim that the [Highland Entities] . . . are all mere instrumentalities of Mr. Dondero [a]nd that is what we need to allege in order to pierce the corporate veil in Delaware." Hr'g Trans. 35:5-10.

argument being made that he was in privity with the alter ego corporation for res judicata purposes:[93]

> Bodden appears to argue that because neither he nor his current counsel participated in the proceedings against RJMW [the alleged alter ego], the res judicata requirement of identical parties is not met. For res judicata to bar the relitigation of a claim, four requirements must be met: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions. Bodden contests only the first requirement, but his argument is unpersuasive. The entire purpose of the alter ego theory of liability would be undermined if the alter ego of a corporation could force parties to relitigate otherwise precluded claims against the corporation.

The *Flores* court cited other circuit court cases in support of its conclusion that the purpose of the alter ego theory of liability would be undermined if an alleged control person would not be considered in privity with his alter ego entity for claims preclusion purposes, including a Tenth Circuit case in which the court "h[eld] that an adverse party's own allegations of a controlling, 'near alter ego' relationship between parent and subsidiary were sufficient to establish privity between the two corporations for the purposes of claim preclusion."[94]  If a plaintiff's allegations of a "controlling, 'near alter ego'" relationship between a parent and its subsidiary is sufficient to establish privity between them for res judicata purposes, then, *a fortiori*, the Reorganized Acis's allegations of a controlling, actual alter ego relationship between Dondero and the Highland Entities suffices to establish privity between them.  The Fifth Circuit's unpublished opinion in *Flores* is consistent with its 1974 holding in *Dudley v. Smith*[95] that a shareholder was in privity with his alter ego corporation against whom a prior judgment had been entered in favor of the plaintiff:  "Generally speaking, a final judgment is res judicata only between parties to the lawsuit

---

[93] *Flores v. Bodden*, 488 Fed. Appx. 770, 779 (5th Cir. 2012) (cleaned up).

[94] *Id.* (citing *Robinson v. Volkswagenwerk AG*, 56 F.3d 1268, 1275 (10th Cir.1995).

[95] 504 F.2d 979 (5th Cir. 1974).

25-10797.99

and their privies. Stockholders and officers are not in privity to and are not personally bound by judgments against their corporations. A stockholder may be in privity with his corporation, however, such that a judgment against the latter is res judicata as to the former, if the two are found to be alter egos."[96]

So, while the parties are not identical, here, as the alleged alter egos of Dondero, the Highland Entities and Dondero are certainly in privity with each other for claim preclusion purposes.[97]

ii.   *Did the Dismissals with Prejudice constitute "final judgments on the merits"?*

The Dismissals with Prejudice in the Prior Acis Action were entered with the consent of all parties, and each called for the dismissal with prejudice of "[a]ll of [the][98] claims that were brought, or could have been brought," by and between Acis and the four Highland Entities (defined as the "Highland Released Parties" in the First Dismissal with Prejudice, entered in November 2020), and by and between Acis and Highland Funding in the Second Dismissal with Prejudice (entered in May 2021).[99]   The Fifth Circuit has held that a consent judgment entered by a bankruptcy court that approved a settlement agreement between the chapter 7 trustee and the IRS constituted a "final judgment" for claim preclusion purposes, stating, "[T]his court has long recognized that a consent judgment is a judgment on the merits, and is normally 'given the finality

---

[96] *Id.* at 982. The Fifth Circuit cited *Shamrock Oil and Gas Co. v. Ethridge*, 159 F. Supp. 693, 697 (D. Colo. 1958), where the court stated, "The effect of applying the alter ego doctrine . . . is that the corporation and the person who dominates it are treated as one person, so that any act committed by one is attributed to both, and if either is bound, by contract, judgment, or otherwise, both are equally bound . . . ." *Id.*; *see also West Coast Distributing, Inc. v. Pearce*, Civ. Action No. 3:07-cv-1869-O, 2010 WL 145283, at *5 n.1 (N.D. Tex. 2010) (citing *Dudley*, 504 F.2d at 982-83).

[97] While the cited cases on the privity issue deal with the application of res judicata principles to bind an alleged control person to a prior judgment of liability entered against his alleged alter ego entity on the basis of privity between the parties, the court does not see any reasoned basis to conclude that Dondero is not in privity with the alleged alter ego Highland Entities, for res judicata purposes, where there is a judgment of *no* liability against the Highland Entities as to the avoidance and recovery of the Transfers under §§ 548 and 550 in the Prior Acis Action, assuming the other elements of the res judicata test are met.

[98] The First Dismissal with Prejudice, apparently inadvertently, omitted this word.

[99] First Dismissal with Prejudice ¶ 2 and Second Dismissal with Prejudice ¶ 2.

accorded under the rules of claim preclusion.'"[100]  The Fifth Circuit—in noting that both parties had filed stipulations of dismissal with prejudice, as part of the settlement, and that the bankruptcy court had incorporated those stipulations as part of the settlement agreement it approved—held that the bankruptcy court's order that approved the settlement and incorporated the parties' stipulations of dismissal with prejudice barred the government from bringing its claims for recovery of mistaken overpayments.[101]  In reaching its holding, the Fifth Circuit relied on its holding in *Kaspar*, where it held that "***[i]t is clear that a stipulation of dismissal with prejudice, or, for that matter, a dismissal with prejudice at any stage of a judicial proceeding, normally constitutes a final judgment on the merits*** which bars a later suit on the same cause of action.'"[102] The Fifth Circuit emphasized that it was the stipulations of dismissal with prejudice that ended the adversary proceeding with finality.  Thus, the fact that the bankruptcy court had not issued "any order that was specifically labeled 'final judgment' and that Federal Rule of Civil Procedure 58 requires that a final judgment be set forth on a separate document and be entered by a clerk of court" was "irrelevant to the question of the finality of the judgment."[103]

This bankruptcy court concludes that the Dismissals with Prejudice entered in the Prior Acis Action constitute final judgments on the merits for res judicata purposes.

   *iii.    Was the same claim or cause of action involved in both actions?*

---

[100] *United States v. Kellogg (In re West Texas Mktg. Corp.)*, 12 F.3d 497, 501 (5th Cir. 1994) (quoting *Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992) (citing *Kaspar Wire Works, Inc. v. Leco Eng'g and Mach. Inc.*, 575 F.2d 530, 538 (5th Cir. 1978)).

[101] *In re West Texas Mktg.*, 12 F.3d at 501.

[102] *Id.* (citation omitted).  The court noted that "the Supreme Court has concluded that an order combining an opinion and a ruling on a motion to dismiss generally satisfied the separate document requirement of Rule 58." *Id.* at 501 n.2 (quoting *InterFirst Bank Dallas, N.A. v. F.D.I.C.*, 808 F.2d 1105, 1108 (5th Cir. 1987) and citing *Ellison v. Conoco Inc.*, 950 F.2d 1196 (5th Cir. 1992)).

[103] *Id.*

The last and final element of the res judicata test is whether the two actions involve the same claim or cause of action. In making this determination, the Fifth Circuit applies a transactional test under which "a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose."[104] "What grouping of facts constitutes a 'transaction' or a 'series of transactions' must be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."[105] The Fifth Circuit has stated that "[t]he critical issue is whether the two actions are based on the 'same nucleus of operative facts.'"[106]

In the Prior Acis Action, Acis sought avoidance under § 548 of the allegedly fraudulent Transfers and recovery of the Transfers or the value thereof from the Highland Entities as initial transferees under § 550. In this Current Acis Action, the Reorganized Acis now seeks a judgment against Dondero, avoiding the same Transfers and recovering from Dondero the same Transfers or the value thereof—only, in this action, Acis seeks avoidance and recovery against Dondero under an alter ego theory of liability—in his capacity as the control person of the Highland Entities/initial transferees alleged to be his alter egos. A comparison of the factual allegations in this Current Acis Action with the factual allegations in the Prior Acis Action reveals that they are virtually identical, with only minor variations in the wording from complaint to complaint. The factual allegations that support Acis's theory of avoidance and recovery of the Transfers in both actions are essentially the same: that Dondero orchestrated the fraudulent scheme to transfer Acis'

---

[104] *Test Masters*, 428 F.3d at 571 (cleaned up).

[105] *Id.* (cleaned up).

[106] *Id.* (cleaned up).

assets and business value to the Highland Entities – entities alleged to be the alter egos of Dondero –to ensure that Terry would collect nothing from Acis for an Arbitration Award of nearly $8 million.  The two actions here are clearly based on the "same nucleus of operative facts."  Acis's fraudulent transfer claims for avoidance and recovery of the Transfers under §§ 548 and 550 against Dondero in Count 5 of the Live Complaint (with Acis's alter ego "claims" asserted in Count 3 of the Live Complaint) arise out of the same transaction or series of transactions which Acis's claims against the Highland Entities in the Prior Acis Action arose.  Thus, the last element of the res judicata test has been satisfied.

## VI.     SUMMARY, CONCLUSION, AND RECOMMENDATION TO THE DISTRICT COURT

To summarize, all four elements of the res judicata test apply here:  the Dismissals with Prejudice in the Prior Acis Action as to Acis's' fraudulent transfer claims asserted therein:  (1) involved the Highland Entities, alleged to be the alter egos of Dondero, with whom Dondero is in privity;[107] (2) were entered by this court (a court of competent jurisdiction); (3) constituted final judgments on the merits as to Acis's claims seeking to avoid the Transfers under § 548 and to recover the Transfers or the value thereof under § 550; and (4) involved the same claims or causes of action as those asserted against Dondero in Counts 3 and 5 of the Live Complaint in this Current Acis Action.  The claims against Dondero for avoidance and recovery of the Transfers based on an alter ego theory of liability could have been brought against him in the Prior Acis Action; Acis chose, for whatever strategic decision known only to it, not to do so.  Instead, Acis filed its Live Complaint in this Current Acis Action to assert those claims against Dondero over three years after

---

[107] Dondero argues that Acis has not pled sufficient facts to state a plausible claim under Delaware law that the Highland Entities are alter egos of Dondero, but that is an issue the court need not, and does not, decide here.  Acis's allegations of an alter ego relationship between Dondero and the Highland Entities are sufficient to find "privity" for res judicata purposes.

25-10797.103

the First Dismissal with Prejudice (against four of the alleged alter ego Highland Entities) had been entered and over two and a half years after the Second Dismissal with Prejudice (against Highland Funding) had been entered.  As the Second Circuit recently stated, "Litigation strategy to not bring claims which [plaintiff] . . . could have brought does not bar the application of *res judicata*; indeed, 'strategic' choices to split claims that could be brought in the same case is what the *res judicata* principle seeks to prevent."[108]  Thus, the court concludes, based on the face of the Live Complaint, that Acis cannot and does not state plausible claims against Dondero in Count 3 (alter ego) and Count 5 (avoidance and recovery of the Transfers under §§ 548 and 550) because Acis is barred from bringing such claims under the principles of res judicata (or claim preclusion).

Accordingly, the bankruptcy court recommends to the District Court that it grant the Motion to Dismiss as to Counts 3 and 5 of the Live Complaint under Rule 12(b)(6), for failure to state a claim upon which relief can be granted, on the basis that such claims and causes of action are barred under the principles of res judicata (or claim preclusion) by virtue of the Dismissals with Prejudice entered in the Prior Acis Action.[109]

#### #### END OF REPORT AND RECOMMENDATION ####

---

[108] *Universitas Educ., LLC v. Benistar Admin Servs., Inc.*, No. 23-1207, 2024 WL 1787754 *3 (2nd Cir. Apr. 25, 2024).

[109] The bankruptcy court has significant concerns that the other counts against Dondero in the Live Complaint may also be barred under the principles of res judicata.  While the court feels comfortable raising the res judicata issue *sua sponte* with respect to Dondero's Motion to Dismiss Counts 3 and 5 of the Live Complaint, it will not, on its own, raise the issue with respect to the counts in the Live Complaint that are not the subject of the Motion to Dismiss.