# No. 25-10797

In the
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

In the Matter of Acis Capital Management, L.P.;
Acis Capital Management GP, L.L.C.,

*Debtors*

Acis Capital Management, L.P.; Acis Capital Management GP, L.L.C.,

*Appellants*

v.

James Dondero,

*Appellee*

**On Appeal from the U.S. District Court for the Northern District of Texas, Dallas Division**
**No. 3:24-cv-02036:N**

# APPELLEE'S BRIEF

By: */s/ Michael Lang*
**Michael Lang**
Texas Bar No. 24036944
mlang@cwl.law
**Dave Wishnew**
Texas Bar No. 24052039
dwishnew@cwl.law
**Haleigh Jones**
Texas Bar No. 24097899
hjones@cwl.law

**Alexandra Ohlinger**
Texas Bar No. 24091423
aohlinger@cwl.law
**Dallas Flick**
Texas Bar No. 24104675
dflick@cwl.law
**CRAWFORD, WISHNEW & LANG PLLC**
1700 Pacific Avenue, Suite 2390
Dallas, TX 75201
(T) (214) 817-4500

# Table of Contents

Table of Contents..................................................................................... i

Table of Authorities............................................................................... iii

Rule 28.2.1 Certificate of Interested Persons ..................................... vii

Rule 26.1 Corporate Disclosure Statement........................................ viii

Statement of the Issues Presented &  Applicable Standard of Review...............2

Summary of the Argument........................................................................3

Statement of the Case ..............................................................................7

   A.    Highland Capital and Acis....................................................................7

   B.    Terry's Involuntary Bankruptcy Proceeding Against Acis ...................8

   C.    The Adversary Actions.......................................................................9

     (1)    The Prior Acis Action ...............................................................9

     (2)    The Current Acis Action .........................................................13

     (3)    Acis' Dismissal of the Prior Acis Action with Prejudice.......................14

     (4)    The First Amended Complaint in the Current Acis Action ....................16

     (5)    The Court's Dismissal of the Fraudulent Transfer Claims in the Current Acis Action Pursuant to Rule 12(b)(6).............................................17

     (6)    The District Court's Adoption of the First R&R ...................................18

     (7)    The Bankruptcy Court's Ruling that Res Judicata Bars Acis's Remaining Claims..............................................................................20

     (8)    The District Court's Adoption of the Second R&R...............................20

     (9)    This Appeal .............................................................................21

Argument & Authorities.........................................................................23

   A.    Legal Standard ..................................................................................23

     (1)    Dismissal Under Rules 12(b) and 12(c) ................................23

     (2)    Dismissal under Fed. R. Civ. P. 56 .......................................24

   B.    Res Judicata .....................................................................................24

**C.**   **The Existence of Privity** ..........................................................**25**

(1)   Acis Judicially Admits that Dondero and the Highland Entities are in Privity. ............................................................................................27

(2)   Privity is Not Limited to Three Narrow Grounds..................................29

(3)   The Restatement does not restrict the application of res judicata. .........33

(4)   Dondero and the Highland Entities were Aligned in the Prior Acis Action. .....................................................................................................35

(5)   The District Court's holding does not create new law...........................39

**Conclusion and Prayer** .......................................................................**41**

# Table of Authorities

## Cases

*Acis Cap. Mgmt. LP v. Simek*, No. AP 20-3059, 2025 WL 1199386 (N.D. Tex. Apr. 24, 2025) ................................................................................................9

*Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9 (1st Cir.2010) ..............................32

*Askanase v. Livingwell, Inc.*, 981 F.2d 807 (5th Cir. 1993) ....................................38

*Bakov v. Consol. Travel Holdings Grp., Inc.*, No. 019CV61509WPDSNOW, 2020 WL 9934410 (S.D. Fla. Apr. 9, 2020) ..................................................................28

*Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585 (5th Cir. 2020)......24

*Benson and Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172 (5th Cir.1987) .....30

*Boyte v. Lionhead Holdings*, No. 3:10-CV-1467-D, 2012 WL 2680022 (N.D. Tex. July 6, 2012) (Fitzwater J.)..................................................................................27

*Brooks v. Raymond Dugat Co. L C*, 336 F.3d 360 (5th Cir. 2003) ..........................34

*Cahill v. Arthur Andersen & Co.*, 659 F. Supp. 1115 (S.D.N.Y.1986), aff'd, 822 F.2d 14 (2d Cir.1987)..............................................................................................32

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ......................................................24

*Chavers v. Hall*, 2011 WL 2457943 (S.D. Tex. June 16, 2011)....................... 32, 33

*Clark v. Amoco Prod. Co.*, 794 F.2d 967 (5th Cir.1986).........................................24

*Clyce v. Farley*, 836 F. App'x 262 (5th Cir. 2020)..................................................35

*Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105 (5th Cir. 1987).......................28

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190 (2d Cir. 2010) ..............................................................................................................................25

*Dudley v. Smith*, 504 F.2d 979 (5th Cir. 1974)................................................. 19, 29

*Ellis v. Amex Life Ins. Co.*, 211 F.3d 935 (5th Cir.2000) .......................................25

*Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278 (5th Cir.1993).................34

*Flores v. Bodden*, 488 F. App'x 770 (5th Cir. 2012)....................................... passim

*Glatzer v. Skilling*, No. 4:16-CV-1449, 2017 WL 1487675 (S.D. Tex. Feb. 23, 2017) .................................................................................................... 32, 33

*Gulf Island-IV, Inc. v. Blue Streak-Gulf Is Ops*, 24 F.3d 743 (5th Cir. 1994) ..........36

*Hammervold v. Blank,* No. 4:20-CV-165, 2020 WL 4535914 (E.D. Tex. Aug. 6, 2020), rev'd and remanded, 3 F.4th 803 (5th Cir. 2021).............................. 32, 33

*Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74 (5th Cir.1990) (per curiam)..................................................................................................................24

*Howell v. Hydrocarbons, Inc. v. Adams*, 897 F.2d 183 (5th Cir. 1990) ....................30

*IMP Int'l v. Zibo Zhongshi Green Biotech Co.*, No. EDCV 14-1339 JGB (DTBx), 2015 WL 13357602 (C.D. Cal. Mar. 20, 2015)....................................................32

*In re Acis Cap. Mgmt., L.P.*, 584 B.R. 115 (Bankr. N.D. Tex. 2018) ........................7

*In re Acis Cap. Mgmt., L.P.*, 604 B.R. 484 (N.D. Tex. 2019), aff'd sub nom. Matter of Acis Cap. Mgmt., L.P., 850 F. App'x 302 (5th Cir. 2021) ................................7

*In re Acis Cap. Mgmt., L.P.*, No. 18-30264-SGJ-11, 2024 WL 4500804 (Bankr. N.D. Tex. Oct. 15, 2024), report and recommendation adopted sub nom. *In re Acis Cap. Mgmt. LP*, No. 3:24-CV-02036-N, 2025 WL 565676 (N.D. Tex. Jan. 6, 2025) .................................................................................................................11

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007)....................2, 23

*In re Testmasters Trademark Litig.*, No. 4:04-MD-1646, 2006 WL 8445513 (S.D. Tex. Sept. 28, 2006), aff'd sub nom. *Robin Singh Educ. Servs. Inc. v. Excel Test Prep Inc.*, 274 F. App'x 399 (5th Cir. 2008)......................................26, 31, 32, 33

*In re W. Tex. Mktg. Corp.*, 12 F.3d 497 (5th Cir.1994) .............................................34

*In re Waggoner Cattle, LLC*, No. 18-20126-RLJ-11, 2022 WL 5264707 (Bankr. N.D. Tex. Apr. 28, 2022) ...........................................................................................23

*Kahn v. Ripley*, 772 F. App'x 141 (5th Cir. 2019) (per curiam) ..............................24

*Kaspar Wire Works, Inc. v. Leco Engineering and Mach. Inc.*, 575 F.2d 530 (5th Cir.1978).....................................................................................................................34

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221 (10th Cir. 2017) ...................................................................................................................................27

*Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279 (5th Cir. 1989) ........................ passim

*Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616 (Fed. Cir. 1995) 26, 31

*Meza v. General Battery Corp.*, 908 F.2d 1262 (5th Cir. 1990)................. 3, 4, 26, 29

*Mohamed v. Univ. of Texas Sw. Med. Ctr.*, No. 3:23-CV-2705-G-BN, 2024 WL 3862800 (N.D. Tex. May 23, 2024), report and recommendation adopted sub nom. *Mohamed v. Univ. of Texas Sw. Med. Ctr.*, No. 3:23-CV-2705-G-BN, 2024 WL 3869430 (N.D. Tex. Aug. 19, 2024)...................................................... 23, 24

*New York Life Ins. Co. v. Deshotel,* 946 F. Supp. 454 (E.D. La. 1996), aff'd, 142 F.3d 873 (5th Cir. 1998).......................................................................................30

*Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398 (5th Cir. 2009) ............... 19, 34, 40

*Oyekwe v. Research Now Grp., Inc.*, 542 F.Supp.3d 496 (N.D. Tex 2021) . 4, 31, 32, 33

*Petro-Hunt, L.L.C. v. United States,* 365 F.3d 385, 395 (5th Cir. 2004)..................25

*R.G. Fin. Corp. v. Vergara–Nunez*, 446 F.3d 178 (1st Cir. 2006)............................27

*Reneker v. Offill*, No. 3:08-CV-1394-D, 2012 WL 2158733 (N.D. Tex. June 14, 2012) (Fitzwater, J.)...................................................................................... 27, 39

*Robin Singh Educ. Servs. Inc. v. Excel Test Prep Inc.*, 274 Fed. Appx. 399 (5th Cir.2008) (per curiam) .................................................................... 27, 39

*Robinson v. Volkswagenwerk AG,* 56 F.3d 1268 (10th Cir.1995) ........... 5, 19, 28, 31

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 800 F. Supp. 2d 182 (D.D.C. 2011), aff'd, 682 F.3d 1043 (D.C. Cir. 2012)..................................32

*Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169 (5th 1992)............................ passim

*Sacks v. Tex. S. Univ.*, 83 F.4th 340 (5th Cir. 2023)................................... 24, 32, 33

*Seven Networks*, 2022 WL 426589 (N.D. Tex. 2022)................................. 19, 34, 40

*Sivertson v. Clinton*, 2011 WL 4100958 (N.D.Tex. Sept.14, 2011) (Fitzwater, C.J.) ............................................................................................................................24

*Sw. Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84 (5th Cir. 1977). 4, 27, 30, 31

*Taylor v. Sturgell*, 553 U.S. 880 (2008) ...................................................... 4, 26, 29

*Torain v. AT&T Mgmt. Servs. LP,* 353 Fed. Appx. 37 (7th Cir.2009).....................27

*Universitas Educ., LLC v. Benistar Admin Servs., Inc.*, No. 23-1207, 2024 WL 1787754 (2d Cir. Apr. 25, 2024)................................................................ 25, 27

*Vines v. Univ. of Louisiana at Monroe*, 398 F.3d 700 (5th Cir. 2005) ........ 24, 25, 34

*W. Coast Distrib., Inc. v. Pearce*, No. 3:07-CV-1869-O, 2010 WL 145283 (N.D. Tex. Jan. 14, 2010)..............................................................................................4, 31

*Waller v. Hanlon*, 922 F.3d 590 (5th Cir. 2019)......................................................23

*Welsh v. Correct Care, LLC*, No. 5:17-CV-095-BQ, 2020 WL 854244 (N.D. Tex. Jan. 30, 2020), report and recommendation adopted, No. 5:17-CV-095-C, 2020 WL 836835 (N.D. Tex. Feb. 20, 2020), aff'd sub nom. *Welsh v. McLane*, No. 20-10412, 2021 WL 5313626 (5th Cir. Nov. 15, 2021)................................... passim

*White v. Padgett*, 475 F.2d 79 (5th Cir.1973)..........................................................24

*Zahra Spiritual Tr. v. United States*, 910 F.2d 240 (5th Cir. 1990).....................5, 27

## Other Authorities

18A Wright & Miller..................................................................................................26

5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1367, at 509–10 (1990)...............................................................................................24

Allan D. Vestal, Preclusion/Res Judicata Variables: Parties, 50 Iowa L. Rev. 27 (1964)..................................................................................................27

**Rules**

FED. R. CIV. P. 56(c) ...............................................................................24

FED. R. CIV. P. 7.1 ................................................................................ viii

# Rule 28.2.1 Certificate of Interested Persons

*Case No. 25-10797*

*Acis Capital Management, L.P.; Acis Capital Management GP, L.L.C. v. James Dondero*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellants: | Counsel for Appellants: |
|---|---|
| Acis Capital Management, L.P.<br>Acis Capital Management GP, LLC | Emily Merritt Adler<br>AHMAD, ZAVITSANOS & MENSING PLLC<br>Houston, Texas |

| Appellee: | Counsel for Appellee: |
|---|---|
| James Dondero | Michael Lang<br>Dave Wishnew<br>Alexandra Ohlinger<br>Haleigh Jones<br>Dallas Flick<br>CRAWFORD WISHNEW & LANG, PLLC<br>Dallas, Texas |

## Rule 26.1 Corporate Disclosure Statement

Because Appellee is an individual, Federal Rule of Civil Procedure 7.1(a) does not apply to him. *See* FED. R. CIV. P. 7.1.

## Statement Regarding Oral Argument

Appellee does not believe that Oral Argument is necessary in this case and believes that the District Court's Orders can be affirmed on the briefing alone. However, to the extent the Court would find Oral Argument helpful or it grants Appellant's request for Oral Argument, Appellee requests the right to participate in same. Thus, Appellee conditionally requests Oral Argument in this matter.

## Statement of the Issues Presented &
## Applicable Standard of Review

1.  Did the District Court err in finding privity between Appellee and the Highland Entities and dismissing Acis's claims against Appellee under Fed. R. Civ. P. 12(c) and Fed. R. Civ. P. 56 on the basis of res judicata when Acis asserted that Appellee and the Highland Entities are alter egos?

    **Answer:** No.

    **Standard of Review**: The Court reviews the district court's decision on a Rule 12 (b)(6) and 12(c) motion for judgment on the pleadings de novo.[1]

---

[1] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

## Summary of the Argument

1.     Acis does not challenge the findings that the Dismissals with Prejudice are final judgment on the merits, that they were issued by a court of competent jurisdiction, or that the Prior Acis Action and the Current Acis Action involved the same claims and causes of action. Instead, Acis exclusively challenges the District Court's orders on the grounds that there was no privity between Dondero and the Highland Entities sufficient to justify the application of res judicata.

2.     Specifically, Acis argues that the District Court erred in finding that Dondero and the Highland Entities were in privity because: (1) under *Meza v. General Battery Corp.*,[2] privity only exists in three circumstances (if the non-party is the successor in interest to a party's interest in property; if the non-party controlled the prior litigation; or if the non-party's interests were adequately represented by a party to the original suit); and (2) alter ego allegations do not automatically create privity. Acis is wrong.

3.     *First*, contrary to Acis's position, privity is not limited to three grounds. This Court has recognized: (1) privity is a ***broad, fact-intensive concept*** that requires courts to look to the surrounding circumstances of each case to determine whether claim preclusion is justified; and (2) the preclusive effects of judgments have been

---

[2] *Meza v. General Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990).

expanded to include nonparties in more and more situations. [3]

4.       Moreover, in *Taylor v. Sturgell*,[4] the United States Supreme Court recognized **at least _six_ relationships** that justified a finding of privity, including "a variety of pre-existing substantive legal relationships between the person to be bound and a party to the judgment."[5] More importantly, the *Taylor* Court expressly noted that the six categories identified were "meant only to provide **_a framework_** ... **_not_ to establish a definitive taxonomy**."[6]

5.       Similarly, in *Meza*, which Acis attempts to rely on, merely recounts circumstances in which parties may "**_generally_**" be deemed to be in privity **_as a matter of law_**.[7]  Notably, **_after_** *Meza*, this Court confirmed that privity has come to be recognized as a **_label_** that simply expresses a conclusion that preclusion is proper and has defined the applicable test to be whether parties "are **_sufficiently related_** to merit the application of claim preclusion are in privity."[8] This Court has also held

---

[3] *Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1173-74 (5th 1992) (stating that parties need only be "sufficiently related to merit the application of claim preclusion") (quoting *Sw. Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977)).

[4] *Taylor v. Sturgell*, 553 U.S. 880 (2008).

[5] ROA.796-97 (citing *Taylor*, 553 U.S. at 894 (cleaned up)).

[6] *Taylor*, 553 U.S. at 893 n.6 (emphasis added).

[7] *Meza* , 908 F.2d 1262, 1266; *W. Coast Distrib., Inc. v. Pearce*, No. 3:07-CV-1869-O, 2010 WL 145283, at *3 (N.D. Tex. Jan. 14, 2010); *Oyekwe v. Research Now Grp., Inc.*, 542 F.Supp.3d 496, 507 (N.D. Tex 2021).

[8] *Russell*, 962 F.2d at 1173–74 (stating that parties need only be "sufficiently related to merit the application of claim preclusion") (quoting *Sw. Airlines Co.*, 546 F.2d at 95) (emphasis added).

---

that consent judgments bar claims against non-parties if the non-party is sufficiently related to the prior party.[9] As a result, privity is not as limited as Acis contends.

6.    ***Second***, under the "sufficiently related" test described above, Acis's pleadings establish privity. Acis alleged that "Dondero *is* Highland" and that Dondero, the Highland Entities, and Acis are all alter egos of each other. When parties are alter egos, they are ***identical*** and treated "***as one and the same***."[10] "If a defendant, as an alleged alter ego, is in privity for alter ego purposes it is in privity for res judicata purposes because alleged alter egos are treated *as one*."[11] Thus, Acis has alleged that Dondero and the Highland Entities are identical/one in the same or, at a minimum, sufficiently related to establish privity.

7.    ***Acis's own allegations***, which are conclusively binding on Acis, establish privity. Acis cannot avoid the application of res judicata by telling the Court to ignore its own pleadings, allegations, and theories of liability. Acis aimed to secure damages from Dondero through privity/alter ego allegations – it must accept the consequences

---

[9] *Russell,* 962 F.2d at 1172-1176 and *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1288-1289 (5th Cir. 1989).

[10] *Zahra Spiritual Tr. v. United States*, 910 F.2d 240, 243–44 (5th Cir. 1990) (emphasis added)).

[11] *Flores v. Bodden*, 488 F. App'x 770, 779 (5th Cir. 2012) (The entire purpose of the alter ego theory of liability would be undermined if the alter ego of a corporation could force parties to relitigate otherwise precluded claims against the corporation. Courts of appeals have routinely declined to accept arguments like Bodden's. *See, e.g., Robinson v. Volkswagenwerk AG,* 56 F.3d 1268, 1275 (10th Cir.1995) (holding that an adverse party's ***own allegations*** of a controlling, "near alter ego" relationship between parent and subsidiary ***were sufficient to establish privity*** between the two corporations for the purposes of claim preclusion)).

of res judicata the same way.

8.     This Court should affirm the dismissal of Acis's claim against Dondero.

## Statement of the Case

9.     Acis's involuntary bankruptcy proceeding, the Prior Acis Action against the Highland Entities, and the Current Acis Action against Dondero arose from a dispute between Dondero and a former employee of the Highland Entities, Joshua Terry ("*Terry*").

### A.     Highland Capital and Acis.

10.     Highland Capital Management, LP ("*Highland Capital*") is a Dallas-based Registered Investment Advisor.[12] In 2005, Highland Capital hired Terry and, ultimately, made him the portfolio manager for its CLO business.[13]

11.     In 2011, Highland Capital formed Acis to be the new "brand" or face of its CLO business.[14] Terry managed the Highland Capital's CLO business through Acis, and[15]  Highland Capital gave Terry a 25% ownership in Acis.[16]

12.     Acis was truly no more than a vehicle through which Highland Capital elected

---

[12] ROA.1764 at ¶ 2.

[13] ROA.1765 at ¶ 6.

[14] *In re Acis Cap. Mgmt., L.P.*, 584 B.R. 115, 122 (Bankr. N.D. Tex. 2018) ("23. The Alleged Debtors were formed in 2011 to be the new "brand" or face of the Highland CLO business, after Highland's name had suffered some negative publicity in the marketplace.").

[15]  ROA.2382 at ¶ 51; ROA.1765 at ¶¶ 5-6; *In re Acis Cap. Mgmt., L.P.*, 584 B.R. at119 ("The Alleged Debtor, Acis LP, for approximately the past seven years, has been the vehicle through which Highland's CLO business has been managed.").

[16] ROA.2512 at ROA.2516; *In re Acis Cap. Mgmt., L.P.*, 604 B.R. 484, 500 (N.D. Tex. 2019), aff'd sub nom. Matter of Acis Cap. Mgmt., L.P., 850 F. App'x 302 (5th Cir. 2021) ("Terry rose through the ranks at Highland until he became the portfolio manager for Highland's CLO business, and, in turn, received a 25% limited partnership interest in Acis LP.").

to operate its CLO business. Indeed, Acis had no employees and was operated exclusively by Highland Capital employees.[17] Even Terry was, at all times, employed by Highland Capital and not Acis.[18]

13.    In June 2016, Highland Capital terminated Terry. Pursuant to the terms of Acis' limited partnership agreement, Terry forfeited his partnership interest in Acis upon termination.[19] Following his termination, Terry filed an arbitration against Acis and Highland Capital (among other entities). Terry prevailed on some of his claims in the Arbitration and was ultimately awarded $7,949,749.15 (the "*Arbitration Award*").[20]

## B.    Terry's Involuntary Bankruptcy Proceeding Against Acis

14.    On January 30, 2018, Terry, now a creditor, initiated an involuntary bankruptcy proceeding against Acis.[21] Notably, the Bankruptcy Court approved a plan that resulted in Terry obtaining the equity in Acis (for a reduction of his Arbitration Award) and all of Acis's creditors, including Terry, being paid in full.[22]

---

[17] ROA.1776 at ¶ 27; *see also* ROA.2367 at ¶¶ 54 (ROA.2383) and 314 (ROA.2456).

[18] ROA.1776 at ¶ 27.

[19] ROA.1108 at ¶ 40 (ROA.1121).

[20] ROA.2258.

[21] ROA.1880 at ¶ D. On January 31, 2019, the Bankruptcy Court entered its *Findings of Fact, Conclusions of Law, and Order Granting Final Approval of Disclosure Statement and Confirming the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC, as Modified* (the "Confirmation Order") [Case No. 18-30264, Docket Nos. 829 & 830], which approves the *Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* (the "*Plan*"), ROA.1878.

[22] ROA.1880. *Acis Cap. Mgmt. LP v. Simek*, No. AP 20-3059, 2025 WL 1199386, at *3 (N.D. Tex.

---

C.     **The Adversary Actions**

(1)     **The Prior Acis Action**

15.     In Acis sued Highland Capital, along with Highland CLO Funding, Ltd. ("*Highland Funding*"); Highland HCF Advisor, Ltd. ("*Highland Advisor*"); Highland CLO Management, Ltd. ("*HCLOM*"); and Highland CLO Holdings, Ltd. ("*Highland Holdings*") (collectively, the "*Highland Entities*") Acis Capital Management, L.P., et al. v. Highland Capital Management, LP ("*Highland Capital*"); Highland CLO Funding, Ltd. ("*Highland Funding*"); Highland HCF Advisor, Ltd. ("*Highland Advisor*"); Highland CLO Management, Ltd. ("*HCLOM*"); and Highland CLO Holdings, Ltd. ("*Highland Holdings*") (collectively, the "*Highland Entities*") in Adversary No. 18-3078 (the "*Prior Acis Action*").

16.     While Acis did not name James Dondero ("*Dondero*") as a Defendant, numerous of the Highland Entities were served through him, as their President and general or managing agent.[23]

17.     In the Prior Acis Action, Acis **referenced Dondero _57 times_.** Acis repeatedly alleged that Dondero, through his complete control of the Highland Entities,[24] manipulated Acis and orchestrated a fraudulent scheme (the "*Alleged Fraudulent*

---

Apr. 24, 2025) ("All other creditors of Acis, besides Terry, were paid in full—there weren't that many other creditors.").

[23]  ROA.2121 at ¶¶ 10, 11.

[24]  *See* ROA.2367 at ¶¶ 10 (ROA.2370-71), 12 (ROA 2371), 14-15 (ROA.2372-73), 23 (ROA.2375), 26 (ROA.2376), 29 (ROA.2376) and 275 (ROA.2447).

---

*Scheme*") to transfer assets from Acis to the Highland Entities in the following seven transactions:

(1) Purported overpayments to the Highland Entities under the Sub-Advisory and Shared Services Agreements;

(2) the ALF PMA Transfer;

(3) the ALF Share Transfer;

(4) the Note Transfer;

(5) the 2017-7 Equity Transfer;

(6) the 2017-7 Agreements Transfer; and

(7) the thwarted Universal/BVK Agreement.

Collectively, the "*Transactions*."[25]

18.    Acis alleged that, at the time of the Transactions, Acis was merely a shell used by the Highland Entities, which were themselves mere puppets of Dondero, to accomplish Dondero's objectives of not paying Terry. Specifically, Acis alleged that:

• Dondero controlled the Highland Entities and was their alter ego;[26]

---

[25] ROA.2367 at ¶¶ 70-124 (ROA.2388-2408).

[26] ROA.2367 at ¶ 314 (ROA.2456) and ¶ 375 (ROA.2447) ("In Count 32 of the second amended complaint in the Prior Acis Action (against the Highland Entities), Acis alleged that the Highland Entities as "alter egos" of Dondero, as the control person, were also **alter egos** of each other: *Highland Capital, Highland Funding, Highland Adviser, Highland Management, and Highland Holdings (the "Alter Egos") are all controlled by the CEO and ultimate majority owner of Highland Capital, Dondero.* Each of the Alter Egos should be held liable for any damages awarded under any Count in this Second Amended Complaint, as each is the alter ego of the others. Further, each of the Alter Egos should be held liable for any debts of the Debtors, as they are also the alter ego of the Debtors."); *In re Acis Cap. Mgmt., L.P.*, No. 18-30264-SGJ-11, 2024 WL 4500804, at *21 (Bankr. N.D. Tex. Oct. 15, 2024), report and recommendation adopted

- Highland Capital had "absolute operational and financial control of Acis;"[27]

- "Acis was operated exclusively by Highland Capital Employees;"[28]

  o Acis LP and Acis GP never had any employees;[29]

  o Dondero directed, either himself or though Highland Capital employees, all actions taken by Acis;[30]

- Highland Capital, Dondero, and various of "*their* affiliates and insiders" entered into the Transactions through the Fall of 2017;[31]

  o Highland Capital was the "ringleader" of the Transactions;[32]

  o The Transactions were part of the ***Highland Entities'*** scheme, and the ***Highland Entities*** caused the Transactions;[33]

  o The "***Highland Enterprise***," which allegedly included Dondero, engaged in the Transactions; [34] and

---

sub nom. *In re Acis Cap. Mgmt. LP*, No. 3:24-CV-02036-N, 2025 WL 565676 (N.D. Tex. Jan. 6, 2025) ("In the Prior Acis Action: as the CEO and ultimate majority owner of Highland, Dondero controlled his alleged alter ego, Highland, and Highland, in turn, controlled the other Highland Entities, and, therefore, all of the Highland Entities were the alter egos of Dondero." Citing footnote 2 and Acis's judicial admission that allegations of "majority ownership" and control are sufficient to establish alter ego: "Plaintiffs' counsel argued at the Hearing that "our complaint and our first amended complaint are shot through with allegations of facts that support our claim that the [Highland Entities] ... are all mere instrumentalities of Mr. Dondero [a]nd that is what we need to allege in order to pierce the corporate veil in Delaware." Hr'g Trans. 35:5-10.").

[27] ROA.2367 at ¶ 315 (ROA.2457).

[28] ROA.2367 at ¶¶ 54 (ROA.2384) and ¶ 314 (ROA.2456).; Prior Acis Action, Dkt. 23 (Original Counterclaim) at ¶ 147.

[29] ROA.2367 at ¶ 314 (ROA.2456).

[30] ROA.2367 at ¶ 55 (ROA.2384); *see id.* (alleging Dondero testified that he had decision making authority for Acis).

[31] ROA.2367 at ¶ 74 (ROA.2390).

[32] ROA.2367 at ¶ 266 (ROA.2444-45); Prior Acis Action, ROA.1332 Dkt. 84 at ¶ 237.

[33] ROA.2367 at ¶¶ 79-80 (ROA.2392-93); ROA.2118 at ¶¶ 52-53 (ROA.2134).

[34] ROA.2367 at ¶ 246 (ROA.2440) ROA. 2118 at ¶ 202 (ROA.2176).

---

> 202. The Highlands, Dondero and Waterhouse (collectively, the "Highland Enterprise")[22] sought to engage in a series of fraudulent transfers and other fraudulent schemes, including the ALF PMA Transfer, the ALF Share Transfer, the Note Transfer, the 2017-7 Equity transfer, the 2017-7 Agreements transfer and the thwarted Universal/BVK Agreement transfer in order to denude Acis's assets and take over Acis LP's valuable business.

    o  Acis was the Highland Entities' (and Dondero's) alter ego and itself actively participated in the Transactions and the Alleged Fraudulent Scheme.[35]

19.    Based upon these vicarious liability/alter ego allegations involving Dondero, Acis asserted fraudulent transfer, breach of fiduciary duty, and tortious interference claims against the Highland Entities, as well as claims for post-petition conduct that allegedly violated the automatic stay.[36] Acis also alleged that the Highland Entities (acting through and controlled by Dondero as their alter ego) conspired and aided and abetted Dondero's purported breach of fiduciary duty to Acis.[37]

---

[35] ROA.2367 Dkt. 157 at p. 24 n. 15 (ROA.2390).

[36]   ROA.1332.

[37] *See, e.g.*, Prior Acis Action, ROA.2118 at ¶ 34 (ROA.2127) ("Highland Capital is … an Affiliate of Acis GP and Acis LP. Further, Highland Capital is … an insider of Acis GP and Acis LP."); ¶ 45 (ROA.2130); ¶¶ 208-215 (ROA.2177-2179) (conspiracy to breach fiduciary duty) and ¶¶ 217-222 (ROA.2177-2810) (aiding and abetting breach of fiduciary duty); ¶ 244 (ROA.2185) (Highland Entities "are also the alter ego of the Debtors."); ¶ 270 (ROA.2193) ("During the time it completely dominated control of Acis, Highland Capital clearly engaged in abundant inequitable conduct related to Acis, as well as conferring numerous unfair advantages to itself, that resulted in injury to Acis's creditors."); *see also, e.g.*, the Prior Acis Action, ROA.2367, including at ¶ 43 (ROA.2380); ¶ 52 (ROA.2383) ("… right before Highland Capital began its campaign to denude Acis LP and take over its business..."); ¶ 60 (ROA.2386); ¶ 93 (ROA.2397); ¶ 104 (ROA.2401); ¶ 123 (ROA.2407) ("… Highland Capital's absolute operational and financial control of Acis...."); ¶¶ 246-250 (ROA.2440); ¶ 270 (ROA.2445) ("The Highlands, led by Highland Capital and Dondero …."); ¶ 275 (ROA.2447); ¶ 314 (ROA.2456); ¶¶ 324-325 (ROA.2460); and ¶¶ 338-339 (ROA.2466).

20.    Again, despite the entire Prior Acis Action being about ***Dondero's*** alleged use of control over the Highland Entities (and, thus, Acis) to effectuate the Alleged Fraudulent Scheme, Acis made the tactical and risky decision to claim split and not have Dondero named as a Defendant in the Prior Acis Action.

21.    Instead, Acis sued Dondero in a subsequent lawsuit on the same exact facts and alleged liability.

### (2)    The Current Acis Action

22.    On April 11, 2020, Acis sued Dondero in Adversary No. 20-03060 (the "*Current Acis Action*"). As described above, the Current Acis Action is largely ***a cut-and-paste job*** from the Prior Acis Action. In fact, the first paragraph in the Current Acis Action virtually mirrors the Prior Acis Action:

> The Court is all-too familiar with the facts of this case. In order to ensure that Josh Terry would collect nothing from Acis for his hard-fought Arbitration Award of nearly $8 million, ***James Dondero, through Highland Capital Management, L.P.*** ("Highland Capital" or "Highland") and many of its affiliates, ***orchestrated a massive scheme to fraudulently transfer Acis's assets***— including its portfolio management rights that constituted the core of Acis's revenue stream, worth tens of millions of dollars—***to a family of businesses that Dondero controlled (the "Highlands")***.[38]

23.    The claims asserted against Dondero in the Current Acis Action are based on the exact same Alleged Fraudulent Scheme arising out of the exact same

---

[38] ROA.1108 at ¶ 1 (ROA.1109).

Transactions that were at issue in the Prior Acis Action.[39] Indeed, Acis alleges in the Current Acis Action that it should be permitted to pierce the corporate veil and recover "all damages flowing from the actions of the Highlands" from Dondero individually because he, *in the present tense*, "*is* Highland" and "*is* the alter ego of the Highlands."[40] In other words, Acis: (1) sued ***the Highland Entities*** in the Prior Acis Action for damage that ***Dondero***—acting through his alter ego the Highland Entities' (and their control of Acis and as their alter ego)—allegedly caused Acis in the Alleged Fraudulent Scheme; and then (2) sued ***Dondero*** in the Current Acis Action ***for the exact same damages resulting from the same Alleged Fraudulent Scheme***.[41]

24.    On June 22, 2020, Dondero filed his *Original Answer* in the Current Acis Action asserting various affirmative defenses, including, res judicata.[42]

### (3)    Acis' Dismissal of the Prior Acis Action with Prejudice

25.    On November 3, 2020, Acis filed its *Unopposed Motion to Dismiss Less than All Defendants* in the Prior Acis Action, seeking to dismiss ***with prejudice*** all of the

---

[39] ROA.1108 at ¶¶ 1-3 (ROA.1109-10), 18 (ROA.1114), 24 (ROA.1116), 53 (ROA.1125), 58-59 (ROA.1127), 65 (ROA.1129), 92 (ROA.1139), 95-96 (ROA.1140-41), 130-131 (ROA.1150), 144 (ROA.1153), and at p. 51 (Conclusion) (ROA.1158-59).

[40] ROA.1044 at ¶ 3 (ROA.1110).

[41] ROA.1044 Dkt. 111, ¶¶ 2 (ROA.1009) and 18 (ROA.1114); *see also id.* at ¶¶ 1 (ROA.1109), 3 (ROA.1110), 24 (ROA.1116), 53 (ROA.1125), 58-59 (ROA.1127), 65 (ROA.1129), 92 (ROA.1139), 95-96 (ROA.1140-41), 130-131 (ROA.1150), 144 (ROA.1153), and at p. 51 (Conclusion) (ROA.1158-59).

[42] ROA.968.

---

claims that were brought, or could have been brought, by and between Acis and all of the Highland Entities (except Highland CLO Funding, Ltd.) (the "*First Dismissal with Prejudice*").[43] The only carve out in the First Dismissal with Prejudice was Highland CLO Funding, Ltd.

26.    On November 6, 2020, the Bankruptcy Court entered its *Order Dismissing Less than All Defendants with Prejudice* (the "*Partial Dismissal with Prejudice*").[44]

27.    On May 3, 2021, Acis filed *Plaintiffs' Motion for Entry of Stipulation and Agreed Order Dismissing Adversary Proceeding with Prejudice*,[45] which the Bankruptcy Court entered on May 8, 2021 (the "*Final Dismissal with Prejudice*").[46] The Final Dismissal with Prejudice dismissed, with prejudice, "*[a]ll of the claims that were brought, or could have been brought, by and between, and on behalf of* (i) *Acis and its estate*, and (ii) Defendant Highland CLO Funding, Ltd f/k/a Acis Loan Funding, Ltd."[47] In short, Acis dismissed all claims that were brought or could have been brought by or on behalf of Acis and its estate. The Partial Dismissal with Prejudice and the Final Dismissal with Prejudice are collectively referred to as the "*Dismissals with Prejudice.*"

---

[43] ROA.1520.

[44] ROA.1524.

[45] ROA. 2931.

[46] ROA.2931; ROA.94.

[47] ROA.2931 and ROA.2939.

28.    The Dismissals with Prejudice did not incorporate any purported settlement agreement or contain any express reservations regarding Acis's claims against Dondero.[48] In fact, the settlement agreements were not even filed in the Prior Acis Action.[49]

### (4)    The First Amended Complaint in the Current Acis Action

29.    On January 17, 2024, Acis filed its *First Amended Complaint* in the Current Acis Action (the "*Amended Complaint*"). Like the Prior Acis Action, Acis alleged as follows:

> ***The Court is all-too familiar with the facts of this case***. In order to ensure that Josh Terry would collect nothing from Acis for his hard-fought Arbitration Award of nearly $8 million, ***James Dondero, through Highland Capital Management, L.P. and many of its affiliates, orchestrated a massive scheme to fraudulently transfer Acis's assets***— including its portfolio management rights that constituted the core of Acis's revenue stream, worth tens of millions of dollars—***to a family of businesses that Dondero controlled***.[50]

30.    The Amended Complaint added fraudulent transfer claims against Dondero. As it did in the Prior Acis Action, Acis continued to assert in the Amended Complaint that Dondero, in the present tense, *is* the Highland Entities' alter ego and "pulls the strings."[51]

---

[48] ROA.636 at pp.3-4 (ROA.638-39); see also ROA.1520, ROA.1524, ROA.2931, ROA.2939.

[49] ROA.1674:3-ROA.1675:8.

[50] ROA.1044 at ¶ 1 (emphasis added).

[51] ROA.1044 at ¶ 2.

> 2. As he orchestrated this scheme, like a puppet master, Dondero completely controlled Highland Capital, its affiliates, and those who did his dirty work. Dondero *is* Highland Capital, and through it he pulls the strings for the rest of the Highlands. He is their alter ego.

### (5)  The Court's Dismissal of the Fraudulent Transfer Claims in the Current Acis Action Pursuant to Rule 12(b)(6)

31.   On February 16, 2024, Dondero moved to dismiss the fraudulent transfer claims alleged in the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[52] Acis filed its response on February 16, 2024,[53] and Dondero filed his Reply brief on April 10, 2024.[54]

32.   On October 15, 2024, the Bankruptcy Court issued a Report and Recommendation, recommending that the District Court grant Dondero's motion to dismiss the fraudulent transfer claims (the "*First R&R*").[55] In the First R&R, the Bankruptcy Court *sua sponte* held that, among other things, Acis's fraudulent transfer claims were barred by res judicata based upon Acis's pleadings in the Prior Acis Action.[56]

33.   The Bankruptcy Court, taking judicial notice of the pleadings in the Prior Acis Action, specifically found that: (1) Dondero and the Highland Entities were in

---

[52] ROA.1161 and ROA.1164.

[53] ROA.1182.

[54] ROA.1198.

[55] ROA.57.

[56] ROA.97-104.

privity in the Prior Acis Action; (2) the Dismissals with Prejudice were final judgments on the merits; (3) the Bankruptcy Court had jurisdiction over the Prior Acis Action; and (4) under the Transaction Test, the same claim or cause of action was involved in both the Prior Acis Action and the Current Acis Action.[57]

### (6)    The District Court's Adoption of the First R&R

34.    On October 29, 2024, Acis objected to the First R&R: (1) wrongfully claiming that the Dismissals with Prejudice "reserved Acis's right to pursue Dondero for *transactions already litigated in the Highland Adversary*";[58] (2) contrary to its own assertion in the Second Amended Complaint, Dondero was not in privity with the Highland Entities;[59] and (3) asserting that the Bankruptcy Court deprived Acis of due process by denying Acis the opportunity to be heard.[60]

35.    On November 19, 2024, Dondero filed his *Response to Plaintiffs' Objection to Report and Recommendation to the District Court that it Grant Dondero's Motion to Dismiss Counts 3 & 5*.[61] On January 6, 2025, Acis filed its Reply brief.[62]

36.    On January 6, 2025, the District Court adopted the First R&R (the "*First DC*

---

[57] *Id.*

[58] ROA.431.

[59] ROA.435.

[60] ROA.441.

[61] ROA.1291.

[62] ROA.640.

*Order*").[63] In the First DC Order, the District Court found that Acis's own assertion that Dondero and Highland were alter egos established privity for the purposes of claim preclusion.[64]

37. Specifically, the District Court logically (and equitably) found that:

(1) Acis alleged that Dondero was the alter ego of the Highland Entities;

(2) "If the situation were reversed, and Acis had obtained a judgment of liability against Highland, Dondero would certainly not be able to avoid preclusion and force Acis to relitigate liability for the same underlying conduct;"[65] and

(3) "[I]f privity would exist to hold Dondero liable on a judgment of liability against Highland, then it must also exist to shield Dondero from liability when Highland secured a dismissal with prejudice on the same claims."

38. The District Court further held that no prior order, including the Dismissals with Prejudice, preserved Acis's claim against Dondero because, ***as required by precedent from this circuit***, they did not incorporate any settlement agreements between Acis and the Highland Entities or expressly reserve Acis's claims against Dondero.[66]

---

[63] ROA.636.

[64] ROA.637-38 (citing *Dudley v. Smith*, 504 F.2d 979, 982 (5th Cir. 1974)).

[65] ROA.638 (citing *Dudley*, 504 F.2d at 982; *Flores*, 488 F. App'x at 779 (citing *Robinson*, 56 F.3d at 1275).

[66] ROA.638-39 (citing *Seven Networks*, 2022 WL 426589, at *3 (N.D. Tex. 2022) (citing *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 402-03 (5th Cir. 2009))).

### (7)    The Bankruptcy Court's Ruling that Res Judicata Bars Acis's Remaining Claims

39.    On November 18, 2024 (after the First R&R, but before the First DC Order adopting same), Dondero filed a *Motion for Judgment on the Pleadings Pursuant to* FED. R. CIV. P. *12(c) and Supplemental Motion for Judgment as a Matter of Law Under Rule 56* (the "*Rule 12 and Rule 56 Motion*"), seeking to have Acis's remaining claims against him dismissed under the doctrine of res judicata.[67]

40.    On December 9, 2024, Acis filed its *Response to James Dondero's Motion for Judgment on the Pleadings and Supplemental Motion for Summary Judgment as a Matter of Law.*[68] On December 19, 2024, Dondero filed his Reply brief.

41.    On January 27, 2025, the Bankruptcy Court issued another Report and Recommendation recommending that the District Court grant Dondero's Rule 12(c) and Rule 56 Motion and dismiss Acis's remaining claims against Dondero with prejudice (the "*Second R&R*").[69]

### (8)    The District Court's Adoption of the Second R&R

42.    On February 10, 2025, Acis filed its Objection to the Second R&R, asserting, yet again, that: (1) Dondero and Highland were not in privity; (2) Acis's claims against Dondero are based upon different facts; (3) the Restatement limits the effect

---

[67] ROA.1287 (Motion); ROA.1291 (Brief ISO); and ROA.1329-1526 (Appendix).

[68] ROA.1564 (Response); and ROA.1618 (Brief ISO).

[69] ROA.657.

of consent judgments; and (4) Dondero waived any res judicata defense.[70]

43.     On February 26, 2025, Dondero filed his *Response to Plaintiffs' Objection to Report and Recommendation to the District Court that it Grant Dondero's Motion for Judgment on the Pleadings and "Supplemental" Motion for Summary Judgment and Motion to Dismiss with Prejudice all Remaining Counts Against Dondero.*[71]

44.     On April 23, 2025, the District Court enter an order adopting the Second R&R (the "*Second DC Order*").[72] In the Second DC Order, the District Court again held that:

(1)   Acis's assertion that Dondero and Highland are alter egos established privity for the purposes of claim preclusion;

(2)   The claims at issue in the Current Acis Proceeding were based upon the same facts and could have been prior in the Prior Acis Proceeding; and

(3)   The Dismissals with Prejudiced did not preserve Acis's claim against Dondero because they did not incorporate the settlement agreements between Acis and the Highland Entities or expressly reserved Acis's claims against Dondero.[73]

**(9)   This Appeal**

45.   This appeal followed. In this appeal, Acis' no longer disputes that the Dismissals with Prejudice are final judgments on the merits or that the claims in the

---

[70] ROA.670 and ROA.673.

[71] ROA.764.

[72] ROA.795.

[73] ROA.796-97.

Current Acis Adversary are based upon the same facts arise out of the same transaction as the claims in the Prior Acis Adversary. Instead, the sole issue Acis disputes on appeal is whether Dondero and the Highland Entities are identical or in privity. They are both.

## Argument & Authorities

### A.    Legal Standard

46.    Here, the First DC Order adopted the First R&R, finding that, under Rule 12(b) of the Federal Rules of Civil Procedure, res judicata barred Acis's claims. The Second DC Order adopted the Second R&R, finding that, under Rules 12(c) and 56, res judicata barred Acis's claims.

### (1)    Dismissal Under Rules 12(b) and 12(c)

47.    The Court reviews the district court's decision on a Rule 12 (b)(6) and 12(c) motion for judgment on the pleadings de novo.[74] "The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim."[75] In deciding a motion to dismiss under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[76]

48.    "'Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of

---

[74] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

[75] *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019); *In re Waggoner Cattle, LLC*, No. 18-20126-RLJ-11, 2022 WL 5264707, at *1 (Bankr. N.D. Tex. Apr. 28, 2022).

[76] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205-06; *Mohamed v. Univ. of Texas Sw. Med. Ctr.*, No. 3:23-CV-2705-G-BN, 2024 WL 3862800, at *1 (N.D. Tex. May 23, 2024), report and recommendation adopted sub nom. *Mohamed v. Univ. of Texas Sw. Med. Ctr.*, No. 3:23-CV-2705-G-BN, 2024 WL 3869430 (N.D. Tex. Aug. 19, 2024).

the pleadings.'"[77] Moreover, a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.[78] Thus, dismissal under Rule 12(b)(6) and 12(c) is appropriate if the res judicata bar is apparent from the pleadings and judicially noticed facts.[79]

### (2)    Dismissal under Fed. R. Civ. P. 56

49.    Summary judgment is proper if the pleadings, depositions, interrogatory answers and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[80]

## B.    Res Judicata

50.    Federal law of res judicata "bars all claims that were **_or could have been_** advanced in support of the causes of action on the occasion of its former adjudication, not merely those that were adjudicated."[81] As the Second Circuit

---

[77] *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D.Tex. Sept.14, 2011) (Fitzwater, C.J.) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir.1986)); *see also White v. Padgett*, 475 F.2d 79, 82 (5th Cir.1973) (holding that claim is "subject to dismissal under Rule 12(b)(6) ... when [an] affirmative defense clearly appears on the face of the complaint.").

[78] *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir.1990) (per curiam) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1367, at 509–10 (1990)).

[79] *Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 591 (5th Cir. 2020) (cleaned up; quoting *Kahn v. Ripley*, 772 F. App'x 141, 142 (5th Cir. 2019) (per curiam)); accord *Sacks v. Tex. S. Univ.*, 83 F.4th 340, 344 (5th Cir. 2023); *Mohamed*, 2024 WL 3862800, at *1.

[80] FED. R. CIV. P. 56(c)*; see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

[81] *Vines v. Univ. of Louisiana at Monroe*, 398 F.3d 700, 709 (5th Cir. 2005).

---

recently stated, "***Litigation strategy to not bring claims which [plaintiff] ... could have brought does not bar the application of res judicata***; ***indeed, 'strategic' choices to split claims that could be brought in the same case is what the res judicata principle seeks to prevent***."[82] Thus, when two suits are pending based on the same claim or issue, absent an express reservation, the first final judgment rendered becomes conclusive in the other action and res judicata bars the second suit.[83]

51.     To establish res judicata, a party must demonstrate: (1) the parties in both the prior suit and current suit are identical ***or in privity***; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded to a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions.[84]

52.     Here, as stated above, the only element that Acis disputes on appeal is whether Dondero and the Highland Entities were in privity.

## C.     The Existence of Privity

53.     To satisfy the identity element of privity, strict identity of parties is not

---

[82] *Universitas Educ., LLC v. Benistar Admin Servs., Inc.*, No. 23-1207, 2024 WL 1787754, at *3 (2d Cir. Apr. 25, 2024) (citing *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 199 (2d Cir. 2010) ("Where a litigant selected a litigation strategy he now regrets, ... his choice of that strategy will not prevent the application of preclusion against him.").

[83] *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir.2000); *Vines*, 398 F.3d at 709.

[84]  *Petro-Hunt, L.L.C. v. United States,* 365 F.3d 385, 395 (5th Cir. 2004).

necessary.[85] A non-party defendant can assert res judicata so long as it is in "privity" with the named defendant.[86] "Privity" is recognized as a broad concept, which requires the Court to look to the surrounding circumstances to determine whether claim preclusion is justified.[87]

54.     "Courts have recognized that privity is often found in circumstances beyond those that would have traditionally given rise to privity because, today, privity 'is nothing more than a legal conclusion that the relationship between the one who is a party on the record and the non-party is ***sufficiently close to afford application of the principle of preclusion***.'"[88]

55.     Moreover, courts have found that "a ***lesser degree*** of privity is required for a new defendant to benefit from claim preclusion than for a plaintiff to bind a new defendant in a later action."[89] Thus, here, where a new defendant seeks to benefit from claim preclusion, the question is simply whether the parties are "sufficiently

---

[85] *Russell*, 962 F.2d at 1173 (citation omitted).

[86] *Id.*

[87] *Id.*

[88] *Welsh v. Correct Care, LLC*, No. 5:17-CV-095-BQ, 2020 WL 854244, at *10–11 (N.D. Tex. Jan. 30, 2020), report and recommendation adopted, No. 5:17-CV-095-C, 2020 WL 836835 (N.D. Tex. Feb. 20, 2020), aff'd sub nom. *Welsh v. McLane*, No. 20-10412, 2021 WL 5313626 (5th Cir. Nov. 15, 2021) (quoting *Meza*, 908 F.2d at 1266 (emphasis added); *Taylor*, 553 U.S. at 894 n.8); *see also* 18A Wright & Miller, supra, § 4449, at 351 ("[I]t has come to be recognized that the privity label simply expresses a conclusion that preclusion is proper.").

[89] *In re Testmasters Trademark Litig.*, No. 4:04-MD-1646, 2006 WL 8445513, at *7 (S.D. Tex. Sept. 28, 2006), aff'd sub nom. *Robin Singh Educ. Servs. Inc. v. Excel Test Prep Inc.*, 274 F. App'x 399 (5th Cir. 2008) (quoting *Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995)); *Lubrizol Corp.*, 929 F.2d at 966.

---

close" to merit the application of claim preclusion.[90] If so, they are in privity.

### (1)   Acis Judicially Admits that Dondero and the Highland Entities are in Privity.

56.    When parties are alter egos, they are ***identical*** and treated "***as one and the same***."[91] As a result, "if a defendant, as an alleged alter ego, is in privity for alter ego purposes it is in privity for res judicata purposes because alleged alter egos are treated ***as one***."[92]

---

[90] *Russell*, 962 F.2d at 1173–74; *see also Boyte v. Lionhead Holdings*, No. 3:10-CV-1467-D, 2012 WL 2680022, at *3 (N.D. Tex. July 6, 2012) (Fitzwater J.) (citing *Russell*, 962 F.2d at 1174 (stating that parties need only be "sufficiently related to merit the application of claim preclusion")); *Sw. Airlines* Co., 546 F.2d at 95 (quoting Allan D. Vestal, Preclusion/Res Judicata Variables: Parties, 50 Iowa L. Rev. 27 (1964)) ("privity "represents a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion.'").

[91] *Zahra Spiritual Tr.*, 910 F.2d at 243–44 (emphasis added); *Reneker v. Offill*, No. 3:08-CV-1394-D, 2012 WL 2158733, at *18 (N.D. Tex. June 14, 2012) (Fitzwater, J.) ("The effect of applying the alter ego doctrine is that the entity and the alter ego ***are treated as one person***, so that any act committed by one is attributed to both, and if either is bound, by contract, judgment, or otherwise, both are equally bound."); *see also Robin Singh Educ. Servs. Inc. v. Excel Test Prep Inc.*, 274 Fed. Appx. 399, 400 n. 1 (5th Cir.2008) (per curiam).

[92] *Flores*, 488 F. App'x at 779 (The entire purpose of the alter ego theory of liability would be undermined if the alter ego of a corporation could force parties to relitigate otherwise precluded claims against the corporation. Courts of appeals have routinely declined to accept arguments like Bodden's. *See, e.g., Robinson v. Volkswagenwerk AG,* 56 F.3d 1268, 1275 (10th Cir.1995) (holding that an adverse party's ***own allegations*** of a controlling, "near alter ego" relationship between parent and subsidiary ***were sufficient to establish privity*** between the two corporations for the purposes of claim preclusion)); *cf. Torain v. AT&T Mgmt. Servs. LP,* 353 Fed. Appx. 37, 38 (7th Cir.2009)), *see, e.g., Universitas Educ., LLC,* No. 3:20-CV-00738 (JAM), 2021 WL 965794, at *12; *R.G. Fin. Corp. v. Vergara–Nunez,* 446 F.3d 178, 186 (1st Cir. 2006) ("[W]e do not see how R–G Premier Bank and R.G. Financial can be tied so closely to R & G Mortgage's actions for purposes of the counterclaim and yet, at the same time, be considered distinct from R & G Mortgage for purposes of the res judicata analysis. ***Vergara simply cannot have it both ways: either the R–G companies are in privity with one another for both liability and res judicata purposes, or they are not in privity for either purpose.***"); *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1242–43 (10th Cir. 2017) (finding ***allegations of privity for purposes of liability establishes privity for res judicata purposes***); *Bakov v. Consol. Travel Holdings Grp., Inc.*, No. 019CV61509WPDSNOW, 2020 WL 9934410, at *3 (S.D. Fla. Apr. 9,

---

57.    Moreover, "factual assertions in pleadings are ... judicial admissions conclusively binding on the party that made them."[93] As a result, and as this Court has noted, courts have held that "an adverse party's own allegations of a controlling, 'near alter ego' relationship is sufficient to establish privity for the purposes of claim preclusion."[94]

58.    As stated above, in the Amended Complaint (the *live pleading* in the Current Acis Action), Acis asserts, in the present tense, that: "Dondero **_is_** the Highland Entities … He is their alter ego" and that Dondero controlled the Highland Entities.[95] Acis alleged this lack of distinction between the Highland Entities, Acis, and Dondero to hold Dondero and all parties liable for each other's actions.

59.    It is irrelevant that Dondero was not adjudicated to be the Highland Entities' alter ego. According to **_Acis's own allegations_**, which are conclusively binding on Acis, Dondero and the Highland Entities are alter egos. Taken as true, Dondero and the Highland Entities are identical/one in the same or, at a minimum, sufficiently close to establish privity. As a result, the District Court did not err in finding that Acis's pleadings established privity.

---

2020) (finding **_allegation of alter ego establishes privity for res judicata purposes_**).

[93]    *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987).

[94]    *Flores*, 488 F. App'x at 779 (citing *Robinson*, 56 F.3d at 1275 (holding that an adverse party's own allegations of a controlling, "near alter ego" relationship between parent and subsidiary were sufficient to establish privity between the two corporations for the purposes of claim preclusion).

[95]    ROA.1044 at ¶¶ 2 (ROA.1045).

---

### (2)    Privity is Not Limited to Three Narrow Grounds.

60.    To escape the consequences of its pleadings, Acis argues that under *Taylor v. Sturgell*[96] and *Meza v. Gen. Battery Corp.*,[97] privity *only* exists in the three circumstances discussed in *Meza*.[98] Acis is wrong.

61.    *First*, neither *Taylor* nor *Meza* support Acis's argument. In *Taylor*, the United States Supreme Court confirmed there are more than three grounds for privity. In fact, the *Taylor* Court recognized *at least <u>six</u> relationships* that justified a finding of privity, including "a variety of pre-existing substantive legal relationships between the person to be bound and a party to the judgment."[99] More importantly, the *Taylor* Court expressly noted that the six categories identified were "meant only to provide *<u>a framework</u>* ... <u>*not* to establish a definitive taxonomy</u>."[100]

62.    Notably, as the District Court found, "alter ego is a pre-existing legal relationship that the Fifth Circuit has concluded can establish privity."[101] Accordingly, even if the non-exhaustive list in *Taylor* was limited, finding privity in this case complies with *Taylor*.

---

[96] *Taylor*, 553 U.S. 880 (2008).

[97] 908 F.2d 1262, 1266 (5th Cir. 1990).

[98] Appellants' Brief at p. 11.

[99] ROA.796-97 (citing *Taylor*, 553 U.S. at 894 (cleaned up)).

[100] *Taylor*, 553 U.S. at 893 n.6 (emphasis added).

[101] ROA.797 (citing *Dudley*, 504 F.2d at 982 ("A stockholder may be in privity with his corporation . . . such that a judgment against the latter is res judicata as to the former, if the two are found to be alter egos.")).

63.    Similarly, *Meza*, which Acis relies upon, did not make any holding related to the types of circumstances that justify privity. Instead, *Meza* merely recounted holdings in *Howell v. Hydrocarbons, Inc. v. Adams*[102] and *Southwest Airlines Co. v. Texas Intern. Airlines, Inc*[103] to identify certain relationships that have been deemed sufficiently close to establish privity ***as a matter of law***.[104] Those cases do not hold that those three circumstances are the ***<u>exclusive</u>*** grounds for privity, but that privity exists, as a matter of law, in those three circumstances.

64.    ***Second***, in *Russell v. SunAmerica Sec., Inc.*, which was authored after *Meza*, this Court:

> (1)    confirmed that privity is a ***broad, fact-intensive concept*** that requires courts to look to the surrounding circumstances to determine whether claim preclusion is justified in each case;

---

[102] *Howell v. Hydrocarbons, Inc. v. Adams*, 897 F.2d 183 (5th Cir. 1990).

[103] *Southwest Airlines Co. v. Texas Intern. Airlines, Inc*., 546 F.2d 84 (5th Cir. 1977).

[104] *Howell*, 897 F.2d 183, 189 (5th Cir. 1990) ("A non-party ***is in privity*** with a party for res judicata purposes in three instances: (1) if he is a successor in interest to the party's interest in the property; (2) if he controlled the prior litigation; or (3) if the party adequately represented his interests in the prior proceeding."); *Sw. Airlines Co.*, 546 F.2d at 95 ("Federal courts ***have deemed several types of relationships "sufficiently close"*** to justify preclusion. First, a non-party who has succeeded to a party's interest in property is bound by any prior judgments against the party. Second, a non-party who controlled the original suit will be bound by the resulting judgment. Third, federal courts will bind a non-party whose interests were represented adequately by a party in the original suit.") (internal citations omitted); *see also New York Life Ins. Co. v. Deshotel,* 946 F. Supp. 454, 463 (E.D. La. 1996), aff'd, 142 F.3d 873 (5th Cir. 1998) ("There are ***three generally recognized categories*** of nonparties who are considered to be in privity with a party to a prior action: (1) a nonparty who controls the original action; (2) a successor-in-interest to a prior party; and (3) a nonparty whose interests were adequately represented by a party to the original action."); *see also Benson and Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172, 1174 (5th Cir.1987). (Analyzing the privity issue first, the Court notes that the Fifth Circuit has established the three situations in which a party "***will be considered in privity***, or sufficiently close to a party in the prior suit so as to justify preclusion...." and "[f]or privity, '[f]ederal courts ***have deemed'*** three '***types of relationships*** "***sufficiently close***" to justify preclusion' …").

---

(2) noted that "the preclusive effects of judgments have been expanded to include nonparties in more and more situations ... it has come to be recognized that the privity label simply expresses a conclusion that preclusion is proper;" and

(3) maintained that "parties which are sufficiently related to merit the application of claim preclusion are in privity."[105]

65. **Third**, after *Russell* (which was, again, after *Meza*), courts within the Fifth Circuit have recognized that:

(1) *Meza* provides circumstances in which parties may "***generally***" be deemed to be in privity ***as a matter of law***;[106]

(2) Privity is often found in circumstances beyond those that would have traditionally given rise to privity because, today, privity "is nothing more than a legal conclusion that the relationship between the one who is a party on the record and the non-party is ***sufficiently close to afford application of the principle of preclusion***;"[107]

(3) "A ***lesser degree of privity*** is required ***for a new defendant*** to benefit from claim preclusion ***than for a plaintiff to bind a new defendant*** in a later action;"[108] and

(4) The following are in privity: (a) alleged alter egos;[109] (b) members

---

[105] *Russell*, 962 F.2d at 1173–74 (stating that parties need only be "sufficiently related to merit the application of claim preclusion") (quoting *Sw. Airlines Co.*, 546 F.2d at 95).

[106] *W. Coast Distrib., Inc. v. Pearce*, No. 3:07-CV-1869-O, 2010 WL 145283, at *3 (N.D. Tex. Jan. 14, 2010); *Oyekwe*, 542 F.Supp.3d at 507.

[107] *Welsh*, No. 5:17-CV-095-BQ, 2020 WL 854244, at *10–11 (emphasis added).

[108] *In re Testmasters Trademark Litig.*, No. 4:04-MD-1646, 2006 WL 8445513, at *7 (quoting *Mars, Inc.*, 58 F.3d at 619); *Lubrizol Corp.*, 929 F.2d at 966.

[109] *Flores*, 488 F. App'x at 779 (citing *Robinson*, 56 F.3d at 1275 (holding that an adverse party's own allegations of a controlling, "near alter ego" relationship between parent and subsidiary were sufficient to establish privity between the two corporations for the purposes of claim preclusion).

of a conspiracy;[110] (c) defendants who have a substantial identity of interest due to their respective alleged roles in the alleged wrongdoing;[111] (d) persons accused of aiding and abetting/knowing participation in a tort;[112] and (e) persons who are allegedly vicariously liable for another's actions.[113]

66.   Consequently, courts continue to examine the actual relationships between the

---

[110] *Glatzer v. Skilling*, No. 4:16-CV-1449, 2017 WL 1487675, at *2 (S.D. Tex. Feb. 23, 2017) (finding privity between someone who, while not a named defendant in the prior lawsuit, was alleged in the prior lawsuit to be a co-conspirator); *Chavers v. Hall*, 2011 WL 2457943, at *7 (S.D. Tex. June 16, 2011) (finding privity between co-conspirators); *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 800 F. Supp. 2d 182, 194 (D.D.C. 2011), aff'd, 682 F.3d 1043 (D.C. Cir. 2012) (citing *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 17–18 (1st Cir.2010)) (Holding that res judicata barred attempts to assert claims against new defendants for participation in the exact same alleged corrupt conspiracy that was presented to prior lawsuit and holding that res judicata "will not allow the plaintiff to re-litigate its previously dismissed claims by simply asserting a new legal theory and naming a party that could have been named in the earlier suit."); *Cahill v. Arthur Andersen & Co.*, 659 F. Supp. 1115, 1122–23 (S.D.N.Y.1986), aff'd, 822 F.2d 14 (2d Cir.1987) (same); *IMP Int'l v. Zibo Zhongshi Green Biotech Co.*, No. EDCV 14-1339 JGB (DTBx), 2015 WL 13357602, at *4, (C.D. Cal. Mar. 20, 2015).

[111] *In re Testmasters Trademark Litig.,* 2006 WL 8445513, at *7 (Holding that a "commonality of interest" great enough to justify a finding of privity for res judicata ---Where "the sole material change in the later suit was the addition of certain defendants, some of whom had been named in the original complaint as participating in the conspiracy, but had not been named as parties defendant at that time," the imposition of res judicata was proper because (1) the new defendants in the second action had similar alignment of interests; and (2) the second complaint mirrored that of the first.).

[112] *Oyekwe*, 542 F. Supp. 3d at 507-508 (finding sufficient "identity of interests" for the purposes of privity based upon the alleged role of the non-party in the party's alleged wrongdoing); *Hammervold v. Blank,* No. 4:20-CV-165, 2020 WL 4535914, at *7 (E.D. Tex. Aug. 6, 2020), rev'd and remanded, 3 F.4th 803 (5th Cir. 2021) (reversed on other grounds) ("Mr. Hammervold's complaint and motions indicate that Jewelers Mutual, Diamond Consortium, and Mr. Blank acted *of one mind* in prosecuting the underlying lawsuit—with Diamond Consortium and Mr. Blank filing the suit itself, and Jewelers Mutual **aiding, abetting, encouraging, supporting, and financing the same**. It is, therefore, unsurprising that Mr. Hammervold does not contest Jewelers Mutual's assertion of privity—***that is effectively his theory of the case***. Accordingly, … Mr. Blank and Jewelers Mutual are "sufficiently related to merit the application of claim preclusion.") (emphasis added).

[113] *Sacks*, 83 F.4th at 346 (privity found based upon a vicarious liability relationship between an employer and employee); *Welsh*, 2020 WL 854244, at *11.

---

parties as part of a privity analysis and have found privity beyond the three grounds set forth in *Meza*. This includes where the parties are agents, officers of defendant entities, co-conspirators, and alleged alter egos.[114]

### (3)     The Restatement does not restrict the application of res judicata.

67.     Next, Acis argues that: (1) under Section 51 of the Restatement (Second) Judgment (the "*Restatement*"), a consent judgment does not extinguish a claim against a vicariously liable person not sued in the first action;[115] and (2) the only exception is for indemnitors, individuals expressly released, and sureties.[116] Again, Acis is wrong.

---

[114] *Glatzer*, 2017 WL 1487675, at *2 (finding privity between someone who, while not a named defendant in the prior lawsuit, was alleged in the prior lawsuit to be a co-conspirator); *In re Testmasters Trademark Litig.*, 2006 WL 8445513, at *7 (finding privity with a non-party in a subsequent suit, where: (1) "the sole material change in the later suit was the addition of certain defendants, some of whom had been named in the original complaint as participating in the conspiracy, but had not been named as parties defendant at that time," (2) the new defendants in the second action had similar alignment of interests; and (3) the second complaint mirrored that of the first); *Oyekwe*, 542 F. Supp. 3d at 507-508 (finding sufficient "identity of interests" for the purposes of privity based upon the alleged role of the non-party in the party's alleged wrongdoing); *Hammervold v*, 2020 WL 4535914, at *7 ("Mr. Hammervold's complaint and motions indicate that Jewelers Mutual, Diamond Consortium, and Mr. Blank acted *of one mind* in prosecuting the underlying lawsuit—with Diamond Consortium and Mr. Blank filing the suit itself, and Jewelers Mutual *aiding, abetting, encouraging, supporting, and financing the same*. It is, therefore, unsurprising that Mr. Hammervold does not contest Jewelers Mutual's assertion of privity—*that is effectively his theory of the case*. Accordingly, … Mr. Blank and Jewelers Mutual are "sufficiently related to merit the application of claim preclusion.") (emphasis added); *Sacks*, 83 F.4th at 346 (privity found based upon a vicarious liability relationship between an employer and employee); *Welsh*, 2020 WL 854244, at *11; *Chavers v. Hall*, 2011 WL 2457943, at *7 (S.D. Tex. June 16, 2011) (finding privity between co-conspirators).

[115] Appellants' Brief at p. 22-23.

[116] Appellants' Brief at p. 23.

---

68. **First**, this Court has explicitly held that dismissals with prejudice, including consent judgments and stipulations of dismissal with prejudice, are final judgments on the merits for res judicata purposes.[117]

69. **Second**, in both *Russell v. SunAmerica Securities, Inc.*[118] and *Lubrizol Corp. v. Exxon Corp.*,[119] prior lawsuits were dismissed via consent judgments. Nevertheless, this Court confirmed that res judicata would still bar the subsequently asserted vicarious liability claims against non-parties if the prior party and the current party were sufficiently related to merit the application of claim preclusion are in privity.[120]

70. Notably, neither *Russell* nor *Lubrizol* involved an indemnitor, a suretyship, or any other purported requirement allegedly set forth in Section 50 or Section 51 of the Restatement. Nevertheless, in those cases, this Court examined the relationship between the parties and—despite the res judicata claims arising out of consent judgments—held that "the vicarious liability relationship" justified claim

---

[117] *Russell*, 962 F.2d at 1173 (citing *Kaspar Wire Works, Inc. v. Leco Engineering and Mach. Inc.*, 575 F.2d 530, 538 (5th Cir.1978)); *Oreck Direct, LLC*, 560 F.3d at 401; *see also Seven Networks, LLC*, 2022 WL 426589, at *5; *Brooks v. Raymond Dugat Co. L C*, 336 F.3d 360, 362 (5th Cir. 2003) ("A dismissal with prejudice is a final judgment on the merits."); *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 n. 8 (5th Cir.1993) (same); *see also In re W. Tex. Mktg. Corp.*, 12 F.3d 497, 500 (5th Cir.1994) (same); *Vines*, 398 F.3d at 709.

[118] *Russell,* 962 F.2d at 1172-1176.

[119] *Lubrizol Corp.*, 871 F.2d at 1288-1289.

[120] *Russell,* 962 F.2d at 1172-1176 and *Lubrizol*, 871 F.2d at 1288-1289.

---

preclusion.[121]

### (4)    Dondero and the Highland Entities were Aligned in the Prior Acis Action.

71.    Next, Acis argues that, under *Meza*, Dondero and the Highland Entities were not in privity because their interests were not aligned, and Dondero did not control the Acis/Highland Action at the time the claims in the Prior Acis Action were dismissed. Again, Acis's arguments fail.

72.    *First*, based upon Acis's live pleading, which Acis must live with, Dondero was and continues to be Highland's alter ego – in the present tense.

73.    *Second*, for the reasons stated above, privity is not limited to the three grounds stated in *Meza* but is, instead, a fact-specific concept that broadly applies to "parties which are sufficiently related to merit the application of claim preclusion are in privity."[122]

74.    *Third*, Dondero and the Highland Entities' interests in the Prior Acis Action were indisputably aligned and not adverse. While alignment is not established simply because of the parties being merely interested in the same question (or proving the same set of facts), parties are more than just "interested" when "a nonparty may be bound because the relationship to the party to the first suit."[123]

---

[121] *Lubrizol*, 871 F.2d at 1288-1289.

[122] *Russell*, 962 F.2d at 1173.

[123] *Clyce v. Farley*, 836 F. App'x 262, 269–70 (5th Cir. 2020).

75.     Here, Dondero was not merely "interested" in the outcome of Acis's claims against the Highland Entities. As set forth above,[124] Acis alleged that Dondero was the Highland Entities were ***one and the same*** and each was ***liable for actions of the other*** in connection with the Highland Entities' "fraudulent scheme." Obviously, the Highland Entities and Dondero had a clear interest in disproving any claim that the Transactions were fraudulent or otherwise improper because, among other things, Acis alleged that they were ***jointly and severally liable for the purported damages*** as a result of their alter ego relationship.

76.     ***Fourth***, Acis cites no authority to support its assertion that parties who are suing each other in one dispute cannot be in privity (and completely aligned) in another dispute.[125]   Instead, Acis cites, *Gulf Island-IV, Inc. v. Blue Streak-Gulf Is Ops*, which does not justify Acis' position[126]

77.     In that case, this Court held that a crossclaim between parties who were allegedly in privity relating to the transaction at issue in the two lawsuits indicated that the parties' interests were not identical.[127] The Court did not broadly hold that

---

[124] Acis alleged: (1) the Alleged Fraudulent Scheme was ***Highland's*** scheme; (2) Highland controlled Acis; (3) Dondero, as President and CEO of Highland, controlled Highland (which controlled Acis); (4) Highland caused and benefitted from the Transactions; and (5) Highland aided and abetted and conspired with Dondero.

[125] Appellants' Brief at p. 14.

[126] *See* Appellants' Brief at p. 25-26 (citing *Gulf Island-IV, Inc. v. Blue Streak-Gulf Is Ops*, 24 F.3d 743, 747 n. 5 (5th Cir. 1994)).

[127] *Id.*

---

parties are not aligned or in privity for res judicata purposes if there is a ***separate*** dispute between the parties on a ***completely unrelated*** issue. Obviously, parties can be aligned one dispute and not aligned in an unrelated issue.

78.     Here, there were no crossclaims or counterclaims between Dondero and any of the Highland Entities relating to the Transactions or the claims asserted in the Prior Acis Action or the Current Acis Action. Knowing this, Acis cites to pleadings that relate to disputes between Highland and Dondero ***in the Highland (i.e., not Acis) Bankruptcy*** to manufacture the appearance that Dondero and the Highland Entities were adverse in the Prior Acis Action.

79.     Regardless, any purported dispute between Dondero and Highland in the ***Highland Bankruptcy*** is irrelevant. The alleged disputes between the Highland Entities and Dondero in the Highland Bankruptcy ***had nothing to do with Acis, the Transactions, or the claims Acis asserted in the Prior Acis Action*** – Acis does not even argue that they do.

80.     At no point in the Prior Acis Action or the Highland Bankruptcy did the Highland Entities assert any claim against Dondero relating to the Transactions, the Alleged Fraudulent Scheme, or any of the allegations in the Prior Acis Action. Again, Acis does not make such a claim (nor could it).

81.     ***Fifth***, while Acis claims that Dondero objected to the proposed settlement

agreement, Acis only cites to its brief.[128] The record does not contain any purported

objection. None of the documents supporting Acis's argument are in the record.

Regardless, Dondero's objection to the first settlement agreement between the

Highland Entities and Acis does not make Dondero adverse to the Highland Entities

in the Prior Acis Action.

82.    Moreover, Acis does not even claim that Dondero objected to the second

settlement agreement or the Final Dismissal with Prejudice, in which Acis dismissed

with prejudice all claims that were asserted or could have been asserted by or on

behalf of Acis or the estate, which is the final judgment that ended the Prior Acis

Action on the merits.[129]

83.    ***Sixth***, Acis's claim that Dondero was not in privity because he did not control

the Prior Acis Action at the end of the Prior Acis Action is irrelevant. Instead, as

stated above, the relevant inquiry for this analysis is whether Dondero and the

Highland Entities relationship was sufficiently close to afford application of the

principle of preclusion."[130] Moreover, Dondero ***was*** in control of the Highland

Entities at the time Acis sued the Highland Entities and for the majority of the Prior

---

[128]  *See* Appellants' Brief at pp. 14-25 (citing ROA.427 and ROA.429). However, those cites are pp. 6 and 8 of Acis's Brief in Support of Plaintiffs' Objection to Report and Recommendation.

[129] *See Askanase v. Livingwell, Inc*., 981 F.2d 807, 810 (5th Cir. 1993) ("A decision is final when it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.") (cleaned up).

[130] *Welsh*, 2020 WL 854244, at *10–11 (emphasis added).

Acis Action.

84.    ***Finally***, Acis's claims do not have to "depend" on current alter ego for privity to exist and for res judicata to bar the claims. Acis misses the point with this argument. As stated above, "[t]he effect of applying the alter ego doctrine is that the entity and the alter ego ***are treated as one person***, so that any act committed by one is attributed to both, and if either is bound, by contract, judgment, or otherwise, both are equally bound."[131] Acis's **live pleading** alleges that Dondero, the Highland Entities and Acis ***are*** alter egos of each other, they are in privity with the each other for res judicata purposes for any and all claims. There are no allegations in the live pleading that suggest or otherwise allege that Dondero and Highland's relationship ceased.

### (5)    The District Court's holding does not create new law.

85.    Finally, Acis argues that the district court's holding "creates new law with significant consequences."[132] Acis further argues that it is unfair to allow a non-party to benefit from the res judicata effect of a dismissal with prejudice when the non-party was allegedly adverse with the party in the previously dismissed action. Acis's plea of a lack of fairness is disingenuous and without merit.

---

[131] *Reneker v. Offill*, No. 3:08-CV-1394-D, 2012 WL 2158733, at *18 (N.D. Tex. June 14, 2012) (Fitzwater, J.) (emphasis added); *see also Robin Singh Educ. Servs. Inc. v. Excel Test Prep Inc*., 274 Fed. Appx. 399, 400 n. 1 (5th Cir.2008) (per curiam).

[132] Appellants' Brief at p. 34.

86.    ***First***, as stated above, it is ***Acis's legal positions and pleadings*** that established privity. Acis knowingly and repeatedly (and for the purpose of holding them jointly and severally liable for Acis's alleged damages) asserted that Dondero and the Highland Entities are alter egos (thereby, asserting that they are the same entity). There can be no doubt that, under existing law, according to Acis, Dondero and the Highland Entities are in privity.

87.    ***Second***, as stated above, Dondero and the Highland Entities were never adverse with respect to their dispute with Acis. Acis's argument that parties cannot be privity in one dispute if they are not aligned in an unrelated issue lacks common sense. Moreover, Acis fails to cite any authority supporting its position.

88.    ***Third***, the District Court's holding also does not "create new law" or have any "significant consequences" because the issue is that Acis is trying to avoid is the preclusive effect of the Dismissals with Prejudice. Under Fifth Circuit law, Acis ***could have prevented*** the preclusive effect of the Dismissals with Prejudice by expressly reserving any claims it may have had against Dondero or incorporating the terms of any purported settlement agreement into the Dismissals with Prejudice.[133] However, the Dismissals with Prejudice in the Prior Acis Action neither incorporated the settlement agreement nor expressly reserved Acis's claims against Dondero. The District Court's holding did not create new law; it applied well-established law.

---

[133] *Seven Networks, LLC*, 2022 WL 426589, at *3 (citing *Oreck Direct, LLC*, 560 F.3d at 402–03).

## Conclusion and Prayer

FOR THE FOREGOING REASONS, this Court should affirm the district court's orders dismissing Acis's claims against Dondero with prejudice.

Dated: February 11, 2026

Respectfully submitted,

**CRAWFORD, WISHNEW & LANG PLLC**

By: */s/ Michael J. Lang*
Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
Dave Wishnew
Texas State Bar No. 24052039
dwishnew@cwl.law
Haleigh Jones
Texas State Bar No. 24097899
hjones@cwl.law
Alexandra Ohlinger
Texas State Bar No. 24091423
aohlinger@cwl.law
Dallas Flick
Texas State Bar No. 24104675
dflick@cwl.law
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

***Counsel for Appellee James Dondero***

## **CERTIFICATE OF SERVICE**

The undersigned certifies that, on February 11, 2026, a true and correct copy of the above and foregoing document was served on all counsel of record via the Court's ECF system.

*/s/ Michael J. Lang* _____
Michael J. Lang

## **CERTIFICATE OF COMPLIANCE**

Appellee certifies, pursuant to Federal Rule of Appellate Procedure 32(a)(7) that, without including the cover page, certificate of interested persons, corporate disclosure statement, table of contents, table of citations, statement regarding oral argument, certificates of counsel, and signature block, this brief contains 10,261 words and is within the 13,000-word limit.

*/s/ Michael J. Lang* _____
Michael J. Lang
