No. 25-10797

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

In the Matter of Acis Capital Management, L.P.; Acis Capital
Management GP, L.L.C.,

*Debtors*

Acis Capital Management, L.P. and Acis Capital Management GP,
L.L.C.,

*Appellants*

v.

James Dondero,

*Appellee*

---

On Appeal from the United States District Court
for the Northern District of Texas
No. 3:24-CV-2036

---

### APPELLANTS' REPLY BRIEF

---

Emily Merritt Adler
eadler@azalaw.com
Kelsi Stayart White
kwhite@azalaw.com

Ahmad Zavitsanos & Mensing, PLLC
1221 McKinney Street, Suite 2500
Houston, Texas 77010
713-655-1101

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ 2

TABLE OF AUTHORITIES .................................................................................3

SUMMARY OF REPLY ..................................................................................... 4

ARGUMENT ...................................................................................................... 6

   I.   Under this Court's existing precedent, privity exists in only three circumstances. ...................................................................................... 6

      a.   Relationships do not create new categories of privity beyond those described in *Meza*. ........................................................................ 6

      b.   Requiring an examination of the surrounding circumstances to determine whether there is privity does not expand the *Meza* categories. ................... 8

      c.   Privity does not occur automatically based only on the type of relationship between the parties. ............................................................... 9

   II.   There was no privity between Highland and Dondero. ............................... 11

      a.   The facts of this case do not justify the application of res judicata. .......... 11

      b.   Highland did not adequately represent Dondero......................................12

      c.   Dondero did not control the Highland Adversary. ...................................14

      d.   The alter ego allegations in Acis's current complaint against Dondero do not create privity. ............................................................................. 16

   III.   Because the Highland Adversary ended in a consent judgment, privity should be determined at the time of the consent judgment. .....................18

CONCLUSION & PRAYER ................................................................................ 20

CERTIFICATE OF SERVICE ............................................................................ 21

CERTIFICATE OF COMPLIANCE ..................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*Armadillo Hotel Grp. L.L.C. v. Harris*,
  84 F.4th 623 (5th Cir. 2023) ....................................................................... 13

*Chavers v. Hall*,
  2011 WL 2457943 (S.D. Tex. June 16, 2011) ...................................................... 8

*Clyce v. Farley*,
  836 Fed. App'x 262 (5th Cir. 2020) ........................................................ 10, 12, 16

*Cygnus Telecommunications Tech., LLC v. Worldport Commc'ns, Inc.*,
  543 F. Supp. 2d 1113 (N.D. Cal. 2008) ........................................................... 18

*Glatzer v. Skilling*,
  2017 WL 1487675 (S.D. Tex. Feb. 23, 2017) ....................................................... 7

*Lubrizol Corp. v. Exxon Corp.*,
  871 F.2d 1279 (5th Cir. 1989) ..................................................................... 11

*Meza v. Gen. Battery Corp.*,
  908 F.2d 1262 (5th Cir. 1990) ................................................................. passim

*Russell v. SunAmerica Sec., Inc.*,
  962 F.2d 1169 (5th Cir. 1992) ................................................................. passim

*Sacks v. Tex. So. Univ.*,
  83 F.4th 340 (5th Cir. 2023) ............................................................... 4, 7, 12, 16

*Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*,
  37 F.4th 1078 (5th Cir. 2022) ...................................................................... 15

*Welsh v. Correct Care, LLC*,
  2020 WL 854244 (N.D. Tex. Jan. 30, 2020) ....................................................... 9, 10

## SUMMARY OF REPLY

Dondero does not dispute that at the time of the consent judgment in the Highland Adversary[1], he had: (1) lost control of Highland, (2) been temporarily restrained from communicating with Highland employees, and (3) become embroiled in litigation with Highland. ROA.279. He was not in privity with Highland at that time. Instead, Dondero attempts to expand the categories of privity this Court announced in *Meza v. Gen. Battery Corp.* to avoid the clear conclusion that he was neither adequately represented by Highland nor in control of the Highland Adversary. 908 F. 2d 1262, 1266 (5th Cir. 1990). Dondero's argument is unsupported by this Court's precedent, which has time and again acknowledged the *Meza* categories, and then considered the surrounding facts of the specific case to decide whether privity exists. *See, e.g.*, *Sacks v. Tex. So. Univ.*, 83 F.4th 340, 346 (5th Cir. 2023).

The upshot of Dondero's position is that because he was once in control of Highland, he will always be in privity with Highland, even though the surrounding

---

[1]    The Highland Adversary refers to Adversary No. 18-03078. Both the Bankruptcy Court below, and Dondero on appeal, refer to the Highland Adversary as the "Prior Acis Action." Because the Highland Adversary was initiated by Highland (not Acis), Acis refers to it as the Highland Adversary for clarity. The Dondero Adversary refers to Adversary No. 20-03060, which Dondero refers to as the "Current Acis Action."

circumstances demonstrate that their interests later collided. That position rewards bad actors and ignores settled precedent that requires courts to examine the nature of the relationship in each case.

This Court should reverse the dismissal of Acis's claims against Dondero because: (1) the district court failed to evaluate the surrounding circumstances to decide privity, and (2) there was no privity between Dondero and Highland at the time the bankruptcy court entered the consent judgment, and thus res judicata does not apply.

## ARGUMENT

**I.    Under this Court's existing precedent, privity exists in only three circumstances.**

In *Meza*, this Court held "that privity exists in just three, narrowly-defined circumstances: (1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by the party to the original suit." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990).

Dondero responds by claiming that *Meza* "did not make any holding related to the types of circumstances that justify privity." Br. at 30. Instead, Dondero argues, *Meza* simply outlined three circumstances in which privity exists as a matter of law, while leaving open the possibility that other circumstances may be a basis for privity. *Id.* Because each of Dondero's subsequent arguments rely on this position, Acis begins with why Dondero's theory of privity under *Meza* fails.

**a.    Relationships do not create new categories of privity beyond those described in *Meza*.**

The flaw in Dondero's reasoning is that he views the type of relationship between the parties (*e.g.*, alter ego, members of a conspiracy, vicarious liability) as creating a new circumstance in which privity exists, beyond the three categories defined in *Meza*. *See* Br. at 32 (claiming that when courts examine the "actual relationships between the parties as part of a privity analysis" they "have found

6

privity beyond the three grounds set forth in *Meza*.")). In reality, these relationships are not adding to the categories in *Meza*—instead, they are all examples that fit *into* the three categories already defined in *Meza*.

Consider Dondero's vicarious liability example. Br. at 32, n.113. In that case, this Court began the privity analysis by reiterating the holding in *Meza* that "[w]e have recognized privity in three circumstances[.]" *Sacks v. Tex. So. Univ.*, 83 F.4th 340, 346 (5th Cir. 2023) (quoting *Meza*, 908 F.2d at 1266)). The Court then stated that because the defendant was not a successor in interest and did not control the prior litigation, "he is only in privity with named defendants in [the prior litigation] if his interests were adequately represented." *Sacks*, 83 F.4th at 346 (citing *Meza,* 908 F.2d at 1266). Contrary to Dondero's argument, in concluding that the defendant was in privity with a prior defendant, this Court did not reject that privity is limited to the three circumstances in *Meza* but instead considered whether under the facts of that case, the relationship fit into the adequate-representation category articulated in *Meza*. *See Sacks*, 83 F.4th at 346.

Next, take Dondero's conspiracy example. Br. at 32, n.110. In *Glatzer v. Skilling*, the district court decided that a co-conspirator was entitled to res judicata based on the dismissal of prior litigation. *See Glatzer v. Skilling*, 2017 WL 1487675, at *2 (S.D. Tex. Feb. 23, 2017) (citing *Chavers v. Hall*, 2011 WL 2457943, at *7 (S.D.

7

Tex. June 16, 2011)). The district court in *Glatzer* relied on *Chavers*; in *Chavers*, the district court recounted this Court's holding in *Meza* that "[p]rivity between parties exists for res judicata purposes in three situations." *Chavers*, 2011 WL 2457943, at *3 (citing *Meza*, 908 F.2d at 1266). The *Chavers* court then decided that the defendants' interests were adequately represented in the prior lawsuit because the defendants were either the immediate successors to the previous, prevailing defendants or acting as their agents. *Id.* at *4. Again, the district court did not decide that the relationship created a new basis for privity, but rather that it satisfied the "adequate representation" prong outlined in *Meza*.

In short, Dondero's theory of privity under *Meza* is wrong. The type of relationship between the parties does not create new categories of privity in addition to those outlined in *Meza*; courts merely examine the relationship to determine if it fits into the *Meza* categories.

> b. **Requiring an examination of the surrounding circumstances to determine whether there is privity does not expand the *Meza* categories.**

Next, Dondero argues that privity is not limited to the three categories in *Meza* because "today, privity is nothing more than a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion." Resp. at 26 (quoting *Welsh v.*

*Correct Care, LLC*, 2020 WL 854244, at *10–11 (N.D. Tex. Jan. 30, 2020)) (internal quotations and emphasis omitted). In deciding whether that relationship is "sufficiently close," (*i.e.*, that the party and non-party are in privity) courts must look at "the surrounding circumstances to determine whether claim preclusion is justified." *Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992).

Acis agrees both that (1) privity is a legal conclusion that may justify the application of res judicata, and (2) courts must consider the surrounding circumstances to determine whether privity exists. But Dondero goes too far in arguing that the requirement to look at surrounding circumstances means that privity is not limited to the three *Meza* categories. According to Dondero, privity exists when a court decides that, on the facts, privity exists because the parties are "sufficiently close." That circularity is unhelpful and contrary to *Meza*. Instead, a court's review of the surrounding circumstances is necessary to conclude whether the relationship between the party and the non-party *fits into* one of the three *Meza* categories. *See supra*, Section I.a.

### c. Privity does not occur automatically based only on the type of relationship between the parties.

Dondero's assertion that certain relationships between a party and a non-party automatically result in privity is similarly misguided. *See* Br. at 31–32 (describing relationships that "are in privity"). His argument is inconsistent with the very cases

Dondero relies on, which explain that whether privity exists is "particularly fact-based" and "requires [courts] to look to the surrounding circumstances to determine whether claim preclusion is justified." *Russell*, 962 F.2d at 1173–74; *see also Welsh*, 2020 WL 854244, at *11. If certain relationships (like alter ego) automatically resulted in privity, there would be no need to conduct a fact-based analysis of the surrounding circumstances.

This Court's decision in *Clyce v. Farley* demonstrates that it is improper for a district court to conclude that a party and a non-party are in privity simply because of the type of relationship. 836 Fed. App'x 262, 271 (5th Cir. 2020). In *Clyce*, the district court relied heavily "on two district court cases stating that 'members of the same government agency' are generally in privity." *Id.* at 270.

This Court began its analysis by reiterating the "three, 'narrowly-defined' situations where non-parties are 'sufficiently close' that they have privity with parties in the first lawsuit" from *Meza*. *Id.* at 269. It then held that although "[w]e have recognized privity between 'officers of the same government' . . . the Fifth Circuit has never adopted a rule that privity exists between officers of the same government simply because they are coworkers[.]" *Id.* at 270–71.

The same reasoning applies in this case. Here, the district court concluded that allegations of alter ego automatically resulted in privity as a matter of law,

without considering the surrounding circumstances (which demonstrate the opposite), just as the district court in *Clyce* concluded that members of the same government agency were in privity. ROA.637. Such bright-line rules about relationships creating privity have not been adopted, and the district court was required to analyze whether Highland adequately represented Dondero's interests at the time the consent judgment was entered. *See, e.g.*, *Russell*, 962 F.2d at 1175–76 (citing *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1289 (5th Cir. 1989)) (declining to make "any broad pronouncements with regard to the outer reaches of privity" and instead deciding on the facts of the case); *Lubrizol Corp.*, 871 F.2d at 1289 (declining to make any broad pronouncements regarding privity and instead deciding on the facts of the particular case). By deciding that alter ego allegations created privity as a matter of law, regardless of the relevant timeframe, instead of considering the surrounding circumstances, the district court erred.

## II.　There was no privity between Highland and Dondero.

### a. The facts of this case do not justify the application of res judicata.

Although Dondero cites cases holding that a court must look at the facts of a given case to determine privity, he argues for the opposite here. *Cf.* Br. at 30 ("[P]rivity is a broad, fact-intensive concept that requires court to look at the surrounding circumstances to determine whether claim preclusion is justified in each

11

case.”); Br. at 28 (arguing that alter ego allegations in Acis's complaint establish privity as a matter of law). This theory relies on Dondero's assumption that certain types of relationships, like alter ego, automatically create privity and exist as independent categories beyond those delineated in *Meza*.

But as explained above, that assumption is incorrect. This Court, and courts within the Fifth Circuit, have continuously recognized the limitations of *Meza* when deciding whether claim preclusion applies in a particular case. *See, e.g.*, *Clyce*, 836 Fed. App'x at 269. The fact that courts have found alter ego relationships to establish privity does not mean alter ego allegations automatically create it; it merely means that under the surrounding circumstances of that particular case, the alter ego relationship satisfied one of the *Meza* prongs, and so application of res judicata was proper. Here, a review of the surrounding circumstances demonstrates that there was no privity between Highland and Dondero for the consent judgment, regardless of alter ego allegations.

### b.  Highland did not adequately represent Dondero.

Dondero's interests were adequately represented in the Highland Adversary only if a named defendant was "so closely aligned to Dondero as to be his virtual representative." *Sacks*, 83 F.4th at 346 (quoting *Meza*, 908 F.2d at 1267). Alignment is not established when the party and the non-party were merely "interested in the

same question or in proving the same set of facts." *Armadillo Hotel Grp. L.L.C. v. Harris*, 84 F.4th 623, 631 (5th Cir. 2023). Instead, there must be "an express or implied legal relationship in which the parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues." *Meza*, 908 F.2d at 1272.

Dondero did not even attempt to show in the district court that adequate representation existed. For the first time on appeal, Dondero now argues that his interests were aligned with Highland's interests during the Highland Adversary because Acis alleged that Dondero and Highland were jointly and severally liable for damages. *See* Br. at 35–36.

Critically, Acis did *not* allege that Dondero was jointly and severally liable for damages in the Highland Adversary, nor did Acis allege that Dondero was the alter ego of Highland. *See* ROA.2447 ¶ 275 (defining the "Alter Egos" as Highland Capital, Highland Funding, Highland Advisor, Highland Management, and Highland Holdings); ROA.2447 ¶ 276 (alleging that the Alter Egos used the corporate form as a means of perpetrating a fraud); ROA.2456 ¶ 314 (alleging that Highland Capital was a non-statutory insider because Dondero controlled both Acis and Highland capital—*not* that Highland Capital was Dondero's alter ego); ROA.2472 (seeking a declaration that Highland Capital, Highland Funding,

Highland Advisor, Highland Management, and Highland Holdings are alter egos of each other—*not* that they are alter egos of Dondero).

Dondero relies on allegations from the *Dondero Adversary* to argue that his interests were aligned with Highland in the *Highland Adversary*. In the Highland Adversary, Acis did not seek to hold Dondero jointly and severally liable for damages with Highland because of an alter ego relationship. Accordingly, Dondero cannot claim that such serves as a basis for his alignment with Highland in the Highland Adversary.[2]

### c. Dondero did not control the Highland Adversary.

Next, Dondero argues that he was "in control of the Highland Entities at the time Acis sued the Highland Entities and for the majority of the [Highland Adversary]." Resp. at 38–39. Regardless, Dondero claims that whether he was in control is "irrelevant" because the relevant inquiry for privity is simply whether "Dondero and the Highland Entities' relationship was sufficiently close to afford application of the principle of preclusion." Resp. at 38. Again, Dondero offers a circular conclusion without any analysis: they are in privity because they are

---

[2]    Dondero and Highland were demonstrably *not* aligned by the time the consent judgment was entered in the Highland Adversary, so it is unsurprising that Dondero must look to the Dondero Adversary to manufacture a basis for alignment. Dondero objected to the settlement between Acis and Highland that resulted in the consent judgment, which Dondero admits in his Response. ROA.429; Br. at 38.

sufficiently close to be in privity—but sufficiently close based on what test or framework? Dondero has no answer. In any event, Dondero is wrong about the conclusion too.

For preclusion purposes, a party controls the prior litigation only if it had "effective choice as to the legal theories and proofs" advanced on behalf of the party to the prior action, as well as "control over the opportunity to obtain review." *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 37 F.4th 1078, 1087 (5th Cir. 2022). Dondero does not address this legal standard at all. Instead, he summarily claims that he was in control of Highland for much of the Highland Adversary, without explaining how he had choices as to the legal theories or control over review.

Dondero's position also ignores that by the time the consent judgment was entered dismissing the Highland Adversary, Dondero had lost control of Highland. ROA.435; ROA.685. Far from being in control of the Highland Adversary, Dondero and Highland were *suing each other*, and the bankruptcy court enjoined Dondero from communicating with Highland employees. ROA.436; ROA.685. Dondero could not control the litigation strategy, and the Highland Adversary was therefore not under his control. *See Students for Fair Admissions*, 27 F.4th at 1087.

As for the claim that control over the prior litigation is irrelevant, Dondero's position is contrary to the litany of post-*Meza* cases that recognize the importance of

15

the *Meza* categories when considering whether the parties are sufficiently close to justify non-mutual claim preclusion. *See, e.g.*, *Clyce*, 836 Fed. App'x at 269; *Sacks*, 83 F.4th at 346.

> ### d. The alter ego allegations in Acis's current complaint against Dondero do not create privity.

Dondero's reliance on the alter ego allegations in Acis's First Amended Complaint to circumvent the privity analysis is misplaced for two reasons:

*First*, as explained above, alter ego allegations do not automatically create privity. A court must also consider the facts and surrounding circumstances of the case. *See Russell*, 962 F.2d at 1173. The district court erred by failing to do so here. Had the district court looked at the surrounding facts, it would have observed that at the time of the consent judgment, Dondero and Highland were embroiled in litigation, Dondero objected to the settlement, and Dondero had been enjoined from communicating with Highland employees. ROA.279; ROA.429. These circumstances demonstrate that regardless of their privity at the start of the Highland Adversary, Dondero and Highland were demonstrably not aligned by the time the consent judgment was entered.

*Second*, Dondero's references to cherry-picked, present-tense allegations in the First Amended Complaint ignores the factual context of those allegations. For example, Dondero relies on background information in the Introduction section of

Acis's First Amended Complaint which states that "Dondero *is* Highland Capital" and "[Dondero] is their alter ego." Resp. at 14; ROA.1109.

Those statements carried over from Acis's Original Complaint, filed in April 2020. *See* ROA.847 ¶ 2. In April 2020, Dondero had not yet: commenced a litigation campaign against Highland Capital (Summer 2020), objected to the settlement between Acis and Highland (October 2020), resigned from all Highland affiliates (October 2020), been sued by Highland (December 2020), or been restrained from communicating with Highland Capital's employees (December 2020). ROA.278–79; ROA.429; ROA.279.

In addition, the context makes clear that Acis's alter ego allegations related to Dondero's past conduct. In the Introduction of the First Amended Complaint (carried over from the Original Complaint), Acis alleged that Dondero "orchestrated a massive scheme to fraudulently transfer Acis's assets"—in the past tense. ROA.1109. It goes on to explain that while he orchestrated this scheme, Dondero "controlled" Highland—again, in the past tense. ROA.1109. In other words, although Acis's alter ego allegations are in the present tense, the factual context makes clear that the claims all relate to Dondero's past conduct, and, in any event, the allegations are merely carried over from the Original Complaint. Accordingly, Dondero's reliance on these snippets is misplaced.

17

### III. Because the Highland Adversary ended in a consent judgment, privity should be determined at the time of the consent judgment.

Dondero misunderstands Acis's argument with respect to the Restatement (Second) of Judgments.

Acis is not arguing that because the Highland Adversary ended in a consent judgment, res judicata cannot apply. *See* Resp. at 33–35 (claiming that Acis's Restatement argument is wrong because this Court has justified claim preclusion in cases involving consent judgments). Instead, Acis's argument is that when a case ends in a consent judgment, the proper ***time*** for assessing privity is when the consent judgment is entered, and, in this case, there was no privity at that time. *See* Br. at 22–23; *Cygnus Telecommunications Tech., LLC v. Worldport Commc'ns, Inc.*, 543 F. Supp. 2d 1113 (N.D. Cal. 2008) (declining to apply res judicata because "the evidence does not indisputably show that [either defendant] was in privity with [prior defendant] at the time that [prior defendant] entered into the Consent Judgment with [plaintiff]"). Dondero wholly fails to respond to this argument.

This Court's decisions in *Russell* and *Lubrizol* are not inconsistent with the rule suggested by Acis here. They simply do not address the question of privity when a non-party invokes res judicata for a consent judgment obtained by a party *adverse to the non-party at the time of the consent judgment*. In *Russell*, this Court held privity existed between predecessor and successor corporations because the latter was a

"mere continuation" of the other. 962 F.2d at 1175–76. There was no evidence that the two corporations were adverse to one another at the time of the settlement agreement that resulted in the final judgment—or at any other time either. Similarly, in *Lubrizol*, this Court did not face a situation where the Exxon employees sued later and claiming res judicata were in fact antagonistic with and suing Exxon at the time of the settlement and final judgment obtained by Exxon. These decisions are correct on their facts, but the facts here are decidedly different: Dondero seeks to benefit from a consent judgment obtained by an entity that Dondero was contemporaneously suing when the consent judgment was entered.

## CONCLUSION & PRAYER

For the foregoing reasons, this Court should reverse the district court's orders dismissing Acis's claims against Dondero with prejudice and remand for further proceedings.

Respectfully submitted,

**AHMAD ZAVITSANOS**
**& MENSING PLLC**

*/s/ Emily Merritt Adler*
Emily Merritt Adler
Texas Bar No. 24121009
Federal ID No. 3710388
Kelsi Stayart White
Texas Bar No. 24098466
Federal ID No. 9225914
AHMAD, ZAVITSANOS & MENSING, P.C.
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Tel.: (713) 655-1101
Fax: (713) 655-0062
eadler@azalaw.com
kwhite@azalaw.com

*Counsel for Appellants Acis Capital Management LLP and Acis Capital Management GP*

## Certificate of Service

On March 18, 2026, I certify that I served a true and correct copy of this Statement on all counsel of record pursuant to CM/ECF filing in compliance with the FEDERAL RULES OF APPELLATE PROCEDURE.

*/s/ Emily Merritt Adler*
Emily Merritt Adler

## Certificate of Compliance

1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(A)(7)(B) because this brief contains 3,470 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

2. This brief also complies with the typeface requirements of FED. R. APP. P. 32(A)(5) and the type requirements of FED. R. APP. P. 32(A)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 with a 14-point font named Equity A.

*/s/ Emily Merritt Adler*
Emily Merritt Adler